JEROME M. JACKSON (State Bar No. 64238)
jmjlaw@aol.com
880 Apollo St., Suite 238
El Segundo, California 90245
Telephone (310) 726-4199
Facsimile (310) 414-0486

Attorney for Plaintiff
Christopher L. Chester

[*Additional counsel continued on next page.*]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER L. CHESTER<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>Defendants. | **CASE NO. 2:20-cv-10844-JFW-E**<br><br>**UPDATED JOINT STATEMENT RE: OBJECTIONS TO EXHIBITS**<br><br>Assigned to Hon. John F. Walter and Magistrate Judge Charles F. Eick<br><br>Pretrial Conf.: July 8, 2022<br>Time:          8:00 a.m.<br><br>Trial Date:    July 26, 2022<br>Time:          8:30 a.m. |

1

*[Additional counsel, continued from previous page]*

2

3

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com

4

MIRA HASHMALL (State Bar No. 216842)
JASON H. TOKORO (State Bar No. 252345)

5

CASEY B. SYPEK (State Bar No. 291214)

6

MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000

7

Los Angeles, California 90067

8

Tel.: (310) 552-4400 | Fax: (310) 552-8400

9

Attorneys for Defendants

10

County of Los Angeles, Los Angeles County Fire Department, Joey Cruz, Rafael
Mejia, Michael Russell, Raul Versales, Tony Imbrenda, and Arlin Kahan

11

12

JONATHAN C. McCAVERTY (State Bar No. 210922)

13

*Principal Deputy County Counsel*
jmccaverty@counsel.lacounty.gov

14

OFFICE OF THE COUNTY COUNSEL

15

General Litigation Division

16

500 West Temple Street, Suite 468
Los Angeles, California 90012

17

Tel.: (213) 974-1828 | Fax: (213) 626-7446

18

Attorneys for Defendant Los Angeles County Sheriff's Department

19

20

21

22

23

24

25

26

27

28

568963.1

UPDATED JOINT STATEMENT RE: OBJECTIONS IN PRE-TRIAL EXHIBIT STIPULATION

At the prior pre-trial conference on February 4, 2022, the Court requested that the parties continue meeting and conferring with a goal of resolving all objections in advance of trial so that exhibits can be pre-admitted.

Having met and conferred, Plaintiff has withdrawn the following exhibits: 74, 77, 81, 83, 106, 126, 152, 193, 195, 309, 311, 313, 316, 327, 446, 447, and 448.

The parties were not able to resolve the objections as to the exhibits discussed herein.

**Plaintiff's Preliminary Statement**

At the prio9r pre-trial conference, the Court instructed the parties to "continue their efforts to try to narrow the number of exhibits and also the objections to the exhibits." (hr'g Tr. At 64: 7-9.)  Plaintiff heeded this instruction by (i) withdrawing 17 exhibits; (ii) offering a compromise under which Plaintiff would remove an additional 122 exhibits from the exhibit list; and (iii) refraining from adding new objections to Defendants'' exhibits.

By Contract, Defendants have:

- Added *226* new objections.
- Withdraw *0* objections.
- Withdrawn *0* exhibits.
- Added *7* new policy and training exhibits that they never disclosed or produced in discovery.

Defendants' new objections—*i.e.,* objections to exhibits that Defendants had the opportunity to make but did not in the parties' Pre-Trial Exhibit Stipulation in advance of the prior pre-trial conference—are highlighted in **Exhibit 1** to the declaration of Craig Jennings Lavoie.  Plaintiff respectfully urges the Court to hold that Defendants' new objections (i) were waived by their omission from the prior Pre-Trial Exhibit Stipulation; and (ii) are void for violating the Court's instruction at

1    the prior pre-trial conference that the parties narrow—rather than expand—

2    objections.

3

4        Plaintiff further urges the Court to overrule Defendant's boilerplate objections

5    for violating the court's case manage order, which states:  **DO NOT SUBMIT**

6    **BLANKET OR BOILERPLATE OBJECTONS TO THE OPPOSING**

7    **PARTY'S EXHIBITS.  THESE WILL BE DISREGARDED AND**

8    **OVEDRRULED."**  (Dkt. 62, at 26.)  Refusing to heed this instruction, Defendants

9    have objected to *197* of Plaintiff's 347 exhibits (56.7%) on *relevance* and *403*

10   grounds, in each instances asserting the two objections in tandem.  Jennings Lavoie

11   Decl., Para. 3.)  This approach plainly violates the Court's order, and Defendants'

12   blanket objections for relevance and 403 should be overruled.

13       On the merits, the majority of defendants' objections—and especially their

14   new ones—are objectively frivolous.  Defendants advance three main arguments, all

15   of which are flawed and unsupported by law.

16       *First*, Defendants assert baseless hearsay objections to a bevy of

17   materials created during the Sheriff's Department's and Fire Department's internal

18   Investigations into the misconduct at issue in this case.  As an example, Deputy

19   Ruby Cable repeatedly admitted in h er internal investigation interview with

20   Sheriff's Department investigators that she did not need the photos and "had no

21   purpose [for] having them."  Similarly, Deputy Rafael Mejia admitted in his

22   interview with Department investigators that Deputy Cable didn't need the photos

23   and that he shared them with her because "curiosity got the best of us."

24       In an avalanche of brand-new hearsay objections, Defendants assert that these

25   types of admission in Department interviews are inadmissible hearsay.  These

26   objections are frivolous, as the statements are clearly non-hearsay statements of a

27   party opponent under FRE 801 (d)(2)(D).  See FRE 801(d)(2)(D) (non-hearsay

28   statements include a "statement [that] is offered against an opposing party and was

1  made by the party's agent or employee on a matter within the scope of that

2  relationship and while it existed."  The interviews of County employees—conducted

3  on-the-clock by County investigators—were directly devoted to  alleged workplace

4  misconduct, and there is no question that the employees were acing within the scope

5  of their employment when answering questions or writing memoranda that were

6  requested by their supervisors.  A long line of courts facing similar circumstances,

7  including the Ninth Circuit, have h eld that employee statements made during

8  internal investigations are non-hearsay party admissions.  *See, e.g., Sana v.*

9  *Hawaiian Cruises, Ltd.,* 181 F.3d 1041, 10456 (9th Cir. 1999) (employee statements

10  made in connection with an investigation concerned matters within the

11  employment).

12       Defendants argue that statements by low-level County employees do not

13  qualify as statements of a party opponent, but that is not the law.  *See, e.g.,*

14  *Wilkinson v. Carnival Cruise Lines,* 920 F.2d 1560, 1565 (11th Cir. 1991) ("Nothing

15  in rule 801(d)(2)(D) prevents the out-of-court statements of low-level employees

16  from coming into evidence as non-hearsay admissions of a party-opponent in

17  appropriate factual scenarios."); *Union Mut. Life Ins. Co. v. Chrysler Corpo.,* 793

18  F.2d 1, 8 (1st Cir. 1986) ("[T]here is nothing in Rule  801(d(2)(D) that requires an

19  admission be made by a management level employee.").  Defendants also offer

20  cases to argue that the County employees'' statements regarding their personal

21  involvement in the improper photos were somehow outside the scope of their

22  employment, but the cited cases are far afield.  *Staheli v. Univ of Mississippi,* 854

23  F.2d 121, 127 (5th Cir. 1988) (holding that accounting professor's statement

24  regarding a university's decision not to grant tenure to a geology professor because

25  the accounting professor "had nothing to do with" the tenure decision).

26       *Second*, Defendants repeatedly advance a faulty premise that Plaintiff

27  abandoned a so-called "failure-to-investigate" theory of *Monell* liability and

28  therefore all evidence that was generated in the internal investigations is irrelevant.

1   In reality, as explained in Plaintiff's supplemental briefing regarding the *Monell*

2   claim (Dkt. 201, 203), Plaintiff waived nothing.  An agency's "[f]failure to

3   discipline is not a separate ground for establishing municipal liability."  *See Conn v.*

4   *City of Reno,* 591 F.3d 1081, 1105 (9th Cir. 2010), *cert. granted, judgment vacated*

5   *sub non, city of Reno, Nev. V. Conn*, 563 U.S. 915 (2011, *opinion reinstated in*

6   *relevant part,* 658 F.3d 897 (9th Cir. 2011).  Rather Defendant's failure to

7   meaningfully investigate or impose discipline is compelling *evidence* of (a)

8   Defendants deliberate indifference to the inadequacy of their training and policies

9   (*i.e.,* a policy of inaction) and (2) their pre-existing custom and practice of taking

10  and sharing improper death images—Plaintiff's two alternative theories of *Monell*

11  liability"—*i.e.,* "fail[ure] to train employees in a manner that amounts to 'deliberate

12  indifference' to a constitution right"—"through evidence of a 'failure to investigate

13  and discipline employees n the face of widespread constitutional violations'" ):

14  *McRorie v. Shimoda*, 795 F.2d 780, 84 (9th Cir. 1986) ("Policy or custom may be

15  inferred if, after the [particular constitutional violation at issue], the prison officials

16  took no steps to reprimand or discharge the [relevant employees]. . . .").  Plaintiff

17  never has "abandoned" such evidence.

18      More importantly, Plaintiff is not proffering the interview or other

19  investigation materials to prove that Defendants' internal investigations were

20  insufficient or to establish the discipline (or lack thereof) that was imposed on the

21  wrongdoers.  Rather, the materials are relevant mostly because they contain

22  statements County employees made in the aftermath of the events at issue about the

23  very facts that will be the focus of this trial—the taking and sharing of photos of the

24  victims' remains.  As a result, they are chock full of admissions (as well as false

25  exculpatory statements) that establish Defendants' violations of Plaintiff's rights.

26      *Third*, Defendants make more than a hundred brand-new objections asserting

27  that all internal investigation materials are barred by FRE 407 as a subsequent

28  remedial measure.  Even if not waived, these new objections are meritless.

As the Ninth Circuit has explained, "subsequent remedial measures" included "only the actual remedial measures themselves and not the initial steps toward ascertaining whether any remedial measures are called for." *In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 816 (9th Cir. 1989); *see Aguilar v. City of Los Angeles,* 853 F.App'x 92, 95 (9th Cir. 2021) (unpublished).  In *Aguilar,* for instance, the Ninth Circuit held that the trial court erred in excluding the findings of a police department's investigation of an arrestee's death in a wrongful death action.  The court reasoned that the findings were "retrospective, not remedial; they assessed what happened and whether the officers' actions were consistent with LAPD policy, without meting out discipline or changing LAPD policy."  *Id.; see also Rigsbee v. City and Cnty. of Honolulu,* 2019 WL 1064106, at *2 (D. Haw. Mar. 6, 2019) ("The doctrine of subsequent remedial measures doe does not extend to internal investigations.  Subsequent remedial measures include only the actual remedial measures themselves and not the initial steps toward ascertaining if a remedial measure is required.").

Even if the Sheriff's Department's ultimate decision to discharge or suspend a particular employee qualified as a subsequent remedial measure, that would counsel in favor of surgically *redacting* a handful of documents that explicitly reference that conclusion.  It would not justify excluding dozens of interview transcripts, recordings, and other opposing party statements in which no discipline is discussed and County employees make a mountain of admissions regarding the conduct at issued in this cases.  *See also Aranda v. City of McMinnville,* 942 F.Supp.2d 1096, 1104 (D. Or. 2013) (concluding that investigation of accusations of excessive force by police officers was not a subsequent remedial measure and noting the "distinction . . . between the actual disciplining of the officers for their conduct, which could constitute a remedial measure, and the investigation that precedes a disciplinary process");  *J.M. v. City of Milwaukee*, 249 F.Supp.3d 920,932 (E.D. Wis. 2017) ("The remedial act—firing [the policy officer]—is not inextricably intertwined with

- 7 -

the investigation leading to that act, namely the determination in the Discharge Proceedings that his search was unreasonable . . . .")

**Defendants' Preliminary Statement**

Defendants are cognizant of the need for an efficient presentation of evidence at trial—initially designating only 87 exhibits to Plaintiff's 348.  Defendants have added 7 more—consisting of publicly-available policy manuals—because they are a necessary part of addressing Plaintiff's *Monell* theory based on an alleged failure to train.

Defendants have also carefully combed through Plaintiff's exhibits so that well-founded objections may be resolved before trial whenever possible.  Plaintiff complains that Defendants are asserting "226 new objections."  These consist of hearsay and subsequent-remedial-measure objections to a single category of documents—post-incident investigative documents from LASC and LACFD.  The admissibility of these voluminous materials is a critical question for the Court to resolve.

Plaintiff's contention that these objections have been waived is unsupported. Nothing in the Court's Civil Trial Order (Dkt. 280) suggests that a party cannot make an objection that was not explicitly cited in the prior Pre-Trial Stipulation (Dkt. 232) or Joint Statement (Dkt. 278).  Defendants could have raised these objections at trial.  Defendants have asserted them now so that Plaintiff has a fulsome opportunity to respond and the Court can consider both sides' arguments on these important issues.

Plaintiff's assertion that the "majority" of Defendants' objections are "objectively frivolous" is also incorrect.  *First*, Plaintiff argues that post-incident investigative transcripts and recordings are not inadmissible hearsay because they constitute statements by a party opponent.  This is wrong.  None of the individuals

- 8 -

1    whose testimony is transcribed or recorded are parties to the first phase of trial on

2    Plaintiff's *Monell* claim.

3         Plaintiff contends that *any* statement by a low-level employee constitutes an

4    admission by the County of Los Angeles—an entity that employs over 112,000

5    individuals.  However, none of the employees that were interviewed were speaking

6    on behalf of the County.  When a declarant has nothing to do with the decisions of

7    the employer and is not authorized to speak on the employer's behalf, then the

8    declarant's statements are *not* party admissions.  *See Miller v. LCF, Inc.*, No. C-94-

9    3372-VRM, 1994 WL 669837, at *5 (N.D. Cal. Nov. 18, 1994); *Staheli v.*

10   *University of Mississippi*, 854 F.2d 121, 127 (5th Cir. 1988) (statements of a

11   university professor not involved in a decision to deny another professor tenure not

12   to be vicarious admissions of university).

13        *Second*, these transcripts and recordings are irrelevant because they relate to

14   Plaintiff's abandoned "failure to adequately investigate and discipline" theory under

15   *Monell*.  Initially, Plaintiff alleged three *Monell* theories: (i) failure to train; (ii)

16   failure to adequately investigate and discipline; and (iii) a failure to establish a

17   policy or procedure addressing the treatment of human remains."  (SAC ¶ 32.)

18   Plaintiff abandoned (ii) and (iii) by not opposing Defendants' motion for summary

19   judgment on these theories.  (*See* Dkt. 116 at 15:275-26:24).  The parties have

20   separately briefed this waiver issue for the Court.  [Dkt. 201, 202.]

21        Plaintiff now claims that post-incident investigation is also relevant to his

22   "failure to train" theory under *Monell*.  But this new argument is not supported by

23   any competent authority.  Defendants' subsequent investigations are necessarily

24   irrelevant to Plaintiff's "failure to train" theory because they occurred after the

25   alleged failure to train and the incidents at issue.  There is also no reason Plaintiff

26   needs to rely on the transcripts and audio recordings.  Plaintiff intends to call the

27   recorded witnesses at trial and can question them then about what happened on the

28   day of the crash, their conduct, and the conduct of others.  Transcripts or audio

1   recordings can be used for impeachment if appropriate.  Plaintiff's attempt to admit

2   these materials in advance of testimony is not proper.

3       *Third*, these exhibits are also inadmissible because they reflect subsequent

4   remedial measures.  Under Federal Rule of Evidence 407, "[w]hen measures are

5   taken that would have made an earlier injury or harm less likely to occur, evidence

6   of the subsequent measures is not admissible to prove . . . culpable conduct."  Fed.

7   R. Evid. 407.  Defendants' investigation and disciplinary actions were undertaken to

8   make sure the conduct complained of by Plaintiff does not happen again.  Courts

9   have recognized that disciplinary proceedings are subsequent remedial measures in

10  civil rights cases.  *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417

11  (9th Cir. 1986) (in section 1983 case based on police use-of-force, Court properly

12  excluded evidence from Internal Affairs investigation because "[t]he Internal Affairs

13  investigation and measures taken by the defendant City were remedial measures

14  taken after the incident").

15      Plaintiff relies on *In re Aircrash in Bali, Indonesia* to argue there is a

16  distinction between remedial measures and the "initial steps toward ascertaining

17  whether any remedial measures are called for."  871 F.2d 812, 816 n.2 (1989).

18  However, the Ninth Circuit in *In re Aircrash* specifically declined to address this

19  issue.  *See id.*  Even if this distinction could be made in some cases, the

20  investigations here were sweeping and remedial from start to finish—intending to

21  examine department policy and impose necessary discipline.

22      Plaintiff's reliance on *Aguilar v. City of Los Angeles*—an unpublished Ninth

23  Circuit opinion—is also misplaced.  853 Fed. Appx 92, 95 (9th Cir. 2021)

24  (unpublished).  The investigation at issue in *Aguilar* only involved an LAPD

25  investigation into an in-custody death.  The investigation did not result in any

26  subsequent disciplinary proceedings or policy changes.  The remedial purpose of the

27  investigations here was at the forefront and not only resulted in discipline to specific

28  individuals, but also served as the basis for articulating and developing policies and

1  procedures.  The materials generated by these remedial processes are inadmissible

2  under Fed. R. Evid. 407.

3       Defendants respectfully ask the Court to consider and sustain these and

4  Defendants' other objections.  Defendants' objections are well-founded and

5  necessary to respond to Plaintiff's ever-evolving theories and streamline the

6  presentation of admissible, non-cumulative evidence at trial.

# **PLAINTIFF'S EXHIBITS**

**I.    Transcripts and Audio Recordings of Internal Investigation Interviews.**

11       Ninety-two (92) of Plaintiff's exhibits to which Defendants object are

12  transcripts and audio recordings of internal investigation interviews related to the

13  photos.  Due to file size, audio recordings of certain interviews are split into two or

14  three files.  A list of these exhibits and their descriptions is attached hereto as

15  **Appendix A**.

16       **Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);

17  More prejudicial than probative (FRE 403); Hearsay (FRE 801); Subsequent

18  Remedial Measures (FRE 407).

19       **Plaintiff's Response to the Objection:**  Following the *Los Angeles Times*

20  reports on February 27 and 28, 2020, the Sheriff's and Fire Departments conducted

21  internal investigations in which they audio-recorded (and, in the case of the Sheriff's

22  Department, transcribed) interviews with more than three dozen witnesses who will

23  testify at trial.  The transcripts and recordings contain a mountain of admissions by

24  Defendants' employees regarding, among other things, (i) the gratuitous taking,

25  sharing, and display of photos of the victims' remains; (ii) the timing and

26  circumstances of the employees' purported deletion of the photos; (iii) the Sheriff's

27  Department's efforts to cover up the wrongdoing via an amnesty offer to the

28

1  offending deputies; and (iv) Fire Department employees' intentional destruction of

2  evidence upon learning they would face scrutiny.

3        Given that the Departments' interviews of their employees focused directly

4  on the controversy at issue in this case, the recordings and transcripts are highly

5  relevant to issues Mr. Chester must prove at trial.  For example, the transcript and

6  audio of Detective Scott Miller's interview (Ex. 134, 137, and 367) includes the

7  following exchange:

8      <u>Miller</u>:     One of the deputies had said that they had photos from the

9                  crash site and I said, "Oh, can I see them?"  And he said, "Oh,

                I'll just send them to you."  So, they showed up on my phone,

10                 my cell phone.  And that's where they went.

11                  . . .

12     <u>Investigator</u>:  And was there any purpose or any reason why you received the

                photographs?  Were they used for anything?

13     <u>Miller</u>:     No.

14                  . . .

15     <u>Investigator</u>:  Those 12-ish photos that you did receive, did you use those

                photos at all while working the command post?

16     <u>Miller</u>:     No.

17                  . . .

18     <u>Investigator</u>:  Alright, do you recall anyone at the command post that day

19                 using the photographs for any particular reason?  As part of the

                investigation or duties at the command post, any –

20     <u>Miller</u>:     No.

21

22     Deputy Ruby Cable's interview (Exs. 331 and 332) contains similar

23 admissions:

24     <u>Investigator</u>:  Did you need [the photos] for any reason?

25     <u>Cable</u>:     No.

26                  . . .

27     <u>Investigator</u>:  Any other reason why you may have had those pictures that I

                haven't asked you?

28     <u>Cable</u>:     No.

1          . . .

2  Investigator:   I think I already asked you this, but did you need this for your investigation of what you were doing in your assignment?

3  Cable:   No.

4          . . .

5  Investigator:   Do you believe it was appropriate to obtain these photographs from Deputy Mejia?

6  Cable:   No.

7  Investigator:   Why not?

8  Cable:   Like you said earlier, I had no purpose of having them.

9       Incriminating admissions also abound in the Fire Department's interview

10  materials.

11      The interview materials also evidence the Sheriff's and Fire Department's

12  lack of policies and training regarding photos of human remains.  For example,

13  Sergeant Travis Kelly, who initially served as first-in-command at the Sheriff's

14  Department's command post for the helicopter crash, stated in his interview (Exs.

15  145 & 352) that, even with the benefit of hindsight, there is nothing he would do

16  differently regarding the way he supervised the deputies on the day of the accident.

17  Sergeant Kelly demonstrated no awareness of any Sheriff's Department policy

18  regarding photography of accident scenes or human remains, telling investigators

19  that he believed it was appropriate for deputies at the crash site to use their personal

20  cell phones to take photos of the scene.  At one point in the interview, Kelly stated:

21  "[I]f it happened again I guess I – if there was [a] policy that specifically said on

22  how to – I don't know.  I guess how to handle any type of video or – or pictures and

23  – then it would be brought up, but I don't know."

24      The admissions contained in the interview materials will play an important

25  role in Plaintiff's case at trial, particularly given that dozens of County witnesses

26  have repeatedly contradicted their interview statements in depositions and

27  declarations in this action.  For example, notwithstanding her repeated admissions in

28

her interview with Department investigators that she did not need the photos and "had no purpose [for] having them," Deputy Ruby Cable later averred in a declaration supporting Defendants' summary judgment motion that she obtained the photos from Deputy Rafael Mejia "because, as a trainee, I might be tasked with writing a report." Deputy Mejia, for his part, admitted in his Department interview that Deputy Cable didn't need the photos and that he shared them with her because "curiosity got the best of us." However, in a summary judgment declaration, Mejia averred that he sent the photos to Cable because he thought she "might need to write [a] report[]" and "was going to take supplies up to the crash site itself, including lighting equipment for the night, so I thought she might need the photos."

In light of the above, Plaintiff plans to use the interview materials at trial in at least two recurring circumstances.

*First*, in the event County employees testify inconsistently, Plaintiff will impeach the employee with their prior admissions. Importantly, because statements made in the internal investigation interviews are non-hearsay statements of a party opponent, Plaintiff intends to offer the prior interview statements both for impeachment and for the truth of the matter asserted in the statement. *See* FRE 801(d)(2)(D) (non-hearsay statements include a "statement [that] is offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"). For example, if Deputy Cable and Deputy Mejia were to repeat the false testimony they have previously given in declarations, Plaintiff would introduce their past interview statements both to impeach them and to substantively prove that Mejia's transmission of the photos to Cable was gratuitous and motivated by curiosity.

*Second*, in the event County employees purport to have a failure of recollection regarding a factual issue on which they previously provided specific information in an internal interview, Plaintiff will use the prior interview statement as substantive evidence of what occurred, irrespective of whether the prior statement

is technically viewed as impeaching the witness and their professed lack of memory. For example, if Deputy Chris Jauregui testifies at trial that he does not remember how many photos he received, Plaintiff will use his interview materials not only to impeach him or refresh his recollection, but as substantive evidence that he received six to eight photos (as he stated in his interview). This is proper because Jauregui's prior interview statements are non-hearsay statements of a party opponent. *See* FRE 801(d)(2)(D).

Plaintiff hopes that Defendants' employees—many of whom are sworn peace officers—will tell the truth at trial such that their prior admissions need not be frequently introduced. However, the County employees' testimony in this action has often deviated dramatically from their prior interview statements, and this pattern may continue at trial. It is therefore essential that Mr. Chester be able to use the interview materials both for impeachment and as substantive evidence, which is why he has listed them on the exhibit list.

Given the incriminatory nature of the interview materials, it is unsurprising that Defendants do not want the jury to be exposed to them at trial. However, Defendants' objections to the interview materials are baseless and (in large part) waived.

### A.    Defendants' Hearsay Objections Are Waived and Meritless.

As shown in **Exhibit A** to the Declaration of Craig Jennings Lavoie, Defendants did not assert hearsay objections regarding any of the interview materials in the parties' prior pre-trial exhibit stipulation (Dkt. 232) or 446-page joint statement (Dkt. 278). Now, rather than heed the Court's instruction to narrow objections, Defendants newly assert ninety-two hearsay objections to each and every one of the interview materials. These objections should be deemed waived for being

1  omitted from the parties' prior exhibit filings and void for violating the Court's

2  order to narrow objections.

3      Defendants' new hearsay objections also fail on the merits.  As an initial

4  matter, Defendants argue (without citation to authority) that the interview materials

5  are not admissible under Rule 801(d)(2)(D) because they are statements of "low-

6  level employees."  But the relevant rule does not distinguish between statements

7  made by low- or high-level employees.  *See*, *e.g.*, *Wilkinson v. Carnival Cruise*

8  *Lines, Inc.*, 920 F.2d 1560, 1565 (11th Cir. 1991) ("Nothing in Rule 801(d)(2)(D)

9  prevents the out-of-court statements of low-level employees from coming into

10  evidence as non-hearsay admissions of a party-opponent in appropriate factual

11  scenarios."); *Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 8 (1st Cir.

12  1986) ("[T]here is nothing in Rule 801(d)(2)(D) that requires an admission be made

13  by a management level employee.").

14      Rather, the statements of a party's employees are admissible under Rule

15  801(d)(2)(D) so long as: "(1) the statement [is] made by an agent or employee of the

16  party against whom the statement is being offered; (2) the statement . . . concern[s] a

17  matter within the scope of that employment relationship; and (3) the statement [is]

18  made while the declarant is yet employed by the party."  *Weil v. Citizens Telecom*

19  *Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019).  Each of these elements is met

20  with respect to the interview materials.  There is no dispute that the interview

21  statements were made by County employees while they were employed by the

22  Sheriff's Department or Fire Department.

23      The statements made in the interviews also plainly concern matters within the

24  scope of the County employees' employment.  In suggesting otherwise, Defendants

25  rely on two cases from other jurisdictions for the uncontroversial proposition that an

26  employee's statements are not admissible under Rule 801(d)(2)(D) if those

27  statements concern matters outside the scope of the employment relationship.

28  Neither case is relevant to the issue at hand.  In *Miller*, the court held that Rule

801(d)(2)(D) did not cover two employees' statements regarding their employer's motive for closing a facility because "neither [employee] w[as] involved in Sprint's decision to close the LCF facility." *Miller v. LCF, Inc.*, 1994 WL 669837, at *5 (N.D. Cal. Nov. 18, 1994). Similarly, in *Staheli*, the court held that Rule 801(d)(2)(D) did not cover an accounting professor's statement regarding a university's decision not to grant tenure to a geology professor because the accounting professor "had nothing to do with" the tenure decision. *Staheli v. Univ. of Mississippi*, 854 F.2d 121, 127 (5th Cir. 1988).

Here, by contrast, the County employees' interview statements directly relate to their work for the County. Defendants themselves have admitted time and time again that these statements concern matters within the scope of the County employees' employment. As they have in the past, Defendants will undoubtedly argue at trial that their employees possessed crash-site photos because they were involved in the County's response to the crash. Defendants cannot have it both ways—arguing in one breath that these employees were involved in the County's response and in another that these statements concern matters outside the scope of employment. Thus, Defendants' own position is that these statements concern matters within the scope of the County employees' employment.

Moreover, the law is clear that an employee's statements made in connection with an employer's investigation concern matters within the scope of the employment relationship. For example, in *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041 (9th Cir. 1999), the plaintiff sued his employer after contracting viral encephalitis. The employer's insurance company conducted an investigation and created transcripts of interviews with the plaintiff's coworkers. *Id.* at 1044. The court held that the coworkers' interview statements were admissible under Rule 801(d)(2)(D)—the coworkers were acting within the scope of their employment by cooperating with the investigation. *Id.* at 1045. The court also noted that, "[i]n all likelihood, [plaintiff's] co-workers would have been disciplined had they refused to

1   share information with their employer's insurance investigator.  The fact that the

2   interviews were conducted on company time supports this view."  *Id.* at 1046.

3        Numerous other courts have similarly held that employee statements made

4   during a work-related investigation constitute non-hearsay statements under Rule

5   801(d)(2)(D).  *See, e.g.*, *Quintero v. United States*, 2014 WL 201608, at *2 (D.

6   Mass. Jan. 15, 2014) (investigation reports generated by employee tasked with

7   investigating matter admissible under Rule 801(d)(2)(D)); *E.E.O.C. v. New Breed*

8   *Logistics*, 2013 WL 10129301, at *1 (W.D. Tenn. Apr. 26, 2013) (statements made

9   by employee in connection with internal sexual harassment investigation regarding

10  coworker admissible under Rule 801(d)(2)(D)); *Weinstein v. Siemens*, 756 F. Supp.

11  2d 839, 852–53 (E.D. Mich. 2010) (statements made by employees in connection

12  with police investigation regarding coworker's hit-and-run admissible under Rule

13  801(d)(2)(D)); *Javier v. City of Milwaukee*, 2008 WL 2412980, at *3–6 (E.D. Wis.

14  June 12, 2008) (statements made by police officer during internal investigation

15  regarding police shooting admissible under Rule 801(d)(2)(D)); *see also*, *e.g.*, *Little*

16  *v. Shell Expl. & Prod. Co.*, 2017 WL 4742917, at *27 (S.D. Tex. Aug. 18, 2017)

17  (statements by employees in connection with OIG investigation concerning *qui tam*

18  lawsuits admissible under Rule 801(d)(2)(D)).  Because the County employees'

19  interview statements were made in connection with Sheriff's and Fire Department's

20  internal investigations, they inherently concern matters within the scope of their

21  County employment and are admissible under Rule 801(d)(2)(D).

22       Defendants also argue—again, without citation to authority—that the

23  interview materials are inadmissible because many of the employees who made

24  statements have not been individually named as defendants.  This is a red herring.

25  The County, Sheriff's Department, and Fire Department *are* parties to this lawsuit,

26  and Rule 801(d)(2)(D) straightforwardly allows Plaintiff to admit statements of

27  those entities' employees as party admissions.  There is no requirement that the

28  individual employees who made the statements *also* be parties to the lawsuit.  *Cf.*

- 18 -

*Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1001 (9th Cir. 2019) (admitting employee's statements against employer under Rule 801(d)(2)(D) even though employee not named in lawsuit); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, Ltd., 454 F. Supp. 2d 966, 973–74 (C.D. Cal. 2006) (admitting employees' statements against employer under Rule 801(d)(2)(D) even though employees not named in lawsuit).  Such a requirement would eviscerate that rule, as it is commonplace for lawsuits against corporate and governmental entities to not include the entities' individual employees as parties to the case.

**B.     Defendants' Subsequent Remedial Measures Objections Are Waived and Meritless.**

As shown in Exhibit A to the Declaration of Craig Jennings Lavoie, Defendants did not previously object to any of the interview materials as subsequent remedial measures subject to exclusion under Federal Rule of Evidence 407.  As with Defendants' newly-asserted hearsay objections, the Court should deem the Rule 407 objections waived and void.

But even if the Court were to consider Defendants' untimely Rule 407 objection, it is meritless for two independent reasons.

***First***, Rule 407 is inapplicable to statements that LASD and LAFD employees made to investigators during the Departments' investigation.  Rule 407 prohibits evidence of subsequent measures "that would have made an earlier injury or harm less likely to occur" when admitted to prove "culpable conduct."  Fed. R. Evid. 407.  Remedial measures include "subsequent repairs, installation of safety devices, changes in company rules, and discharge of employees.'" *Aguilar*, 853 F. Appx at 95 (quoting Fed. R. Evid. 407 advisory committee's note).

In the context of post-incident investigations, courts draw a clear line between *actions* taken to remedy a threat and *investigative activities* that precede such action.  As the Ninth Circuit has explained, "subsequent remedial measures" include "only the actual remedial measures themselves and not the initial steps toward ascertaining

1  whether any remedial measures are called for*."* *In re Aircrash in Bali, Indonesia*,

2  871 F.2d 812, 816 (9th Cir. 1989); *see Aguilar v. City of Los Angeles*, 853 F. App'x

3  92, 95 (9th Cir. 2021) (unpublished).  In *Aguilar*, for instance, the Ninth Circuit held

4  that the trial court erred in excluding the findings of a police department's

5  investigation of an arrestee's death in a wrongful death action.  The court reasoned

6  that the findings were "retrospective, not remedial; they assessed what happened and

7  whether the officers' actions were consistent with LAPD policy, without meting out

8  discipline or changing LAPD policy." *Id.*  Rule 407 simply did not apply.

9      This distinction between "retrospective" inquiry and remediation has been

10  widely adopted, with numerous courts affirming the admissibility of post-incident

11  investigations, even when they could lead to later remedial actions:

12      In *Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron*, 805 F.2d

13  907 (10th Cir. 1986), the Tenth Circuit held that a manufacturer's accident testing

14  and report was admissible, reasoning that "such tests are conducted for the purpose

15  of investigating the occurrence to discover what might have gone wrong or right,"

16  whereas "[r]emedial measures are those actions taken to remedy any flaws or

17  failures indicated by the test." *Id.* at 918.

18      In *Prentiss & Carlisle Co., Inc. v. Koehring–Waterous Div. of Timberjack,*

19  *Inc.*, 972 F.2d 6 (1st Cir. 1992), the First Circuit held that Rule 407 does not prohibit

20  a manufacturer's analysis of a product even though "the analysis may often result in

21  remedial measures being taken (as occurred here)" because those analyses are not

22  remedial measures.  *Id.* at 10.

23      In *Westmoreland v. CBS, Inc.*, 601 F. Supp. 66 (S.D.N.Y. 1984), the court

24  found Rule 407's rationale inapplicable to an "internal investigative report or . . .

25  facts revealed by it," explaining that excluding such facts from evidence "would

26

27

28

UPDATED JOINT STATEMENT RE: OBJECTIONS IN PRE-TRIAL EXHIBIT STIPULATION

deprive injured claimants of one of the best and most accurate sources of evidence and information." *Id.* at 67.

As in *Aguilar* and these other cases, LASD and LAFD's investigations were retrospective and focused on developing a record of historical facts. Employees were asked about taking and receiving photos, disseminating them to others, and deleting them from their devices. Their responses provided an extensive record of the actions of Defendants' employees. Excluding those responses from evidence would "strain the spirit of the remedial measure prohibition in Rule 407," *Rocky Mountain Helicopters*, 805 F.2d at 918, and deprive Plaintiff of critical evidence. *See Westmoreland*, 601 F. Supp. at 67 (explaining that to exclude post-incident investigations would "deprive injured claimants of one of the best and most accurate sources of evidence and information"). Accordingly, Rule 407 is inapplicable to statements made and fact developed during the investigations, even if the investigations resulted in disciplinary action.

Defendants resist this straightforward application of Rule 407 by citing *Maddox v. City of Los Angeles*, 792 F.2d 1408 (9th Cir. 1986), but *Maddox* is distinguishable. In *Maddox,* the court affirmed the exclusion of a disciplinary proceedings against a police officer, noting that the issue "presents a close question." *Id.* at 1417-1418. But as the Ninth Circuit explained in distinguishing *Maddox* in its *Aguilar* decision, an "investigation" is not a "disciplinary proceeding." *Aguilar*, 853 F. App'x at 1147. Whatever Rule 407's application to the act of disciplining an employee, it had no application to the prior investigation by which the facts are ascertained. *Id.*; *see also Aranda v. City of McMinnville*, 942 F. Supp. 2d 1096, 1104 (D. Or. 2013) (concluding that investigation of accusation of excessive force by police officer was not a subsequent remedial measure and noting the "distinction . . . between the actual disciplining of officers for their conduct, which could constitute a remedial measure, and the investigation that precedes a disciplinary process"); *J.M. v. City of Milwaukee*, 249 F. Supp. 3d 920, 932 (E.D.

Wis. 2017) ("The remedial act—firing [the police officer]—is not inextricably intertwined with the investigation leading to that act, namely the determination in the Discharge Proceedings that his search was unreasonable. . . ."); *Hansen v. Werner Enterprises Inc.*, 2016 WL 7479349, at *4 (C.D. Cal. May 18, 2016) ("Rule 407 applies only to remedial measures actually taken by Defendants; it does not apply to Defendants' internal investigations or reports created in the process of determining the appropriate remedial actions."); *In re Chicago Flood Litig.*, 1995 WL 437501, at *5 (N.D. Ill. July 21, 1995) ("City statements regarding the actions of its employees are not themselves remedial; instead, they merely explain why the city elected to pursue disciplinary action.").

Even if the Fire Department's act of disciplining Jordan, Imbrenda, and Kahan after the investigation was a subsequent remedial measure, statements made during the investigation are admissible.  To the extent any of these documents (*e.g.*, letters issued by the LAFD to certain employees) reference contemplated disciplinary action, the appropriate response is to redact the letters to remove reference to the disciplinary actions, not exclude them in their entirely and depriving Plaintiff of key admissions relevant to his claims.  *See Rigsbee v. City & Cnty. of Honolulu*, 2019 WL 1064106, at *2 (D. Haw. Mar. 6, 2019) ("A defendant's self analysis of deficiencies does not constitute subsequent remedial measures for purposes of Fed. R. Evid. 407.") (excluding "Recommendations" section of report as remedial measure, but admitting remaining sections that "provide factual background, opinions, and analysis as to what happened during the actual events at issue in the case" as opposed to "describ[ing] subsequent remedial measures that the [municipalities] implemented as a result"); *In re Chicago Flood Litig.*, 1995 WL 437501, at *5 (admitting city's statements regarding actions of its employees, which "explain why the city elected to pursue disciplinary action," but stating court would

"consider a request by the city to redact references to disciplinary actions taken against particular employees from any statement offered by plaintiffs").

**Second**, even if facts developed during the Departments' investigations could be deemed the product of subsequent remedial measures—and they cannot—the evidence would still be admissible for purposes other than proving culpability.  Rule 407 states expressly that "the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures."  Fed. R. Evid. 407.  As discussed, witnesses for Defendants made important admissions during their investigation interviews, only to contradict those admissions during their depositions and in sworn declarations.  To the extent these witnesses testify in similar fashion at trial, transcripts and recordings of their prior statements are plainly admissible as impeachment.

## C.    <u>Defendants' Relevance and 403 Objections Are Meritless.</u>

Defendants' argument that their employees' interviews are irrelevant or unfairly prejudicial is frivolous.

As an initial matter, Defendants' argument rests on the faulty premise that Plaintiff abandoned his so-called "failure-to-investigate" theory of *Monell* liability.  In reality, as explained in Plaintiff's supplemental briefing regarding the *Monell* claim (Dkt. 201), he did no such thing.  An agency's failure to investigate or discipline misconduct is not an independent theory of *Monell* liability.  Rather, Defendants' failure to meaningfully investigate or impose discipline is compelling *evidence* of (1) Defendants' deliberate indifference to the inadequacy of their training and policies and (2) their pre-existing custom and practice of taking and sharing improper death images—Plaintiff's two alternative theories of *Monell* liability.  Plaintiff has never "abandoned" any such evidence.

Regardless, Defendants' argument misses the point.  Plaintiff is not proffering the interviews of Defendants' employees to prove that Defendants' internal investigations were insufficient or to establish the discipline (or lack thereof) that

was imposed on the wrongdoers.  The interviews are relevant because they are statements County employees made in the aftermath of the events at issue (when memories were fresh) about the very facts that will be the focus of this trial—the taking and sharing of photos of the victims' remains.  As a result, they are chock full of admissions (as well as false exculpatory statements) that establish Defendants' violation of Plaintiff's constitutional right to control the death images of his loved ones, their negligence, and their invasion of privacy under California law.  Any notion that such admissions are not relevant does not pass the straight-face test.

Nor would such prior statements regarding the facts at the heart of this matter be "confusing" or "misleading," as Defendants suggest.  Statements about the facts at issue will naturally and straightforwardly shed light on those very facts.  To take just one example, Brian Jordan's admission to County investigators that the remains of Kobe Bryant were "probably" in photos he took on the day of the crash is relevant for obvious reasons—all the more so because Jordan now claims an inability to remember anything whatsoever about the events of January 26, 2020.

### D.   **Plaintiff Proposes an Alternative for the Court's Consideration.**

In summary, there is no basis for Defendants to object to the interview materials.  To the extent the Court's preference is to pre-admit all exhibits—as opposed to admitting the interview materials only upon their actual use during trial—Mr. Chester urges that the interview materials be pre-admitted.

At the same time, Plaintiff recognizes that *pre-admitting* ninety-two transcripts and recordings, only some of which will ultimately be used depending on the County employees' testimony at trial, may not be ideal.  Accordingly, Plaintiff proposed a compromise to Defendants whereby all interview materials would be listed in a separate document as "Conditional Exhibits" that Plaintiff may move to introduce selectively throughout trial, with Defendants' reserving the right to object to their admission.  Defendants rejected this compromise, but Plaintiff offers it here for the Court's consideration.  If the Court prefers this approach, a list of exhibits

Plaintiff would agree to list as "Conditional Exhibits" is attached hereto as **Appendix A**.

### Defendants' Response:

### A.   Defendants Have Not Waived Any Objections

As an initial matter, Defendants have not waived their hearsay and subsequent remedial measures objections.  There is nothing in the Court's Civil Trial Order (Dkt. 280) suggesting that a party cannot make an objection that was not explicitly cited in the prior Pre-Trial Stipulation (Dkt. 232) or Joint Statement (Dkt. 278).  These objections are plainly relevant and well-taken.

Moreover, there is no prejudice to Plaintiff, as Defendants raised these objections during the parties' meet and confer prior to the submission of this stipulation.  There is no basis or authority—and Plaintiff cites none—for his contention that Defendants waived any objections by not citing them in previous pretrial submissions.  To the contrary, Defendants could have raised these objections at trial if they wanted to.  But rather than wait until then to do so, Defendants chose to raise them now so that Plaintiff would have an opportunity to respond and the Court could consider both sides' arguments.

### B.   Transcripts And Audio Recordings Are Not Relevant to Plaintiff's Remaining *Monell* Claim.

Transcripts and audio recordings of LASD's Internal Affairs Bureau ("IAB") investigation are not relevant to any of Plaintiff's claims in this case.  Plaintiff has abandoned his "failure to adequately investigate and discipline" theory under *Monell*.  Plaintiff alleged three Monell theories in his Second Amended Complaint ("SAC"): (i) failure to train; (ii) failure to adequately investigate and discipline; and (iii) a failure to establish a policy or procedure addressing the treatment of human remains."  (SAC ¶ 32.)  Defendants moved for summary judgment on all three theories (*See* Dkt. 88-1 at 21:1-26:24.)  And Plaintiff did not oppose Defendants' motion as to theories (ii) and (iii).  (*See* Dkt. 116 at 15:27-25:8.)  Therefore, under

1   Ninth Circuit law, Plaintiff abandoned all but the training theory.  *See Shakur v.*
2   *Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)

3       At the February 4, 2022 Final Pretrial Conference, the Court stated that it
4   agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not
5   opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See*
6   Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff asked to
7   be allowed to file briefing on the issue, which the Court agreed to.  [*Id.* At 7:11-8:4,
8   68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.
9   [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]
10  And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet
11  to issue a formal ruling on the waiver/abandonment issue.

12      If the Court sticks to its tentative ruling, transcripts and audio recordings of
13  LASD's Internal Affairs Bureau interviews would be irrelevant and not admissible
14  at trial.  Specifically, allowing Plaintiff to offer these exhibits would be confusing
15  and misleading.  It would lead jurors to believe that certain *Monell* theories are still
16  part of this case despite Plaintiff having abandoned them.  Defendants will be forced
17  to either ignore the irrelevant evidence and hope the jury understands the proper
18  parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing
19  witnesses and evidence to defend against abandoned claims.  Plaintiff now argues
20  without any citation that this evidence is relevant to his "failure to train" policy
21  under *Monell*.  Wrong.  No case has held that a government agency's failure to
22  investigate or discipline is relevant to proving a "failure to train" theory.  That is the
23  reason Plaintiff does not cite any case law for this proposition.  In fact, prior to the
24  Court stating that its practice is to bifurcate federal and state law claims at trial,
25  Plaintiff had only argued that this evidence was relevant to proving his "custom or

26
27
28

practice" theory under *Monell*.  Plaintiff changed his argument because he is trying desperately to introduce this improper evidence at trial.

Plaintiff also seeks to introduce the entirety of the IAB interview transcripts, which will result in an undue consumption of time and put testimony before jurors that has nothing to do with this case.  This is further compounded by the fact that Plaintiff is also seeking to introduce the recording of these same interviews as trial exhibits.

There is also no reason Plaintiffs needs to rely on the transcripts and audio recordings.  Plaintiff concedes that he intends to call all of the witnesses who were interviewed by IAB as witnesses at trial.  Plaintiff can ask these witnesses about what happened on the day of the crash, their conduct, and the conduct of others.  To the extent a witness testifies inconsistently, Plaintiff can use a transcript or audio recording to impeach the witness.  Indeed, Plaintiff admits that he plans to use these materials to do just that.  Yet, in seeking to pre-admit 92 transcripts and recordings, Plaintiff is attempting an end run around the rules for impeachment by trying to have these materials admitted without examining the witnesses first.  That is not proper.

### C.     The Transcripts And Audio Recordings Are Inadmissible Hearsay

Plaintiff also argues that IAB transcripts and recordings should be admitted as substantive evidence because these materials constitute statements by a party opponent under FRE 801(d)(2)(D).  This argument is baseless.  The transcripts and recordings are hearsay and cannot be admitted substantively for the truth of the matter asserted therein.  None of the individuals whose IAB testimony is transcribed by these transcripts and recordings are parties in this trial.[1]  Deeming all 92

---

[1] Although Plaintiff has asserted claims against individual deputies, this Court has bifurcated Plaintiff's state law claims.  [Feb. 4, 2020 Final Pretrial Conference Hearing Tr. at 17:16-18:3.]  Therefore, the County is the only party at trial.

transcripts and recordings as statements by a party opponent would eviscerate FRE 801.

Plaintiff makes the extraordinary claim that any statement by a low-level employee constitutes an admission by the County of Los Angeles, an entity that employs over 112,000 individuals. Plaintiff then claims such statements can be offered substantively at trial for their *truth*. None of the employees that were interviewed as part of the Internal Affairs Investigation were speaking on behalf of the County. Plaintiff does not cite a single case—nor could he—for the proposition that employee responses to questions asked during a factual inquiry conducted by the employer constitute binding admissions of the employer. Plaintiff cites *Weil v. Citizens Telecom Servs. Co., LLC*, for the proposition that all of the elements of FRE 801(d)(2)(D) are met in this case. *Weil* is inapposite. In *Weil*, the Ninth Circuit determined that a statement made by an employee's former manager indicating that the employee did not get hired for the director role he sought because he was not white and not a female, was admissible under FRE 801(d)(2)(D) because the former manager was "significantly involved in the process leading to the decision." 922 F.3d 993, 1001 (9th Cir. 2019). Thus the manager's statements in *Weil* fit squarely within the scope of her employment relationship. This situation is completely distinct from individual Sheriff's Deputies providing their personal recollections and answering questions as part of the Department's factual inquiry.

None of the other cases cited by Plaintiff support this overly-broad interpretation of FRE 801(d)(2)(D). For example, some of Plaintiff's cases involve situations where party employees were explicitly authorized to give statements to third parties on behalf of their employers. *See e.g.*, *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041 (9th Cir. 1999) (employees providing statements to employer's insurance investigator); *Weinstein v. Siemens*, 756 F. Supp. 2d 839, 852-53 (E.D. Mich. 2010) (employees providing statements to police at direction of employer); *Little v. Shell Expl. & Prod. Co.*, 2017 4742917, at *27 (S.D. Tex. Aug. 18, 2017)

(interviewees were agents of United States at the time they gave statements

regarding the United States' position on "the legality of the deductions").  In other

cases, the statements and conclusions of the investigator appointed by the employer

were found to constitute party admissions under FRE 801(d)(2)(D).  *See e.g.,*

*Quintero v. United States*, 2014 WL 201608, at *2 (D. Mass. Jan. 15, 2014)

(investigation report by the employee who was assigned to investigate matter at

issue found to constitute party admission); *E.E.O.C. v. New Breed Logistics*, 2013

WL 10129301, at *1 (W.D. Tenn. Apr. 26, 2013) (same).  *Javier v. City of*

*Milwaukee* is also inapposite as the statements at issue were made by a police officer

as part of a statutorily-mandated inquest, as opposed to a department-ordered

internal investigation.  *See* 2008 WL 2412980, at *1-3 (E.D. Wis. June 12, 2008).

    Plaintiff also relies on *Weil* and *Metro-Goldwyn-Mayer Studios, Inc. v.*

*Grokster, Ltd.* for the bald assertion that FRE 801(d)(2)(D) permits the admission of

any statements made by Defendants' employees.  This is false.  As pointed out

above, the employee statements at issue in *Weil* were made by a manager who was

authorized to speak on the matter at issue.  922 F. 3d. at 1001.  Similarly, *Metro-*

*Goldwyn-Mayer Studios* involved statements made in emails by the company's top

executives, including the CEO, Chairman, Chief Technology Officer, Director, and

Vice President for Marketing.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,*

*Ltd.*, 454 F. Supp. 2d 966, 973-74 (C.D. Cal. 2006).  Neither case supports

Plaintiff's contention that individual Sheriff's Deputies were speaking on behalf of

the County when they were interviewed as part of the Department's IAB

investigation.

    When a declarant has nothing to do with the decisions of the employer, and is

not authorized to speak on the employer's behalf, then the declarant's statements are

not party admissions.  *See Miller v. LCF, Inc.*, No. C-94-3372-VRM, 1994 WL

669837, at *5 (N.D. Cal. Nov. 18, 1994); *Staheli v. University of Mississippi*, 854

F.2d 121, 127 (5th Cir. 1988) (statements of a university professor not involved in a

decision to deny another professor tenure not to be vicarious admissions of university).  The fact that this case involves numerous out of court statements by County employees does not mean that Plaintiff is entitled to treat each and every statement by every employee as an admission on behalf of the County.  Allowing the out of court statements and recollections of individual Sheriff's Deputies to be presented to the jury *as County admissions* would permit an end run around FRE 802.  This is not the law.  The IAB transcripts and recordings are out of court statements.  To the extent Plaintiff attempts to offer these statements for the truth of the matter asserted therein, they are hearsay and must be excluded under FRE 801.

### D.   The Transcripts And Audio Recordings Reflect Subsequent Remedial Measures

These Exhibits are also inadmissible because they reflect subsequent remedial measures (i.e., discipline) taken by the Department.  Under Federal Rule of Evidence 407, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct."  Fed. R. Evid. 407

The Internal Affairs Investigation reflects steps taken by LASD to make sure the conduct complained of by Plaintiff does not happen again.  Courts have recognized that disciplinary proceedings are subsequent remedial measures in civil rights cases.  *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (in section 1983 case based on police use-of-force, Court properly excluded evidence from Internal Affairs investigation because "[t]he Internal Affairs investigation and measures taken by the defendant City were remedial measures taken after the incident").

Plaintiff relies on *Aguilar v. City of Los Angeles*—an unpublished Ninth Circuit opinion—to argue that FRE 407 does not apply to LASD's Internal Affairs Investigation.  Plaintiff's reliance on *Aguilar* is misplaced.  Specifically, the investigation at issue in *Aguilar* only involved an LAPD investigation into an in-

custody death.  *Aguilar*, 853 Fed. Appx 92, 95 (9th Cir. 2021) (unpublished).  The
investigation did not result in any subsequent disciplinary proceedings or policy
changes.  *Id.*  In contrast, the IAB investigation was a sweeping inquiry that was
undertaken not only to determine what actually took place, but also to re-examine
LASD policies and impose necessary discipline.  Unlike the investigation in
*Aguilar*, the IAB investigation and subsequent report represent post-incident steps
taken to ensure the conduct complained of by Plaintiff does not happen again.  The
remedial nature of the IAB investigation is further evidenced by the fact that it not
only resulted in discipline to specific individuals, but also served as the basis for
developing new policies and procedures within LASD.

Plaintiff relies on another Ninth Circuit case—*In re Aircrash in Bali,
Indonesia*—for the proposition that there should be a distinction between "actual
remedial measures" and "the initial steps taken toward ascertaining whether any
remedial measures should be called for."  871 F.2d 812, 816 n.2 (1989).  However,
*In re Aircrash* specifically declined to address this issue in its opinion.  *See id.*  Even
if this purported distinction between investigatory conduct and remedial conduct
was the law in the Ninth Circuit (it is not), it would be inapplicable in this case, as
the IAB investigation clearly consists of remedial conduct, in the form of discipline
and policy changes.

### E.    Plaintiff's Alternative Proposal Is Nonsensical

Plaintiff's proposed "compromise" that these 92 exhibits—encompassing
hundreds of pages of interview transcripts and dozens of hours of audio
recordings—be placed on a "Conditional Exhibits" list and dealt with at trial one-
by-one is nonsensical.  None of the exhibits should come into evidence for the
reasons set forth above.  The Court can and should preclude them from being
introduced at trial other than being used for impeachment.  In addition, and as
explained to Plaintiff during the meet and confer process, Defendants need to assert

1 their objections to these exhibits so that Plaintiff does not later claim they were

2 waived, as he is doing throughout this filing.

3 **II.     Declarations of County Employees.**

4      Twenty-six (26) of Plaintiff's exhibits to which Defendants object are

5 declarations that have been submitted by the County in this litigation, either in

6 support of Defendants' summary judgment motion or in opposition to Plaintiff's

7 motion for spoliation sanctions.  These declarations are listed on **Appendix A**.

8      **Defendants' Grounds for Objection:**  Hearsay (FRE 801).

9      **Plaintiff's Response to the Objection:**  Numerous County employees who

10 will testify at trial have previously submitted sworn declarations in this lawsuit.  By

11 design, the declarations directly pertain to the facts at issue in this case.  They are

12 also non-hearsay statements of a party opponent, admissible by Plaintiff for the truth

13 of the matter asserted therein.  Similar to the internal investigation interviews,

14 Plaintiff intends to use the declarations both for impeachment and as substantive

15 evidence, depending on how the County witnesses testify at trial.  *See* FRE

16 801(d)(2)(D) (non-hearsay statements include a "statement [that] is offered against

17 an opposing party and was made by the party's agent or employee on a matter

18 within the scope of that relationship and while it existed").  Given that County

19 employees' (cookie-cutter) declarations were prepared and filed by counsel for

20 Defendants, it is puzzling why Defendants wish to keep them out of the trial.

21      For the same reasons discussed above, *see supra* section I.A., Defendants'

22 hearsay objections are frivolous.  The declarations were made by County employees

23 while they were employed by the County and clearly concern matters within the

24 scope of the employment relationship.  Specifically, the declarations describe the

25 employees' supposed roles at the crash site and/or the Sheriff's and Fire

26 Departments subsequent internal investigation.  Hence, on their face, the

27

28

declarations are admissible as non-hearsay statements of a party opponent under Rule 801(d)(2)(D).

Like the internal investigation interviews, Plaintiff is also open to listing the twenty-six County employee declarations as conditional exhibits (*see* **Appendix A**) and admitting them selectively throughout trial as testimony unfolds.  Defendants have rejected this compromise.

**Defendants' Response:**  The declarations of County employees are inadmissible hearsay not subject to any exception.  None of these employees are parties in this case for purposes of trial.  [*See* Footnote 1, *supra*.]  Moreover, the mere fact that these individuals are employed by the County does not mean that their out of court statements constitute party admissions under FRE 801(d)(2)(D).  *See Miller v. LCF, Inc.*, No. C-94-3372-VRM, 1994 WL 669837, at *5 (N.D. Cal. Nov. 18, 1994); *Staheli v. University of Mississippi*, 854 F.2d 121, 127 (5th Cir. 1988) (statements of a university professor not involved in a decision to deny another professor tenure not to be vicarious admissions of university).

Additionally, there is no reason Plaintiff needs to rely on these Exhibits.  Plaintiff intends to call all of these individuals as witnesses at trial.  (*See* Dkt. 208.)  Plaintiff can ask each of these individuals about what happened on the day of the crash, their conduct, and the conduct of others.  To the extent a witness testifies inconsistently, Plaintiff can use their declaration to impeach them.  Plaintiff is attempting an end run around the rules for impeachment by trying to have these declarations admitted without examining the individuals first.  That is not proper.

As set forth above, *see supra* section I.C (Defendants' Response), Defendants' hearsay objections preclude admission of these declarations at trial and Plaintiff's "compromise" proposal is nonsensical (*supra* section I.E Defendant's Response).

III.    **Autopsy Reports.**

Six (6) of Plaintiff's exhibits to which Defendants object are autopsy reports for individuals who passed away in the helicopter crash but are not related to Plaintiff:

- ❖ Plaintiff's Exhibit 44:  Kobe Bryant Autopsy Report (COLA029905-COLA029921) – Emily Tauscher, Kristina McGuire

- ❖ Plaintiff's Exhibit 45:  Gianna Bryant Autopsy Report (COLA029882-COLA029904) – Emily Tauscher, Kristina McGuire

- ❖ Plaintiff's Exhibit 49:  Alyssa Altobelli autopsy report – Emily Tauscher, Kristina McGuire

- ❖ Plaintiff's Exhibit 50:  Christina Mauser autopsy report – Emily Tauscher, Kristina McGuire

- ❖ Plaintiff's Exhibit 51:  Keri Altobelli autopsy report – Emily Tauscher, Kristina McGuire

- ❖ Plaintiff's Exhibit 52:  John Altobelli autopsy report – Emily Tauscher, Kristina McGuire

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403); Subsequent remedial measures (FRE 407).

**Plaintiff's Response to the Objections:**  Mr. Chester has asked Defendants to stipulate that the photos of the victims taken and shared by their employees included the remains of Sarah and Payton Chester.  Defendants have refused.  In other words, Defendants insist on reserving their right to argue at trial that the photos of remains taken and shared by the employees of the Sheriff's Department and Fire Department may not have included Plaintiff Chester's loved ones.

Defendants' refusal to stipulate is inexplicable in light of the evidence. Among other things, Deputy Doug Johnson has admitted that both he and Fire

Captain Brian Jordan approached *all* of the victims and took close-up photos of each victim's remains.

Plaintiff's <u>strong preference</u> is <u>not</u> to introduce autopsy records for other victims who perished in the crash, but Plaintiff must have evidence available to rebut Defendants' reprehensible argument that the photos at issue did not depict Sarah and Payton.  For example, Plaintiff must be able to highlight from the autopsy materials that *only* Sarah's and Payton's remains—and not other victims' remains— had specific characteristics.  Such an argument is unavailable (or, at a minimum, far more difficult) without records related to the condition of the other victims' remains.

Defendants' argument that the autopsy reports will somehow confuse the jury is meritless.  If Plaintiff is pressed to use the autopsy reports, he will do so only to rebut an argument by Defendants that Sarah and Payton were not depicted in the photos at issue.  He has no intent to use the other victims' autopsy reports for any other purpose, and there is no reason to believe the jury would confuse any authorized photos taken by the Coroner's Office that are referenced in the autopsy reports with the illicit photos taken by the Sheriff's Department and Fire Department that are at issue in this case.

Defendants' objection that the autopsy reports are a subsequent remedial measure is illogical and unexplained.

As a further attempt to compromise, Plaintiff has offered to include the autopsy materials on his list of conditional exhibits (attached as **Appendix A**).  In other words, Plaintiff would introduce the autopsies only if necessary to rebut an argument by Defendants that Sarah's and Payton's remains were not depicted in the photos taken and shared by Sheriff's and Fire Department personnel.  Defendants have refused this compromise, but Plaintiff would still welcome the approach if it meets the Court's approval.

**Defendants' Response:**  The autopsy reports for these six individuals—none of whom are related to Plaintiff—are not relevant to any of Plaintiff's claims in this

1   case.  None of these individuals are parties to this case and Plaintiff is not seeking

2   any damages based on the tragic passing of these individuals.

3        Plaintiff argues that these exhibits are "necessary to distinguish between each

4   of the victims' remains" and so that he can show crash site photos contained the

5   remains of his wife and daughter.  Not true.  Plaintiff knows the condition of his

6   wife and daughter because he has their autopsy reports, has identified them as trial

7   exhibits, and deposed two County Coroner witnesses about this issue.  There is no

8   reason Plaintiff needs to make public and use in Court the autopsy reports for other

9   victims.  The descriptions of the conditions of those victims at the high impact crash

10  are not part of this case, and are graphic, gruesome and unnecessary.

11       Plaintiff's argument that Defendants' refusal to stipulate is "inexplicable"

12  ignores what he needs to prove at trial.  Plaintiff needs to prove public dissemination

13  of photos depicting his wife or daughter.  What is found in the autopsy reports of the

14  other victims of the January 26, 2020 helicopter crash is not relevant to proving the

15  content of photos Plaintiff claims were shared or displayed.  In fact, there is no

16  evidence that anyone publicly disseminated any photo depicting Plaintiff's wife or

17  daughter—not one person has testified that Plaintiff's wife or daughter was in any

18  photo they saw.  Furthermore, to the extent that Plaintiff needs to prove "specific

19  characteristics" of his wife's or daughter's condition, he can use their autopsy

20  reports.

21       Additionally, these reports are highly prejudicial and will mislead the jury.

22  Specifically, the autopsy reports describe Coroner pictures that were taken in a

23  completely different context and for a different purpose than the photos at issue in

24  this case.  Admitting the reports will mislead the jury into thinking the autopsy

25  descriptions are how human remains were depicted in site photography.  Such a

26  false corollary is misleading and highly prejudicial.

27       Throughout this case, Defendants have done everything they can to protect

28  the privacy of the victims of the crash, and to prevent the harm that Plaintiff

complains of.  Introducing the autopsy reports for victims whose families and loved
ones are not before the Court in this case is unnecessary.

As set forth above, *see supra* section I.E (Defendants' Response), Plaintiff's
"compromise" proposal is nonsensical.

## IV.   <u>Fire Department Letters to Brian Jordan, Tony Imbrenda, and Arlin Kahan (Exs. 26-28).</u>

Three (3) of Plaintiff's exhibits to which Defendants object are letters from
the Los Angeles County Fire Department to Brian Jordan, Tony Imbrenda, and Arlin
Kahan, informing them that the Department intended to discharge or suspend them:

❖ <u>Plaintiff's Exhibit 26:</u>  Letter from McCloud (LACFD) to Jordan re Intention
to Discharge – Witnesses: William McCloud, Brian Jordan, Anthony
Marrone.

❖ <u>Plaintiff's Exhibit 27:</u>  Letter from McCloud (LACFD) to Imbrenda re
Intention to Discharge – Witnesses: William McCloud, Tony Imbrenda,
Anthony Marrone.

❖ <u>Plaintiff's Exhibit 28:</u>  Letter from McCloud (LACFD) to Kahan re Intention
to Suspend – William McCloud, Arlin Kahan, Anthony Marrone.

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);
More prejudicial than probative (FRE 403); Subsequent remedial measures (FRE
407).

**Plaintiff's Response to the Objections:**  Exhibits 26-28 are letters from
Deputy Fire Chief William McCloud to former Fire Captain Brian Jordan,
Firefighter Specialist (then-Captain) Tony Imbrenda, and Fire Captain Arlin Kahan
setting forth the Fire Department's official conclusions as to its three employees'
misconduct involving the photos at issue in this case.  Plaintiff's rationale for the
admissibility of these letters is fully set forth in Plaintiff's motion *in limine* #5.

The Department's letter to Jordan (Ex. 26) states that "[t]here was no
legitimate business need for [Jordan] to take photographs of human remains" at the

1  crash site; that Jordan's "photographs . . . of the fuselage and human remains at the
2  [site] did not further the [Fire] Department's mission" and "had no intel value or
3  legitimate business purpose"; and that Jordan's taking and distribution of the photos
4  "only served to appeal to baser instincts and desires for what amounted to visual
5  gossip."

6      Similarly, the Department's letter to Imbrenda (Ex. 27) states that Imbrenda
7  "failed to show commitment to [his] job as the Department's PIO" when he "shared
8  sensitive photos [he] obtained through the course of regular business in a public
9  setting with no apparent business need for doing so."  According to the letter,
10  showing pictures "depict[ing] feet, shoes, a torso, a person bent in half, and human
11  organs" was "wholly inappropriate" and showed no "regard for the public trust, or
12  the dignity and privacy of the deceased or their families."  The Department further
13  determined that Imbrenda engaged in a "primarily self-serving" "attempt to cover up
14  [his] role in the reported misuse of the photos" by deleting the photos and
15  instructing others to do so.

16      Finally, the Department's letter to Kahan states that "[t]here was no legitimate
17  business need for [Kahan] to take photographs of human remains" at the site; that
18  Kahan's "photographs . . . of the fuselage and human remains at the [site] did not
19  further the [Fire] Department's mission" and "had no intel value or legitimate
20  business purpose"; and that Kahan's taking and distribution of the photos "only
21  served to appeal to baser instincts and desires for what amounted to visual gossip."

22      These findings by the Fire Department are squarely relevant and not unfairly
23  prejudicial because numerous elements of Plaintiff's claims turn on whether
24  Defendants' taking and sharing of photos of his loved ones' remains was warranted
25  and legitimate.  The letter to Imbrenda also tends to show Imbrenda's culpable state
26  of mind when he directed widespread spoliation within the Department—spoliation
27  for which the Department itself is ultimately responsible.

28

For this highly probative evidence, Defendants recycle the same "abandonment" objection they lodged against the interview materials, claiming the letters should be excluded because they are supposedly only relevant to a *Monell* theory that is no longer part of the case.  Once again, they are wrong on both fronts. Defendants' post-violation conduct does not relate to any independent theory of *Monell* liability.  It is instead evidence that tends to establish the Agency Defendants' *Monell* liability under two alternative theories, including the failure to train theory, because it is probative of Defendants' deliberate indifference and pre-existing custom.  More to the point, these letters are not mere evidence related to the adequacy of the Fire Department's investigation and the discipline it intended to impose.  Rather, these letters contain official Department findings and admissions about the underlying facts that go to the heart of *all* of Plaintiff's claims and theories of liability—the content of the photos, the sharing by Department personnel, the lack of any legitimate business need for the photos, the reprehensible nature of the misconduct, and the Fire Department's spoliation.

For the reasons stated above (*see supra* section I.C.), Defendants' objection that the letters should be excluded in their entirety as subsequent remedial measures is without merit.  Courts have rejected the argument that the findings of internal investigations should be shielded from adverse claimants.  *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 430–31 (5th Cir. 2006) ("[B]y themselves, post-accident investigations would not make the event 'less likely to occur;' only the actual implemented changes make it so."); *Rigsbee v. City & Cnty. of Honolulu*, 2019 WL 1064106, at *2 (D. Haw. Mar. 6, 2019) ("The doctrine of subsequent remedial measures does not extend to internal investigations.  Subsequent remedial measures include only the actual remedial measures themselves and not the initial steps toward ascertaining if a remedial measure is required."); *Hansen v. Werner Enterprises Inc.*, 2016 WL 7479349, at *4 (C.D. Cal. May 18, 2016) ("Rule 407 applies only to remedial measures actually taken by Defendants; it does not apply to

1  Defendants' internal investigations or reports created in the process of determining

2  the appropriate remedial actions."); *Aranda v. City of McMinnville*, 942 F. Supp. 2d

3  1096, 1103 (D. Or. Apr. 29, 2013) ("By its terms, [FRE 407] is limited to measure

4  that would have made the harm less likely to occur; it does not extend to post-

5  incident investigations into what *did* occur."); *In re Chicago Flood Litig.*, 1995 WL

6  437501, at *5 (N.D. Ill. July 21, 1995) ("City statements regarding the actions of its

7  employees are not themselves remedial; instead, they merely explain why the city

8  elected to pursue disciplinary action."); *Westmoreland v. CBS Inc.*, 601 F. Supp. 66,

9  67–68 (S.D.N.Y. 1984) ("The question of social policy raised by CBS is whether in

10 order to encourage such investigations, their fruits should be shielded from use by

11 adverse claimants.  There is, however, no such doctrine either as to the internal

12 investigative report or as to facts revealed by it.").

13      For example, in *Bonds v. Dautovic*, 725 F. Supp. 2d 841 (S.D. Iowa 2010), a

14 city attempted to exclude a chief of police's statements about an officer's

15 inappropriate use of force that were made after an internal investigation.  The court

16 rejected the city's position, explaining that "Rule 407 only applies to instances when

17 'measures are taken that, if taken previously, would have made the injury or harm

18 less likely to occur,'" and the chief's statements about the officer's improper use of

19 force were not "'measures' that could have been taken prior to the incident such that

20 they could 'have made the injury or harm less likely to occur.'" *Id.* at 848–49

21 (quoting FRE 407).

22      Defendants cite *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir.

23 1986), but courts applying *Maddox* have observed "a distinction . . . between the

24 actual disciplining of officers for their conduct, which could constitute a remedial

25 measure, and the investigation that precedes a disciplinary process." *Aranda*, 942 F.

26 Supp. 2d at 1104; *J.M. v. City of Milwaukee*, 249 F. Supp. 3d 920, 932 (E.D. Wis.

27 2017) ("The remedial act—firing [the police officer]—is not inextricably

28 intertwined with the investigation leading to that act, namely the determination in

the Discharge Proceedings that his search was unreasonable. . . . Per the text of FRE 407, [the officer's] firing 'would have made [plaintiff's] injury . . . less likely to occur,' but the individual determination that he lacked reasonable suspicion in this case would not." (quoting FRE 407)).

This makes sense, because "[b]y its terms, Rule 407 bars evidence only of remedial action; Rule 407 does not bar evidence of a party's own analysis of events, even if those events result in the party taking remedial action." *In re Chicago Flood Litig.*, 1995 WL 437501, at *5; *see also Rigsbee*, 2019 WL 1064106, at *2 ("A defendant's self analysis of deficiencies does not constitute subsequent remedial measures for purposes of Fed. R. Evid. 407.").

Thus, even if the Fire Department's *discipline* of Jordan, Imbrenda, and Kahan (*i.e.*, a stated intention to terminate or suspend them) was a subsequent remedial measure, that would counsel in favor of (at most) *redacting* the letters to remove reference to the proposed disciplinary actions, not excluding the letters in their entirety and depriving Plaintiff of key admissions relevant to his claims. *See Rigsbee*, 2019 WL 1064106, at *2 (excluding "Recommendations" section of report as describing remedial measures, but admitting remaining sections that "provide factual background, opinions, and analysis as to what happened during the actual events at issue in the case" as opposed to "describ[ing] subsequent remedial measures that the [municipalities] implemented as a result"); *In re Chicago Flood Litig.*, 1995 WL 437501, at *5 (admitting city's statements regarding actions of its employees, which "explain why the city elected to pursue disciplinary action," but stating court would "consider a request by the city to redact references to disciplinary actions taken against particular employees from any statement offered by plaintiffs").

**Defendants' Response:**  Exhibits 26-28 are not relevant to any of the claims or issues in this case and should be excluded, as set forth in Defendants' opposition to Plaintiff's motion *in limine* no. 5.  (*See* Dkt. 162 at 24-27.)  LACFD's

- 41 -

1 investigation and discipline of its personnel has nothing to do with the issues to be
2 decided by the jury.

3      Exhibits 26-28 related to LACFD's internal investigation and discipline of its
4 personnel.  They are not relevant to any of Plaintiff's claims.  Plaintiff has
5 abandoned his "failure to adequately investigate and discipline" theory under
6 *Monell*.  Plaintiff alleged three Monell theories in his Second Amended Complaint
7 ("SAC"): (i) failure to train; (ii) failure to adequately investigate and discipline; and
8 (iii) a failure to establish a policy or procedure addressing the treatment of human
9 remains."  (SAC ¶ 32.)  Defendants moved for summary judgment on all three
10 theories (*See* Dkt. 88-1 at 21:1-26:24.)  And Plaintiff did not oppose Defendants'
11 motion as to theories (ii) and (iii).  (*See* Dkt. 116 at 15:27-25:8).  Therefore, under
12 Ninth Circuit law, Plaintiff abandoned all but the training theory.  *See Shakur v.*
13 *Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)  ("[P]laintiff has 'abandoned … claims by
14 not raising them in opposition to [the defendant's] motion for summary judgment."
15 (second and third alterations in original) (citation omitted)).

16      At the February 4, 2022 Final Pretrial Conference, the Court stated that it
17 agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not
18 opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See*
19 Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff  asked to
20 be allowed to file briefing on the issue, which the Court agreed to.  [*Id.* At 7:11-8:4,
21 68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.
22 [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]
23 And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet
24 to issue a formal ruling on the waiver/abandonment issue.

25      If the Court sticks to its tentative ruling, letters related to LACFD's
26 investigation and discipline of its employees would be irrelevant and not admissible
27 at trial.  Specifically, allowing Plaintiff to offer exhibits 26-28 would be confusing
28 and misleading.  It would lead jurors to believe that certain *Monell* theories are still

part of this case despite Plaintiff having abandoned them.  Defendants will be forced to either ignore the irrelevant evidence and hope the jury understands the proper parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing witnesses and evidence to defend against abandoned claims.

Plaintiff now argues without any citation that this evidence is relevant to his "failure to train" policy under *Monell*.  Wrong.  No case has held that a government agency's failure to investigate or discipline is relevant to proving a "failure to train" theory.  That is the reason Plaintiff does not cite any case law for this proposition. In fact, prior to the Court stating that its practice is to bifurcate federal and state law claims at trial, Plaintiff had only argued that this evidence was relevant to proving his "custom or practice" theory under *Monell*.  Plaintiff changed his argument because he is trying desperately to introduce this improper evidence at trial.

The minimal probative value of Exhibits 26-28 (if any) is far outweighed by their unfair prejudice to Defendants.  Plaintiff intends to argue to the jury that these exhibits show LACFD acknowledged its personnel violated his constitutional rights. Courts have precluded such evidence and argument, recognizing that evidence of disciplinary proceedings poses a significant risk of prejudice because it could cause the jury to conclude that the employee was guilty of wrongdoing merely because their employer disciplined them.  *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) ("The prejudicial effect of this evidence was also arguably great. The jury might have inferred that Officer Harris was guilty of wrongdoing merely because the Police Department conducted disciplinary proceedings.  The jury might have given unfair or undue weight to this evidence or they might have been confused as to the relevance of this evidence.").

Exhibits 26-28 are also inadmissible because they reflect subsequent remedial measures (i.e., discipline) taken by the Department.  Under Federal Rule of Evidence 407, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to

1   prove . . . culpable conduct."  Fed. R. Evid. 407

2        Exhibits 26-28 reflect steps taken by LACFD to make sure the conduct

3   complained of by Plaintiff does not happen again.  Courts have recognized that

4   disciplinary proceedings are subsequent remedial measures in civil rights cases.

5   *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (in

6   section 1983 case based on police use-of-force, Court properly excluded evidence

7   from Internal Affairs investigation because "[t]he Internal Affairs investigation and

8   measures taken by the defendant City were remedial measures taken after the

9   incident").

10        Plaintiff cites several cases where courts have held that "findings of internal

11  investigations" are not precluded by Rule 407.  That is a straw man.  For starters, as

12  set forth above, Plaintiff has abandoned his "failure to investigate and discipline"

13  claim, so none of this is relevant.  Exhibits 26 and 27 are Intention to Discharge

14  letters sent to Brian Jordan and Tony Imbrenda after LACFD conducted its internal

15  investigation.  Exhibit 28 is an Intention to Suspend letter sent to Arlin Kahan.

16  These letters are by definition discipline.  Plaintiff argues that if the Court agrees

17  with Defendants, it should allow redacted versions of Exhibits 26-28.  Also wrong.

18  Exhibits 26-28 are notices to Jordan, Imbrenda, and Kahan of the discipline imposed

19  by LACFD and the bases for that discipline.  They should be excluded in their

20  entirety under Rule 407.

21        Exhibits 26-28 are covered by Plaintiff's motion *in limine* #5 to admit

22  recordings and letters.  (Dkt. 162.)  The reasons that these exhibits should not be

23  admitted at trial is more fully set forth in the County's opposition to that motion.

24  **V.    Emails Involving Tony Imbrenda.**

25        Three (3) of Plaintiff's exhibits to which Defendants object are internal Fire

26  Department emails involving Firefighter Specialist Tony Imbrenda:

27

28

❖ <u>Plaintiff's Exhibit 25:</u>  Email chain between Sprewell (LACFD), Imbrenda, Cornell, Ferguson, Navarez, Lim re LA County Sheriff's deputies allegedly shared photos of Bryant crash site – Witnesses: Tony Imbrenda, Sky Cornell

❖ <u>Plaintiff's Exhibit 30:</u>  Email from Imbrenda to Pringle re Los Angeles County Fire Department Statement – Witnesses: Tony Imbrenda

❖ <u>Plaintiff's Exhibit 115:</u>  Email dated February 28, 2020 from Tony Imbrenda to Stephanie Stanton, titled: "Official Statement regarding the Willow Incident" (COLA011458) – Witnesses: Tony Imbrenda

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403); Hearsay (FRE 801, 802).

**Plaintiff's Response to the Objections:**  The above exhibits—emails involving Fire Captain Tony Imbrenda—demonstrate that, as of February 28, 2020, Mr. Imbrenda was on notice of press reports that first responders had improperly taken and shared photos of the crash-victims' remains.  Indeed, the emails show that Mr. Imbrenda was involved in communicating with reporters for the *Los Angeles Times* and a local Fox television station regarding the Department's response to the press reports.  These emails are relevant to show Imbrenda's state of mind when, around this same time, he directed an evidence-destruction campaign among members of the Fire Department—an effort the Fire Department itself has concluded was a "primarily self-serving" attempt "to cover up [Imbrenda's] role in the reported misuse of the photos."

Evidence relating to the Fire Department's destruction of, and failure to preserve, evidence is relevant for the reasons set forth in Plaintiff's motion *in limine* #1 to preclude Defendants from proffering exculpatory testimony and argument regarding spoliated evidence and to admit evidence of Defendants' destruction of evidence.  (Dkt. 235.)  Among other things, the jury is entitled to know that the lack of direct forensic evidence of the taking and sharing of photos of the victims' remains is a consequence of the Fire Department's spoliation, as opposed to an

1   indication that such evidence never existed.  *NuVasive, Inc. v. Kormanis*, 2019 WL

2   1171486, at *2 (M.D.N.C. Mar. 13, 2019) (allowing parties "to present evidence to

3   the jury concerning the loss" of ESI and instructing the jury that it "may consider

4   [such] evidence . . . in making its decision"); *Stanbro v. Westchester Cnty. Health*

5   *Care Corp.*, 2021 WL 3863396, at *16 (S.D.N.Y. Aug. 27, 2021) (authorizing

6   plaintiff "to adduce evidence at trial" regarding spoliated video); *Franklin v.*

7   *Howard Brown Health Ctr.*, 2018 WL 4784668, at *7 (N.D. Ill. Oct. 4, 2018)

8   (recommending that "parties be allowed to present evidence and argument to the

9   jury regarding the defendant's destruction/failure to preserve electronic evidence in

10  this case").

11       Separate from spoliation issues, the exhibits are also relevant to show that,

12  despite being involved in the Department's response to reports regarding improper

13  photos, Mr. Imbrenda did not disclose to his supervisors that he himself had taken

14  and received numerous photos of the crash victims' remains and displayed them at

15  an awards show, which demonstrates consciousness of guilt.

16       The bulk of Defendants' response below is an argument about when a duty to

17  preserve arose.  The parties disagree on this issue, and Plaintiff addressed the point

18  extensively in briefing his pending motion for spoliation sanctions—*i.e.*, Plaintiff's

19  motion *in limine* No. 1 (Dkt. 156).

20       Defendants' hearsay objections to the above exhibits are entirely new (*see*

21  Lavoie Decl., Ex. A), and thus waived and void for the reasons stated above, *see*

22  *supra* section I.A.  All statements in the emails are non-hearsay statements of a party

23  opponent, as the individuals who wrote the emails were all Fire Department

24  employees acting in the scope of their employment.  *See* FRE 801(d)(2)(D).  What's

25  more, Plaintiff is not offering the emails for the truth of the statements contained

26  therein, but rather to show Imbrenda knowledge and awareness as-of a particular

27  date.

28

568963.1

UPDATED JOINT STATEMENT RE: OBJECTIONS IN PRE-TRIAL EXHIBIT STIPULATION

**Defendants' Response:** Exhibits 25, 30, and 115 are not relevant to any of Plaintiff's claims in this case. Exhibit 25 is an email forwarded to LACFD personnel of a press report that LASD deputies had allegedly shared crash site photos. The report had nothing to do with LACFD personnel. Exhibit 30 is an email from Tony Imbrenda to a *Los Angeles Times* reporter, while Exhibit 115 is an email from Tony Imbrenda to a reporter at Fox TV.

Plaintiff argues that these exhibits are relevant to LACFD's duty to preserve evidence. Wrong. For a party to be on notice of litigation such that a duty to preserve attaches, the evidence must be relevant to a litigation that has "more than a possibility of occurring." *Garcia v. United States*, 2014 WL 12709430, at *1 (C.D. Cal. Sept. 3, 2014) (citation omitted). Specifically, "the fact that a tort might have occurred cannot by itself be sufficient to place a defendant on notice of impending litigation [because] … that is not the law." *Id.* at *2. Instead, the duty requires a higher standard—that the litigation is probable. 2014 WL 12709430, at *2.

Defendants did not have a duty to preserve evidence until Mrs. Bryant submitted her tort claims on May 8, 2020 (LASD) and July 20, 2020 (LACFD). *See Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2016 WL 9173457 (C.D. Cal. Sept. 8, 2016). Exhibits 25, 30, and 115 do not contain any indication that litigation against the Fire Department was probable in February 2020. They did not identify any injured party or potential legal claim against LACFD. LACFD was not under a duty to preserve evidence at that time and Tony Imbrenda did not engage in a "spoliation" campaign. Admitting these Exhibits will only serve to confuse and mislead the jury.

Defendants' rationale for why these exhibits should not be admitted at trial is fully set forth in their opposition to Plaintiff's motion *in limine* No. 1. (*See* Dkt. 156.)

Plaintiff also argues that these Exhibits are relevant to show that Imbrenda did not disclose to his supervisors that he took photos on January 27, 2020—the day

after the crash and after most of the victims' remains had been taken off the hill—and showed them to other Public Information Officers who also responded to the crash.  False.  Imbrenda cooperated with LACFD's internal investigation and was forthcoming and truthful about the crash site photos.

As set forth above, *see supra* section I.A (Defendants' Response), Plaintiff's arguments that Defendants waived their hearsay objections is without merit. Plaintiff tellingly does not cite any law or authority for this position, and that is because there is none.

## VI.   Correspondence Between Plaintiff Bryant's Counsel and the Sheriff's and Fire Departments.

Four (4) of Plaintiff's exhibits to which Defendants object are letters between Plaintiff Bryant's counsel, on the one hand, and the Sheriff's and Fire Departments, on the other hand, in March 2020:

❖ Plaintiff's Exhibit 31:  Luis Li Letter to Fire Chief Osby dated March 2, 2020 – Witnesses: Vanessa Bryant, Anthony Marrone, William McCloud, Julia Kim

❖ Plaintiff's Exhibit 156:  Letter from Luis Li to Sheriff Villanueva dated March 2, 2020 – Witnesses: Vanessa Bryant, Alex Villanueva

❖ Plaintiff's Exhibit 310:  Jack Altura Ltr. to Luis Li re "Response to March 2, 2020 Letter to Chief Osby," dated March 26, 2020 (VB00000004) – Witnesses: Vanessa Bryant, Alex Villanueva

❖ Plaintiff's Exhibit 315:  Jack Altura Ltr. to Luis Li re "Response to March 2, 2020 Letter to Sheriff Villanueva," dated March 26, 2020 (VB00000039) – Witnesses: Vanessa Bryant, Alex Villanueva

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403); Hearsay (FRE 801-802).

**Plaintiff's Response to the Objections:**  The above exhibits are (i) letters dated March 2, 2020 from Plaintiff Vanessa Bryant's attorney, Luis Li, threatening

legal action against the Sheriff's Department and the Fire Department; and (ii) the County's responses to Mrs. Bryant.  Mr. Li's letters to the Sheriff's and Fire Departments, which were sent approximately one month after the helicopter accident and only a few days after the *Los Angeles Times* broke the news of the improper photos—reminded the Departments that they owed Plaintiff a duty of care pursuant to *Catsouras v. Dept. of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010) and warned: "We fully intend to hold the [Sheriff's / Fire] Department and its personnel accountable for any harm caused by the unauthorized taking or dissemination of photos."  The Fire Department and Sheriff's Department each responded to Mr. Li's letters on March 26, 2020.

This correspondence is relevant and not unfairly prejudicial because it demonstrates that the Sheriff's and Fire Departments were on-notice no later than March 2, 2020 of likely litigation and failed to preserve relevant materials following that time.  Evidence relating to Defendants' failure to preserve evidence is relevant for the reasons set forth in Plaintiff's motion *in limine* #1 to preclude Defendants from proffering exculpatory testimony and argument regarding spoliated evidence and to admit evidence of Defendants' destruction of evidence.  (Dkt. 156.)

Among other things, the jury is entitled to know that the lack of direct forensic evidence of the taking and sharing of photos of the victims' remains is a consequence of Defendants' spoliation, as opposed to an indication that such evidence never existed.  *NuVasive, Inc. v. Kormanis*, 2019 WL 1171486, at *2 (M.D.N.C. Mar. 13, 2019) (allowing parties "to present evidence to the jury concerning the loss" of ESI and instructing the jury that it "may consider [such] evidence . . . in making its decision"); *Stanbro v. Westchester Cnty. Health Care Corp.*, 2021 WL 3863396, at *16 (S.D.N.Y. Aug. 27, 2021) (authorizing plaintiff "to adduce evidence at trial" regarding spoliated video); *Franklin v. Howard Brown Health Ctr.*, 2018 WL 4784668, at *7 (N.D. Ill. Oct. 4, 2018) (recommending that

1   "parties be allowed to present evidence and argument to the jury regarding the

2   defendant's destruction/failure to preserve electronic evidence in this case").

3       The bulk of Defendants' statement below is an argument about when a duty to

4   preserve arose. The parties disagree on this issue, and Plaintiff extensively

5   addressed the point in his pending motion for spoliation sanctions—*i.e.*, Plaintiff's

6   motion *in limine* # 1 (Dkt. 156).

7       Defendants' hearsay objections to the above exhibits are entirely new (*see*

8   Lavoie Decl., Ex. A), and thus waived and void for the reasons stated above, *see*

9   *supra* section I.A. With respect to the above exhibits specifically, the hearsay

10  objections are also meritless because the letters are not offered for the truth of the

11  matter asserted therein, but rather to demonstrate Defendants' knowledge as-of a

12  particular date that litigation had been threatened, which triggered a preservation

13  obligation. To the extent Defendants want the jury to consider the letters only for a

14  specific purpose, they can propose a limiting instruction. Finally, to the extent

15  Defendants are asserting a hearsay objection to statements made by the County's

16  own attorney in response to Mrs. Bryant's letters, those statements are obviously

17  non-hearsay statements of a party opponent. *See* FRE 801(d)(2)(D).

18     **Defendants' Response:** Plaintiff argues that Exhibits 31, 156, 310, and 315

19  are relevant to LASD's and LACFD's duty to preserve evidence. Wrong. Mrs.

20  Bryant's attorney's March 2, 2020 letters did not trigger a duty to preserve for

21  LASD or LACFD, as set forth in Defendants' opposition to Plaintiff's motion *in*

22  *limine* no. 1. (*See* Dkt. 156 at 41-43.)

23      Mrs. Bryant's attorney's letters demanded that LASD and LACFD "take

24  immediate action to secure all photos and videos of the January 26, 2020 crash

25  scene." The letters referenced *possible* claims predicated on harm caused by the

26  "dissemination of photos of victims' remains," which could not occur because the

27  photos had been deleted.

28      At most, the letters were an insufficient "vague hint" of possible litigation.

            - 50 -

1  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1145 (N.D. Cal.
2  2012); *See also Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*  264 F.R.D.
3  517, 526 (N.D. Cal. 2009) ("A general concern over litigation does not trigger a
4  duty to preserve evidence.").

5       Defendants did not have a duty to preserve evidence until Plaintiff Bryant
6  submitted her tort claims on May 8, 2020 (LASD) and July 20, 2020 (LACFD).  *See*
7  *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2016 WL
8  9173457 (C.D. Cal. Sept. 8, 2016).  LASD issued its litigation hold on May 11,
9  2020, with follow-up notices in July 2020.  (Dkt. 151-56 ¶¶ 11-23.)  LACFD issued
10  its litigation hold on March 3, 2020.  (Dkt. 151-63 ¶¶ 19-21.)  By the time Plaintiff
11  filed his complaint litigation holds were in place.

12       Exhibits 31, 156, 310, and 315 did not notify LASD or LACFD that litigation
13  was probable.  Instead, they notified LASD and LACFD that they should investigate
14  and determine whether there was a factual basis for the complaints.  That is what
15  LASD and LACFD did.  These Exhibits are not relevant to the triggering of any
16  preservation duty and will only serve to confuse and mislead the jury.

17       Additionally, the letters written by Mrs. Bryant's attorney are highly
18  prejudicial and constitute inadmissible hearsay.  FRE 403; 801-802.  Specifically,
19  the letters contain legal argument as well statements by Mrs. Bryant's attorney
20  regarding the allegations at issue in this case.  Allowing the jury to view these letters
21  would present impermissible argument in the form of a trial exhibit.

22       As set forth above, *see supra* section I.A (Defendants' Response), Plaintiff's
23  arguments that Defendants waived their hearsay objections is without merit.
24  Plaintiff tellingly does not cite any law or authority for this position, and that is
25  because there is none.

26
27
28

## VII.   <u>Fire Department Letters Informing Brian Jordan, Tony Imbrenda, and Arlin Kahan of Pending Investigation.</u>

Three (3) of Plaintiff's exhibits to which Defendants' object are letters from the Fire Department to former Fire Captain Brian Jordan, Firefighter Specialist Tony Imbrenda, and Fire Captain Arlin Kahan, informing them that the Department had opened an investigation into their conduct involving the photos:

❖ <u>Plaintiff's Exhibit 116:</u>  LAFD Internal Investigation Notice to Tony Imbrenda (COLA035026) – Witnesses: Anthony Marrone, William McCloud, Tony Imbrenda

❖ <u>Plaintiff's Exhibit 161:</u>  Memo from McCloud to Jordan re Internal Investigation dated March 17, 2020 (COLA035057) – Witnesses: Anthony Marrone, Brian Jordan, William McCloud

❖ <u>Plaintiff's Exhibit 190:</u>  LAFD Internal Investigation Memo from Marrone to Kahan dated March 17, 2020 (COLA035056) – William McCloud, Anthony Marrone, Arlin Kahan

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403).

**Plaintiff's Response to the Objections:**  The above letters are relevant and not unfairly prejudicial because they show, among other things, the extended gap between when the Fire Department was first informed on January 31, 2020 that its personnel were implicated in misconduct involving photos of the victims' remains and when the Fire Department took action in March 2020 to identify some of the employees involved.  This delay allowed Imbrenda to orchestrate a self-interested spoliation campaign that has deprived Plaintiff of direct evidence of Defendants' liability.

Defendants' argument that the letters should be excluded as subsequent remedial measures is without merit for the reasons stated above, *see supra* section I.C.  What's more, the above exhibits do not reference any facts, findings, or

1   conclusions of any investigation.  Rather, they merely inform certain Fire
2   Department personnel that they were the subjects of an investigation.  Such letters
3   that initiate an investigation cannot qualify as subsequent remedial measures
4   because such notifications are simply "initial steps toward ascertaining if a remedial
5   measure is required."  *Rigsbee v. City & Cnty. of Honolulu*, 2019 WL 1064106, at
6   *2 (D. Haw. Mar. 6, 2019).

7        Defendants' copy-and-pasted argument that this evidence is irrelevant
8   because it pertains to an "abandoned" *Monell* theory fails for the reasons stated in
9   Plaintiff's statement in (I)(C) above.  Evidence regarding Defendants' post-violation
10  conduct does not relate to any separate or independent *Monell* theory but is
11  probative of both of Plaintiff's *Monell* theories—the failure to train theory and the
12  longstanding custom or practice theory.  In any event, the relevance of this
13  particular evidence sweeps even more broadly.

14       Evidence relating to the Fire Department's destruction of, and failure to
15  preserve, evidence is relevant to all of Plaintiff's claims and legal theories for the
16  reasons set forth in Plaintiff's motion *in limine* #1 regarding Defendants' spoliation
17  (Dkt. 235) and in Plaintiff's portions of the concurrently-filed joint memorandum
18  regarding disputed jury instructions.  Among other things, the jury is entitled to
19  know that the lack of direct forensic evidence of the taking and sharing of photos of
20  the victims' remains is a consequence of the Fire Department's spoliation, as
21  opposed to an indication that such evidence never existed.  *NuVasive, Inc. v.
22  Kormanis*, 2019 WL 1171486, at *2 (M.D.N.C. Mar. 13, 2019) (allowing parties "to
23  present evidence to the jury concerning the loss" of ESI and instructing the jury that
24  it "may consider [such] evidence . . . in making its decision"); *Stanbro v.
25  Westchester Cnty. Health Care Corp.*, 2021 WL 3863396, at *16 (S.D.N.Y. Aug.
26  27, 2021) (authorizing plaintiff "to adduce evidence at trial" regarding spoliated
27  video); *Franklin v. Howard Brown Health Ctr.*, 2018 WL 4784668, at *7 (N.D. Ill.
28  Oct. 4, 2018) (recommending that "parties be allowed to present evidence and

argument to the jury regarding the defendant's destruction/failure to preserve electronic evidence in this case").

Finally, Defendants statement below offers argument on when a duty to preserve arose.  Mr. Chester briefed his position on this issue in Plaintiff's motion _in limine_ # 1 (Dkt. 156).

**Defendants' Response:**  Exhibits 116, 161, and 190 are not relevant to any of Plaintiff's claims in this case.  First, Tony Imbrenda, Brian Jordan, and Arlin Kahan are not defendants in this case.  Even if they were defendants, LACFD's investigation and discipline of its personnel has nothing to do with the issues to be decided by the jury.

These Exhibits relate to LACFD's internal investigation and discipline of its personnel.  They are not relevant to any of Plaintiff's claims.  Plaintiff alleged three Monell theories in his Second Amended Complaint ("SAC"): (i) failure to train; (ii) failure to adequately investigate and discipline; and (iii) a failure to establish a policy or procedure addressing the treatment of human remains."  (SAC ¶ 32.) Defendants moved for summary judgment on all three theories (_See_ Dkt. 88-1 at 21:1-26:24.)  And Plaintiff did not oppose Defendants' motion as to theories (ii) and (iii).  (_See_ Dkt. 116 at 15:27-25:8).  Therefore, under Ninth Circuit law, Plaintiff abandoned all but the training theory.  _See Shakur v. Schriro_, 514 F.3d 878, 892 (9th Cir. 2008)  ("[P]laintiff has 'abandoned … claims by not raising them in opposition to [the defendant's] motion for summary judgment." (second and third alterations in original) (citation omitted)).

At the February 4, 2022 Final Pretrial Conference, the Court stated that it agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not opposing Defendants' summary judgment motion as to those _Monell_ theories.  [_See_ Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff asked to be allowed to file briefing on the issue, which the Court agreed to.  [_Id._ At 7:11-8:4, 68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.

1   [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]

2   And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet

3   to issue a formal ruling on the waiver/abandonment issue.

4         If the Court sticks to its tentative ruling, letters related to LACFD's

5   investigation and discipline of its employees would be irrelevant and not admissible

6   at trial.  Specifically, allowing Plaintiff to offer exhibits 116, 161, and 190 would be

7   confusing and misleading.  It would lead jurors to believe that certain *Monell*

8   theories are still part of this case despite Plaintiff having abandoned them.

9   Defendants will be forced to either ignore the irrelevant evidence and hope the jury

10  understands the proper parameters of Plaintiff's *Monell* claim, or spend valuable

11  trial time introducing witnesses and evidence to defend against abandoned claims.

12        Plaintiff now argues without any citation that this evidence is relevant to his

13  "failure to train" policy under *Monell*.  Wrong.  No case has held that a government

14  agency's failure to investigate or discipline is relevant to proving a "failure to train"

15  theory.  That is the reason Plaintiff does not cite any case law for this proposition.

16  In fact, prior to the Court stating that its practice is to bifurcate federal and state law

17  claims at trial, Plaintiff had only argued that this evidence was relevant to proving

18  his "custom or practice" theory under *Monell*.  Plaintiff changed his argument

19  because he is trying desperately to introduce this improper evidence at trial.

20        The minimal probative value of Exhibits 116, 161, and 190 (if any) is far

21  outweighed by their unfair prejudice to Defendants.  Plaintiff intends to argue to the

22  jury that these Exhibits show LACFD acknowledged its personnel violated his

23  constitutional rights.  Courts have precluded such evidence and argument,

24  recognizing that evidence of disciplinary proceedings poses a significant risk of

25  prejudice because it could cause the jury to conclude that the employee was guilty of

26  wrongdoing merely because their employer disciplined them.  *See, e.g., Maddox v.*

27  *City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) ("The prejudicial effect of

28  this evidence was also arguably great. The jury might have inferred that Officer

1   Harris was guilty of wrongdoing merely because the Police Department conducted

2   disciplinary proceedings.  The jury might have given unfair or undue weight to this

3   evidence or they might have been confused as to the relevance of this evidence.").

4         Exhibits 116, 161, and 190 are also inadmissible because they reflect

5   subsequent remedial measures (i.e., discipline) taken by the Department.  Under

6   Federal Rule of Evidence 407, "[w]hen measures are taken that would have made an

7   earlier injury or harm less likely to occur, evidence of the subsequent measures is

8   not admissible to prove . . . culpable conduct."  Fed. R. Evid. 407.

9         These Exhibits reflect steps taken by LACFD to make sure the conduct

10  complained of by Plaintiff does not happen again.  Courts have recognized that

11  disciplinary proceedings are subsequent remedial measures in civil rights cases.

12  *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (in

13  section 1983 case based on police use-of-force, Court properly excluded evidence

14  from Internal Affairs investigation because "[t]he Internal Affairs investigation and

15  measures taken by the defendant City were remedial measures taken after the

16  incident").

17        Plaintiff also argues that Exhibits 116, 161, and 190 are relevant to LACFD's

18  duty to preserve evidence.  Wrong.  Defendants did not have a duty to preserve

19  evidence until Plaintiff Bryant submitted her tort claims on May 8, 2020 (LASD)

20  and July 20, 2020 (LACFD).  *See Federated Univ. Police Officers' Ass'n v. Regents

21  of Univ. of Cal.*, 2016 WL 9173457 (C.D. Cal. Sept. 8, 2016).  LASD issued its

22  litigation hold on May 11, 2020, with follow-up notices in July 2020.  (Dkt. 151-56

23  ¶¶ 11-23.)  LACFD issued its litigation hold on March 3, 2020.  (Dkt. 151-63 ¶¶ 19-

24  21.)  By the time Plaintiff filed his complaint, on September 17, 2020, litigation

25  holds were in place.

26        Defendants' rationale for why these exhibits should not be admitted at trial is

27  fully set forth in their opposition to Plaintiff's motion *in limine* No. 1.  (*See* Dkt.

28  156.)

- 56 -

## VIII.  **Photo at Golden Mike Awards.**

One (1) of Plaintiff's exhibits to which Defendants object is a photo depicting Fire Department employees Tony Imbrenda, Sky Cornell, and Kyle Weireter at the Golden Mike Awards:

❖ Plaintiff's Exhibit 64:  Photo at Golden Mike Awards – Tony Imbrenda, Sky Cornell, Luella Weireter, Erik Scott

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403).

**Plaintiff's Response to the Objections:**  Exhibit 64 is a photo of Fire Department employees Tony Imbrenda, Sky Cornell, and Cody Weireter, as well as LA City firefighter Erik Scott, at the Golden Mike Awards.  The photo is relevant and not unfairly prejudicial because it will enable Luella Weireter, Erik Scott, and others to identify Tony Imbrenda as the individual who displayed photos of the victims' remains at the Golden Mike Awards.  Ms. Weireter had limited interactions (if any) with Imbrenda aside from the Golden Mike Awards, so the photo is essential to making the identification.  The photo will enable the jury to have a mental picture of the event, and it will also demonstrate the highly recreational and public nature of the scene at which photos of Sarah Chester's were shared.

**Defendants' Response:**  Exhibit 64 is not relevant to any of Plaintiff's claims.  It is a photo taken at the Golden Mike Awards.  It does not depict any conduct at-issue in this case.

Plaintiff argues that Exhibit 64 is relevant to enable witnesses to identify Tony Imbrenda and to "demonstrate the recreational nature of the event."  Not true. First, there has never been a dispute about Weireter's or Scott's ability to identify Imbrenda.  They were both deposed in this case and testified about Imbrenda's conduct at the event.  Plaintiff argues that Weireter "had limited interactions" with Imbrenda so the photo is "essential to making the identification."  That is not true. Weireter identified Imbrenda when she made her complaint to the Fire Department

- 57 -

1   without the need for the photos.  Second, the photo does not "demonstrate the

2   recreational nature of the event" any more than asking the relevant witnesses at trial

3   about the Golden Mike Awards.  There is no reason to burden the jury with

4   cumulative evidence of this sort

5        Additionally, this Exhibit is highly prejudicial to the extent that Plaintiff

6   intends to argue that the event depicted was a party, as opposed to an event honoring

7   the work of first responders in media communications.

8   **IX.    Memos by Sheriff's Department Personnel re Crash-Scene Photos.**

9        Thirteen (13) of Plaintiff's exhibits to which Defendants object involve

10  memos written by Sheriff's Department personnel regarding their taking and sharing

11  of crash scene photos:

12  ❖ Plaintiff's Exhibit 97:  Michael Russell Memo to Matthew Vander Horck,

13       dated January 30, 2020, titled: "Willow Incident Photographs"

14       (COLA000715) – Witnesses: Michael Russell

15  ❖ Plaintiff's Exhibit 101:  Rafael Mejia Memo to Matthew Vander Horck dated

16       January 30, 2020, titled: "Willow Incident Photographs" (COLA000713) –

17       Witnesses: Rafael Mejia

18  ❖ Plaintiff's Exhibit 110:  Raul Versales Memo to Matthew Vander Horck dated

19       January 30, 2020, titled: "Willow Incident Photographs" (COLA000712) –

20       Witnesses: Raul Versales

21  ❖ Plaintiff's Exhibit 117:  Email from Joey Cruz to himself dated January 30,

22       2020 at 5:52 p.m., titled "Willow Incident" (003304) – Witnesses: Joey Cruz

23  ❖ Plaintiff's Exhibit 118:  Email from Joey Cruz to himself dated January 30,

24       2020 at 6:03 p.m., titled "Willow Incident" (COLA003310) – Witnesses: Joey

25       Cruz

26  ❖ Plaintiff's Exhibit 119:  Email from Joey Cruz to himself dated January 30,

27       2020 at 6:06 p.m., attaching "Willow Incident.docx" (COLA003317) –

28       Witnesses: Joey Cruz

568963.1

- 58 -

❖ <u>Plaintiff's Exhibit 120:</u>  Email from Joey Cruz to himself dated January 30, 2020 at 6:12 p.m., attaching "Willow Incident.docx" (COLA003326) – Witnesses: Joey Cruz

❖ <u>Plaintiff's Exhibit 121:</u>  Email from Joey Cruz to himself dated January 30, 2020 at 6:21 p.m., attaching "Willow Incident.docx" (COLA003330) – Witnesses: Joey Cruz

❖ <u>Plaintiff's Exhibit 122:</u>  Memo from Joey Cruz to Matthew Vander Horck dated January 30, 2020, titled: "Willow Incident Photographs" (COLA000714) – Witnesses: Joey Cruz

❖ <u>Plaintiff's Exhibit 132:</u>  Ruby Cable Memo to Matthew Vander Horck dated January 30, 2020, titled: "Willow Incident Photographs" (COLA000721) – Witnesses: Ruby Cable

❖ <u>Plaintiff's Exhibit 133:</u>  Chris Jauregui Memo to Vander Horck re Willow Incident Photographs, dated January 31, 2020 (COLA000720) – Witnesses: Chris Jauregui

❖ <u>Plaintiff's Exhibit 139:</u>  Doug Johnson Memo to Matthew Vander Horck dated January 31, 2020, titled: "Willow Incident - Helicopter Crash" (COLA000711) – Witnesses: Doug Johnson

❖ <u>Plaintiff's Exhibit 146:</u>  Travis Kelly Memo to Matthew Vander Horck dated January 30, 2020, titled: "WILLOW INCIDENT PHOTOGRAPHS" (COLA000722) – Witnesses: Travis Kelly

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403); Hearsay (FRE 801-802); Subsequent Remedial Measure (FRE 407).

**Plaintiff's Response to the Objections:**  Following the citizen complaint, certain Sheriff's Department personnel were summoned to the Lost Hills Station, where they spoke with Lt. Hector Mancinas and/or Sgt. Marcus Phillips regarding whether they had taken or shared photos of the crash scene.  Following these

conversations, several personnel wrote memos regarding their involvement with the photos, and the exhibits above are the memos authored by eight Sheriff's Department employees who admitted to having photos of the crash scene on their personal cell phones.  The above exhibits also contain iterative, non-final drafts of Joey Cruz's memo that he emailed to himself.

These memos are relevant and not unfairly prejudicial because they contain dozens of admissions regarding the photos and numerous false exculpatory statements.  For example, Deputy Michael Russell's memo acknowledges that he received photos from Deputy Cruz, but also includes false exculpatory statements regarding whether Russell received the photos while working the incident and the timing of when Russell deleted the photos.  Similarly, Deputy Rafael Mejia's memo acknowledges that he received photos from Deputy Versales, but also offers false exculpatory statements regarding the purpose for which Mejia transmitted the photos to others and the timing of when Mejia deleted the photos.  The other deputies' memos are similar, containing heartland admissions regarding the conduct at issue.

The above exhibits also include iterative, non-final drafts of Joey Cruz's memo that he emailed to himself.  In Cruz's own words, the drafts describe how Cruz received the photos, show the photos to his niece, and displayed the photos at a bar in Norwalk.  The drafts also show Cruz making false exculpatory statements to his supervisors.  Specifically, Cruz's early drafts of the memo are more forthcoming and less favorable to him than his final draft, evidencing an intent to mislead and minimize his misconduct.

Defendants' copy-and-pasted argument that this evidence is irrelevant because it pertains to an "abandoned" *Monell* theory fails for the reasons stated in Plaintiff's statement above, *see supra* section I.C.  Evidence regarding Defendants' post-violation conduct does not relate to any separate or independent *Monell* theory but is probative of both of Plaintiff's *Monell* theories—the failure to train theory and

1   the longstanding custom or practice theory.  In any event, Plaintiff does not offer the
2   deputies' memos as evidence of a failure to investigate.  Rather, the memos are
3   relevant because they are loaded with admissions and false exculpatory statements
4   by Defendants' employees regarding the taking and sharing of photos of Plaintiff's
5   loved ones' remains.

6          Defendants' hearsay and subsequent-remedial measures objections to the
7   above exhibits are entirely new (*see* Lavoie Decl., Ex. A), and thus waived and void
8   for the reasons stated above, *see supra* section I.A.  Indeed, the objections to
9   *especially* weak with respect to the above exhibits.  Regarding hearsay, all
10  statements in the memos are non-hearsay statements of a party opponent, as the
11  deputies who wrote the emails were all Sheriff's Department employees acting in
12  the scope of their employment.  *See* FRE 801(d)(2)(D).  With respect to remedial
13  measures, the memos simply reflect statements made by Sheriff's Department
14  employees regarding their conduct and do not mention or involve any discipline
15  imposed by the Department.  Indeed, the Sheriff's Department disciplined only one
16  individual related to the photos: Deputy Joey Cruz.  It did not discipline or suspend
17  anyone else in any way.

18          **Defendants' Response:**  Exhibits 97, 101, 110, 117, 118, 119, 120, 121, 122,
19  132, 133, 139, and 146 are not relevant to any of Plaintiff's claims in this case.
20  These Exhibits are memorandums written by LASD personnel as part of LASD's
21  internal inquiry into the crash site photos.

22          Plaintiff has abandoned his "failure to adequately investigate and discipline
23  theory under *Monell*.  Plaintiff alleged three Monell theories in his Second Amended
24  Complaint ("SAC"): (i) failure to train; (ii) failure to adequately investigate and
25  discipline; and (iii) a failure to establish a policy or procedure addressing the
26  treatment of human remains."  (SAC ¶ 32.)  Defendants moved for summary
27  judgment on all three theories (*See* Dkt. 88-1 at 21:1-26:24.)  And Plaintiff did not
28  oppose Defendants' motion as to theories (ii) and (iii).  (*See* Dkt. 116 at 15:27-25:8).

1  Therefore, under Ninth Circuit law, Plaintiff abandoned all but the training theory.

2  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)  ("[P]laintiff has

3  'abandoned … claims by not raising them in opposition to [the defendant's] motion

4  for summary judgment." (second and third alterations in original) (citation

5  omitted)).

6         At the February 4, 2022 Final Pretrial Conference, the Court stated that it

7  agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not

8  opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See*

9  Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff  asked to

10 be allowed to file briefing on the issue, which the Court agreed to.  [*Id.* At 7:11-8:4,

11 68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.

12 [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]

13 And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet

14 to issue a formal ruling on the waiver/abandonment issue.

15        If the Court sticks to its tentative ruling, documents related to LASD's

16 investigation and discipline of its employees would be irrelevant and not admissible

17 at trial.  Specifically, allowing Plaintiff to offer exhibits 97, 101, 110, 117, 118, 119,

18 120, 121, 122, 132, 133, 139, and 146 would be confusing and misleading.  It would

19 lead jurors to believe that certain *Monell* theories are still part of this case despite

20 Plaintiff having abandoned them.  Defendants will be forced to either ignore the

21 irrelevant evidence and hope the jury understands the proper parameters of

22 Plaintiff's *Monell* claim, or spend valuable trial time introducing witnesses and

23 evidence to defend against abandoned claims.

24        Having acknowledged that he has abandoned his *Monell* claim based on a

25 failure to investigate/discipline, Plaintiff now attempts to recast his own pleadings in

26 an effort to keep this issue alive.  Plaintiff now claims that "failure to

27 investigate/discipline" is not an independent basis for *Monell* liability but, rather, is

28 evidence of a custom and practice of taking and sharing death photos and/or

1   evidence of the agency's deliberate indifference to violations it failed to stop

2   through training or implementation of policies.  Plaintiff wants to admit these

3   memorandums to suggest that the County failed to adequately investigate or

4   discipline its employees.  This situation—the death of a world-wide celebrity and

5   others in a horrific helicopter crash—is unprecedented within LASD.  Because there

6   is no corollary to this incident, it makes no sense to say that how the County

7   investigated or disciplined personnel in this situation proves the existence of a

8   custom or practice.  Nor does it make sense to say that the County was "deliberately

9   indifferent" to a need to train or develop policies for something that could not be

10   foreseen and had never happened before.

11         Therefore, the memorandums authored by LASD personnel have no bearing

12   on any of Plaintiff's claims in this case and should be excluded.

13         Plaintiff now argues without any citation that this evidence is relevant to his

14   "failure to train" policy under *Monell*.  Wrong.  No case has held that a government

15   agency's failure to investigate or discipline is relevant to proving a "failure to train"

16   theory.  That is the reason Plaintiff does not cite any case law for this proposition.

17   In fact, prior to the Court stating that its practice is to bifurcate federal and state law

18   claims at trial, Plaintiff had only argued that this evidence was relevant to proving

19   his "custom or practice" theory under *Monell*.  Plaintiff changed his argument

20   because he is trying desperately to introduce this improper evidence at trial.

21         Additionally, these Exhibits are also inadmissible because they reflect

22   subsequent remedial measures (i.e., discipline) taken by the Department.  Under

23   Federal Rule of Evidence 407, "[w]hen measures are taken that would have made an

24   earlier injury or harm less likely to occur, evidence of the subsequent measures is

25   not admissible to prove . . . culpable conduct."  Fed. R. Evid. 407

26         The memorandums were part of LASD's initial inquiry into reports about

27   crash site photos, and they reflect steps taken by LASD to make sure the conduct

28   complained of by Plaintiff does not happen again.  Courts have recognized that

1  disciplinary proceedings are subsequent remedial measures in civil rights cases.

2  *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (in

3  section 1983 case based on police use-of-force, Court properly excluded evidence

4  from Internal Affairs investigation because "[t]he Internal Affairs investigation and

5  measures taken by the defendant City were remedial measures taken after the

6  incident").

7       These memorandums are also inadmissible hearsay not subject to any

8  exception.  None of these deputies are parties in this case for purposes of trial.  [*See*

9  Footnote 1, *supra*.]  Moreover, the mere fact that these individuals are employed by

10 the County does not mean that their out of court statements constitute party

11 admissions under FRE 801(d)(2)(D).  *See See Miller v. LCF, Inc.*, No. C-94-3372-

12 VRM, 1994 WL 669837, at *5 (N.D. Cal. Nov. 18, 1994); *Staheli v. University of

13 Mississippi*, 854 F.2d 121, 127 (5th Cir. 1988) (statements of a university professor

14 not involved in a decision to deny another professor tenure not to be vicarious

15 admissions of university).  To the extent Plaintiff intends to rely on these

16 memorandums for their truth, they are inadmissible.

17       As set forth above, *see supra* section I.A (Defendants' Response), Plaintiff's

18 arguments that Defendants waived their hearsay objections is without merit.

19 Plaintiff tellingly does not cite any law or authority for this position, and that is

20 because there is none.

21 **X.    Cell Phone Records of County Employees.**

22       Sixteen (16) of Plaintiff's exhibits to which Defendants object are the cell

23 phone records of Sheriff's and Fire Department employees who have acknowledged

24 possessing photos of the crash scene.  Some employees have two sets of records

25 because they used both personal and Department-issued cell phones.

26 ❖ Plaintiff's Exhibit 99:  (Redacted) Cell Records of Michael Russell

27    (COLA035636) – Michael Russell, Tom Pikor

28

1   ❖ <u>Plaintiff's Exhibit 158:</u>  Brian Jordan Cell Phone Records (VB00000104-575)

2   – Brian Jordan, Tom Pikor

3   ❖ <u>Plaintiff's Exhibit 401:</u>  Joey Cruz Cell Records, January 1 – March 6, 2020

4   (Bates COLA035763- COLA035822) – Joey Cruz, Rafael Mejia, Michael

5   Russell, Tom Pikor

6   ❖ <u>Plaintiff's Exhibit 402:</u>  Rafael Mejia Cell Records, January 26 – March 4,

7   2020 (Bates COLA036079-COLA036662) – Rafael Mejia, Joey Cruz, Ruby

8   Cable, Tom Pikor

9   ❖ <u>Plaintiff's Exhibit 405:</u>  Michael Russell Cell Records, January 2 – March 31,

10   2020 (Bates COLA035626-COLA035746) – Michael Russell, Tom Pikor,

11   Ben Sanchez

12   ❖ <u>Plaintiff's Exhibit 406:</u>  Raul Versales Cell Records, January 26 – March 4,

13   2020 (Bates COLA036079-COLA036094, COLA036663-COLA037559) –

14   Raul Versales, Tom Pikor, Doug Johnson, Travis Kelly, Chris Jauregui, Scott

15   Miller, Rafael Mejia

16   ❖ <u>Plaintiff's Exhibit 408:</u>  Douglas Johnson Cell Records, January 26 – March

17   4, 2020 (Bates COLA038063-COLA038538) – Doug Johnson, Tom Pikor,

18   Raul Versales

19   ❖ <u>Plaintiff's Exhibit 411:</u>  Tony Imbrenda, Brian Jordan, & Arlin Kahan LAFD

20   Cell Records, January 26 – March 3, 2020 (Bates COLA037937-

21   COLA037969) – Tony Imbrenda, Brian Jordan, Arlin Kahan, Tom Pikor

22   ❖ <u>Plaintiff's Exhibit 415:</u> Tony Imbrenda Personal Cell Records, January 25 –

23   March 3, 2020 (Bates C0LA035893-C0LA035906) – Tom Pikor, Tony

24   Imbrenda, Brian Jordan, Arlin Kahan

25   ❖ <u>Plaintiff's Exhibit 417:</u>  Brian Jordan Personal Cell Records, January 26 –

26   March 4, 2020 (Bates VB00003632-VB00004129) – Tom Pikor, Brian

27   Jordan, Tony Imbrenda

28

1    ❖ Plaintiff's Exhibit 420:  Arlin Kahan Personal Cell Records, December 27 –
2        March 26, 2020 (Bates COLA035861-COLA035880) – Tom Pikor, Arlin
3        Kahan, Tony Imbrenda
4    ❖ Plaintiff's Exhibit 421:  Benjamin Sanchez Cell Records, January 26 – March
5        3, 2020 (Bates COLA035910-COLA035933) – Tom Pikor, Michael Russell,
6        Ben Sanchez
7    ❖ Plaintiff's Exhibit 424:  Ruby Cable Cell Records, January 26 – March 3,
8        2020 (Beg Bates COLA037970) – Tom Pikor, Ruby Cable, Rafael Mejia
9    ❖ Plaintiff's Exhibit 428:  Stephanie Shrout & Scott Miller LASD Cell Records,
10       January 26 – March 3, 2020 (Bates COLA037921-C0LA037936) – Tom
11       Pikor, Scott Miller, Raul Versales
12   ❖ Plaintiff's Exhibit 430:  Travis Kelly Cell Records, January 26 – March 3,
13       2020 (Bates COLA038004-COLA038030) – Tom Pikor, Scott Miller, Raul
14       Versales
15   ❖ Plaintiff's Exhibit 432:  Christopher Jauregui Cell Records, January 26 –
16       March 3, 2020 (Bates COLA038031-COLA038058) – Tom Pikor, Chris
17       Jauregui, Raul Versales
18       **Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);
19   More prejudicial than probative (FRE 403); Speculation.
20       **Plaintiff's Response to the Objections:**  Defendants' cell records, which
21   show telephone and text messaging activity in the days and weeks after the crash,
22   are compelling circumstantial evidence of Defendants' widespread sharing of the
23   photos.  They also demonstrate Defendants' spoliation of evidence.  At trial,
24   Plaintiff intends to: (i) have a summary witness (Tom Pikor) testify regarding these
25   records and provide information about outgoing text messages in the days and
26   weeks following the crash; and (ii) present a demonstrative, similar to the graphic
27   Plaintiff submitted in opposition to Defendants' summary judgment motion (Dkt.
28

192-1), that illustrates the widespread dissemination of the photos, with cell records providing much of the evidentiary foundation for the demonstrative.

It is essential that the cell records of all of County employees known to have possessed photos of the victims' remains be admitted.  In many instances, the County employees' cell records show outgoing picture messages in the days and weeks following the accident.  Plaintiff will argue that, based on the totality of the facts and circumstances (including Defendants' spoliation), the jury should infer that many such picture messages contained photos of the victims' remains.  In other instances, an employee's cell records does not contain text activity because text records were simply not available for the relevant early 2020 timeframe.  It is important for the jury to have this context to avoid the misimpression that the employees with unavailable texting records did not send such messages.  In reality, the lack of text messages in the record  is due to Defendants' spoliation, and the silence of the cell records for a particular employee is not exculpatory in any way.

The cell records are also central to demonstrating Defendants' spoliation and the prejudice flowing therefrom.  The cell records of numerous County employees reflect text messaging activity for texts that Defendants have destroyed or failed to preserve, depriving Plaintiff of direct evidence of dissemination.  The jury deserves to know that, despite the ample text-messaging activity reflected in the cell records, Defendants have produced only a tiny number of text messages in this case, and none from the devices of the Deputy Defendants, Tony Imbrenda, Brian Jordan, or Arlin Kahan.

The cell records show phone call activity, in addition to text activity, which is also relevant in many instances.  For example, Johnson's and Versales' cell phone records reflect that, between 10:30 a.m. on the day of the crash—when Versales and others at the command post personnel learned that Kobe Bryant may have been onboard the helicopter—and 11:38 a.m., Johnson and Versales had 14 telephone calls totaling 8 minutes and 32 seconds.  Following these calls, Johnson took close-

up photos of the victims and sent them to Versales.  The timing and volume of the calls between Johnson and Versales give rise to a strong inference that Johnson knew Kobe Bryant had perished in the crash when he took and shared the photos, contrary to Johnson's prior under-oath statements denying such knowledge.

Defendants' objection of "speculation" is unintelligible.  Although the cell records do not themselves directly establish the content of the messages, they are compelling circumstantial evidence of dissemination.  For example, Michael Russell's cell records show outgoing picture messages in the days after the crash to a group chat with his video game buddies, and Russell has admitted to sharing photos of the victims remains' with one member of the group chat, Ben Sanchez. Although Russell denies sharing the photos with other members of the group, the simultaneous picture messages to the entire chat suggests otherwise.  This is a factual question for the jury to decide.  Similarly, Brian Jordan's cell records show outgoing text messages to numerous members of the media during a time when Jordan is known to have possessed close-up photos of the victims' remains. Considering the false pretenses under which Jordan obtained the photos and his equivocal, evasive testimony under oath, the text records are strong circumstantial evidence that Jordan shared the photos with members of the media.

Finally, Defendants' hearsay argument is frivolous, as the cell records are quintessential business records.  *See* Fed. R. Evid. 803(6); *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009) (describing business records exception).  As demonstrated by their accompanying custodial declarations, the cell phone records are records kept in the regular course of the service providers' business.  *See* Fed. R. Evid. 803(6)(A)-(D).  And Defendants have not even attempted to show that the records are somehow untrustworthy (nor could they).  *See* Fed. R. Evid. 803(6)(E).  Plaintiff has obtained certificates of authenticity from the wireless carriers who produced the cell records, and

1   Defendants have not objected to the admission of those certificates.  (*See*, *e.g.*,, Exs.
2   403-04.)

3          Thus, as countless courts have held, the cell phone records qualify for the
4   business-records exception to the rule against hearsay.  *See*, *e.g.*, *Norman v.*
5   *AllianceOne Receivables Mgmt., Inc.*, 637 F. App'x 214, 216 (7th Cir. 2015)
6   (holding that cell phone records qualify as business records under Rule 803(6));
7   *United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir. 2011) (same); *United*
8   *States v. Sanchez*, 586 F.3d 918, 928 (11th Cir. 2009) (same); *United States v.*
9   *Nelson*, 533 F. Supp. 3d 779, 801 (N.D. Cal. 2021) (same); *United States v. Amador*,
10  2021 WL 3912266, at *7 (E.D. Cal. Sept. 1, 2021) (same); *United States v.*
11  *Brugnara*, 2015 WL 1907513, at *4 (N.D. Cal. Apr. 23, 2015), *aff'd*, 856 F.3d 1198
12  (9th Cir. 2017) (same); *United States v. Clayton*, 2014 WL 508523, at *3 (N.D.
13  Iowa Feb. 6, 2014) (same).

14         Although immaterial to the Court's resolution of this issue, Plaintiff also
15  notes that Defendants mischaracterize the nature of the cell phone records.  Contrary
16  to Defendants' suggestion, Plaintiff does not intend to rely on the cell phone records
17  to "prove the content of the cellphone records."  The cell phone records do not
18  contain any information about the *content* of any communications.  Instead, the cell
19  phone records provide basic information about the recipient(s), time, and method
20  (i.e., call, text, or picture message) of the communication, all of which is relevant
21  circumstantial evidence for the jury to consider.

22         **Defendants' Response:**  Exhibits 99, 158, 401, 402, 405, 406, 408, 411, 415,
23  417, 420, 421, 424, 428, 430, and 432 should not be admitted at trial because
24  Plaintiff's use of these cell phone records will be based entirely on speculation  To
25  the extent that these cell phone records contain any relevant information at all (they
26  do not), the probative value arising therefrom is substantially outweighed by a
27  danger of unfair prejudice, confusing the issues in this case, misleading the jury,
28  undue delay, and wasting time.

1    Plaintiff intends to introduce these cellphone records at trial, point out that

2    picture messages and texts were sent in the January through March 2020 time

3    period, and argue to the jury that it should conclude that those messages and texts

4    included crash site photos depicting the remains of Plaintiff's wife and daughter.

5    Plaintiff repeatedly concedes his intention, referring to these cellphone records as

6    "compelling circumstantial evidence of Defendants' widespread sharing of the

7    photos." Plaintiff has no evidence that the picture messages and texts included crash

8    site photos.

9    Plaintiff readily admits that "[t]he cell phone records do not contain any

10   information about the *content* of any communications." Plaintiff did not depose the

11   third parties who received the pictures messages or texts listed in the cellphone

12   records. Plaintiff did not request documents from those third parties either. Plaintiff

13   is not permitted to avoid taking discovery and then tell the jury to do the work for

14   him on public dissemination. If Plaintiff could prove that these picture messages

15   contained crash site photos, that would have come from these third parties, and not

16   by speculating about what was contained in the messages. Plaintiff did not conduct

17   this discovery because when he deposed LASD and LACFD personnel about the

18   picture messages and texts, they testified that none of them included crash site

19   photos depicting human remains. There is no legal basis for the admission of these

20   phone records into evidence.

21   These picture messages could be anything. Plaintiff has no basis for arguing

22   they contain crash site photos. It is pure speculation. The "picture messages"

23   reflected in these cellphone records could be emojis, GIFs, screenshots, pictures of

24   someone's child, and numerous other possible image files. There is no evidence any

25   of them contained crash site photos. In fact, the evidence is to the contrary—every

26   person asked about these messages testified they did not include crash site photos.

27   If Plaintiff is permitted to introduce this evidence, Defendants will be forced to call

28   the provider custodian (e.g., AT&T, Verizon, T-Mobile, etc.) to testify at trial about

the records, what counts as a "picture message," and how sending any type of image file would be reflected as a "picture message."  And Defendants would need to do that for each of the providers and have them go through every one of these exhibits so that the jury would not be misled by Plaintiff's arguments.

Rather than provide any evidence that pictures of the crash site were sent, Plaintiff is attempting to rely on the content of out-of-court statements, Defendants' employees' cell phone records, to establish that crash site photos were publicly disseminated.  Depending on how Plaintiff proffers these records at trial, these records, and any associated testimony by Plaintiff's investigator, may be hearsay because they are being offered for their truth.  *See* FRE 801-803.

Plaintiff cannot rely on speculation to meet his burden to show public dissemination of crash site photos by the County.  *See e.g.*, FRE 403.  That is not how it works.  Plaintiff is not permitted to tell the jury that it can infer crash site photos were included in the picture messages and texts when no evidence supports that claim.

These Exhibits should also be excluded because they will necessitate undue consumption of limited trial time, which far outweighs any minimal probative value. Plaintiff will need to examine the personnel about the many picture and text messages sent in the January through March 2020 time period, and establish whether any of them included crash site photos.  To the extent Plaintiff tells the jury it should infer such photos were included (despite not having any evidence that they were), Defendants will need to examine the personnel about their texting habits, similar picture messages and texts sent to the same third party recipients in the months before and after January-March 2020 to show that nothing out of the ordinary happened during that time, and that no crash site photos were sent to any of the third party recipients.

Defendants would also be forced to call each and every third party recipient of a "picture message" to testify at trial about the messages at issue and to confirm

1   that none of them included crash site photos.  Based on the messages reflected in

2   these exhibits, Defendants would need to call dozens and dozens of third party

3   witnesses.  That would be the only way to counter Plaintiff's argument that the jury

4   should "infer" that these third parties were sent crash site photos.  This would

5   significantly increase the time needed for trial.

6        Plaintiff states that he intends to call a "summary witness" to testify about the

7   cellphone records and state that certain phone numbers belong to certain people.

8   That witness—Thomas Pikor—is not a percipient witness and was not disclosed by

9   Plaintiff as an expert witness.  The County has never been provided with Pikor's

10  qualifications, his methodology, the source for his information, or an expert report

11  (or any other type of report).  Pikor is not qualified as an expert and to the extent

12  Plaintiff intends to elicit testimony from him about running the phone numbers

13  across a database to identify the purported owners of those numbers, it would be

14  inadmissible hearsay not subject to an exception or exemption.  It would also be

15  unreliable and based purely on speculation.  For example, just because a phone

16  number may be identified as belonging to someone in 2021—when Pikor did his

17  purported analysis—does not mean that was the same person in January 2020 when

18  the helicopter crash occurred.

19       Lastly, Plaintiff argues that the records bear on the veracity of Deputy

20  Johnson's testimony that he was unaware that Kobe Bryant was a passenger when

21  he photographed the crash site.  This claim is baseless.  Both Deputy Johnson and

22  Deputy Versales testified that they spoke by phone multiple times that morning due

23  to poor radio reception.  Deputy Johnson has made clear—under oath—that when he

24  took photographs of the scene that morning he did not know who any of the

25  passengers were.  The fact that phone records confirm that Deputy Johnson and

26  Deputy Versales were in communication that morning does not have any bearing on

27  the veracity of Deputy Johnson's testimony.

28

XI.   **Social Media Posts by Sheriff's Department Accounts.**

One (1) of Plaintiff's exhibits to which Defendants object is a compilation of social media posts by accounts operated by the Sheriff's Department:

- ❖ Plaintiff's Exhibit 191:  Social Media Posts by LASD Accounts – Robert Boese, Alex Villanueva, Mark Flores, Joey Cruz, Michael Russell, Rafael Mejia, Doug Johnson, Travis Kelly, Raul Versales

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403).

**Plaintiff's Response to the Objections:**  Exhibit 191 is a compilation of social media posts by accounts operated by the Sheriff's Department that include photos (sometimes pixelated) of dead and injured members of the public.  At deposition, a 30(b)(6) witness for the Department testified that the Department does not know whether the photos were taken on personal versus department-issued devices.  LASD's practice of posting photos of deceased members of the public on its social media accounts evidences a custom and practice of taking, retaining, and sharing unnecessary photos of human remains on personally-owned cell phone, which is directly relevant to Plaintiff's *Monell* claim.  Because the Sheriff's Department has not traditionally provided cell phones to line-level personnel, the social media posts also evidence the Department's awareness that its employees used personal cell phones to take photos of human remains.  Given this awareness, it would have been obvious that—absent a clear policy and training backed by meaningful discipline—the right articulate in *Marsh* would inevitably be violated.

**Defendants' Response:**  Exhibit 191 is not relevant and should not be admitted at trial.  It is a compilation of social media posts by LASD that has nothing to do with the crash site photos at issue.  None of the photos in Exhibit 191 are from the January 26, 2020 crash.  Plaintiff admits that none of the crash site photos have been put on social media (by LASD or anyone else), published by the media, or been made available (by LASD or anyone else).

- 73 -

1    Allowing Plaintiff to offer Exhibit 191 would be confusing and misleading.  It

2 would lead jurors to believe that LASD posted the crash site photos to its social

3 media accounts.  That did not happen.  Defendants will be forced to either ignore the

4 irrelevant evidence and hope the jury understands that, or spend valuable trial time

5 introducing witnesses and evidence to explain that did not happen.

6    Plaintiff argues that Exhibit 191 is relevant because it shows LASD's "custom

7 and practice of taking, retaining, and sharing unnecessary photos of human remains

8 on personally-owned cell devices."  That is false and Plaintiff knows it.  Plaintiff

9 deposed LASD Sergeant Robert Boese about the photos in Exhibit 191 and he

10 explained that the photos are consented to by the third parties, taken from third party

11 sources like press publications, and/or are pixelated to protect the privacy of those

12 involved.  None of the photos are unnecessary or improper.  And the posts have

13 nothing to do with retaining photos.

14    This case is about whether Defendants violated Plaintiff's constitutional rights

15 by publicly disseminating crash site photos depicting Plaintiff's relatives.  Plaintiff

16 has no evidence of public dissemination by the County, so he is trying to do

17 everything he can to confuse and mislead the jury.

18    Plaintiff also argues that this exhibit shows that the Sheriff's Department

19 knew its deputies were using personal cellphones to take photos of human remains.

20 That is beside the point.  The Department has policies and trainings about

21 documenting accident and crime scenes, including taking photographs of victims.

22 The Department also has policies and trainings that information learned while on

23 duty is to be kept confidential and not shared outside the Department.  Likewise

24 without merit is that these social media posts show that "the right articulated in

25 *Marsh* would inevitably be violated" by personnel.  Prior to this incident, there has

26 never been a complaint made with the Sheriff's Department about the improper

27 taking or sharing of accident photos depicting human remains.  That is because

28 deputies are trained not to do that.

## XII.   **Performance Log Entries.**

Five (5) of Plaintiff's exhibits to which Defendants object are performance log entries issued by Lt. Hector Mancinas to Sheriff's Department personnel related to photos of the crash scene:

- ❖ <u>Plaintiff's Exhibit 58:</u>  Performance Log Entry for Doug Johnson, dated February 27, 2020 (COLA000747) – Doug Johnson, Hector Mancinas, Dennis Kneer, Jorge Valdez, Alex Villanueva, Marcus Phillips, Matthew Vander Horck

- ❖ <u>Plaintiff's Exhibit 59:</u>  Performance Log Entry for Joey Cruz, dated February 27, 2020 (COLA000745) – Joey Cruz, Hector Mancinas, Dennis Kneer, Jorge Valdez, Alex Villanueva, Marcus Phillips, Matthew Vander Horck

- ❖ <u>Plaintiff's Exhibit 60:</u>  Performance Log Entry for Michael Russell, dated February 27, 2020 (COLA000743) – Michael Russell, Hector Mancinas, Dennis Kneer, Jorge Valdez, Alex Villanueva, Marcus Phillips, Matthew Vander Horck

- ❖ <u>Plaintiff's Exhibit 61:</u>  Performance Log Entry for Rafael Mejia, dated February 27, 2020 (COLA000744) – Rafael Mejia, Hector Mancinas, Dennis Kneer, Jorge Valdez, Alex Villanueva, Marcus Phillips, Matthew Vander Horck

- ❖ <u>Plaintiff's Exhibit 62:</u>  Performance Log Entry for Raul Versales, dated February 27, 2020 (COLA000746) – Raul Versales, Hector Mancinas, Dennis Kneer, Jorge Valdez, Alex Villanueva, Marcus Phillips, Matthew Vander Horck

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403); Subsequent Remedial Measure (FRE 407).

**Plaintiff's Response to the Objections:**  The above exhibits are performance log entries issued by LASD to Deputy Joey Cruz, Deputy Michael Russell, Deputy

Doug Johnson, Deputy Rafael Mejia, and Deputy Raul Versales on February 27, 2020, related to their involvement with the photos.  These performance log entries are relevant and not unfairly prejudicial because they bear on (i) the absence of discipline for LASD employees who took or shared photos of the victims' remains; (ii) the irregular nature of the text of the performance log entry, which appears intended to obfuscate the nature of the deputy's conduct; (iii) the irregular, month-long delay in issuing the performance log entry, which is indicative of a cover-up and attempt to avoid a paper trail of the Department's misconduct; (iv) Sheriff Villanueva's offer of "amnesty" in the form of a performance log entry in exchange for deletion of evidence; and (v) the absence of LASD policies regarding photos of human remains.

Numerous LASD witness have testified that performance log entries are not discipline, and LASD's failure to discipline its employees for gratuitously taking and sharing photos of the victims' remains bears on its liability under *Monell* because "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry."  *Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997); *id.* at 519-20 ("a municipal defendant's failure to fire or reprimand officers evidences a policy of deliberate indifference to their misconduct"); *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018) (LASD's "failure to take any remedial action" post-incident allows jury "to infer that LASD had adopted a custom or practice of condoning [misconduct]"); *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (A "turn a-blind-eye approach," including "failure to investigate" and "lack of reprimand or discipline for the officers involved even when their supervisors were aware of the complaints" supported conclusion that "a policy or custom [] led to violation" of constitutional rights).

1    Defendants' repeated refrain that Plaintiff somehow "abandoned" such post-
2  violation evidence fails for the reasons stated in Plaintiff's statement in section I.C.
3  above and in his supplemental briefing regarding the *Monell* claim.  (Dkt. 281, 287.)
4    Defendants' objection based on subsequent remedial measures is entirely new
5  (*see* Lavoie Decl., Ex. A), and thus waived and void for the reasons stated above,
6  *see supra* section I.A.  In addition, Defendants' objection fails on the merits
7  because, as detailed above (*supra* section I.B.), retrospective investigations are not
8  subsequent remedial measures.

9    **Defendants' Response:**  Exhibits 58-62 are not relevant to any of Plaintiff's
10  claims in this case.  They are Performance Log Entries issued to Deputy Doug
11  Johnson, Deputy Joey Cruz, Deputy Michael Russell, Deputy Rafael Mejia, and
12  Deputy Raul Versales as part of LASD's internal investigation.

13    Plaintiff has abandoned his "failure to adequately investigate and discipline"
14  theory under *Monell*.  Plaintiff alleged three Monell theories in his Second Amended
15  Complaint ("SAC"): (i) failure to train; (ii) failure to adequately investigate and
16  discipline; and (iii) a failure to establish a policy or procedure addressing the
17  treatment of human remains."  (SAC ¶ 32.)  Defendants moved for summary
18  judgment on all three theories (*See* Dkt. 88-1 at 21:1-26:24.)  And Plaintiff did not
19  oppose Defendants' motion as to theories (ii) and (iii).  (*See* Dkt. 116 at 15:27-25:8).
20  Therefore, under Ninth Circuit law, Plaintiff abandoned all but the training theory.
21  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)  ("[P]laintiff has
22  'abandoned … claims by not raising them in opposition to [the defendant's] motion
23  for summary judgment." (second and third alterations in original) (citation
24  omitted)).

25    At the February 4, 2022 Final Pretrial Conference, the Court stated that it
26  agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not
27  opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See*
28  Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff  asked to

1   be allowed to file briefing on the issue, which the Court agreed to.  [*Id.* At 7:11-8:4,

2   68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.

3   [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]

4   And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet

5   to issue a formal ruling on the waiver/abandonment issue.

6          If the Court sticks to its tentative ruling, transcripts and audio recordings of

7   LASD's Internal Affairs Bureau interviews would be irrelevant and not admissible

8   at trial.  Specifically, allowing Plaintiff to offer these exhibits would be confusing

9   and misleading.  It would lead jurors to believe that certain *Monell* theories are still

10  part of this case despite Plaintiff having abandoned them.  Defendants will be forced

11  to either ignore the irrelevant evidence and hope the jury understands the proper

12  parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing

13  witnesses and evidence to defend against abandoned claims.

14         Plaintiff now argues without any citation that this evidence is relevant to his

15  "failure to train" policy under *Monell*.  Wrong.  No case has held that a government

16  agency's failure to investigate or discipline is relevant to proving a "failure to train"

17  theory.  That is the reason Plaintiff does not cite any case law for this proposition.

18  In fact, prior to the Court stating that its practice is to bifurcate federal and state law

19  claims at trial, Plaintiff had only argued that this evidence was relevant to proving

20  his "custom or practice" theory under *Monell*.  Plaintiff changed his argument

21  because he is trying desperately to introduce this improper evidence at trial.

22         Plaintiff contends that Exhibit 58-62 are relevant because they illustrate the

23  absence of discipline against employees who took and shared the photos at

24  issue.  Plaintiff contends that this "post-event" evidence can demonstrate a policy or

25  custom to support *Monell* liability.  But each of the cases that Plaintiff cites for this

26  argument are easily distinguishable and not relevant here.  In each of those cases,

27  there was significant evidence that the defendants were already aware of numerous

28  other complaints or incidents that were *not the subject of the current lawsuit* which

1    the defendants had failed to address.  That is not the case here.

2           In *Henry v. Cnty. of Shasta*, 132 F.3d 512 (9th Cir. 1997), the plaintiff was

3    stopped by highway patrol officers for a broken tail light and when he refused to

4    sign the ticket and lawfully demanded an appearance before a magistrate, he was

5    ignored and placed naked in a "safety cell" covered in dry urine for almost 10

6    hours.  *Id*. at 516-17.  He was repeatedly denied basic rights.  Plaintiff sued the

7    municipal defendant for liability under Section 1983.  *Id*. at 517.  In opposing the

8    municipal defendant's motion for summary judgment, the plaintiff submitted

9    declarations by two others who were arrested after the plaintiff which described how

10   they were subjected to virtually identical treatment after they were stopped for

11   minor traffic violations.  *Id*. at 518.  The court found that these declarations were

12   probative to prove the existence of the municipal defendant's policy or custom.  *Id*.

13   at 519.  Notably, Judge Rymer issued a dissent disagreeing that the declarations

14   were sufficient here to establish a policy or custom without evidence that the

15   municipal *knew* about plaintiff's incident and had "any custom or policy

16   sanctioning, encouraging, or permitting the objection treatment."  *Id*. at 524. This is

17   because liability for an improper custom cannot be "predicted on isolated or

18   sporadic incidents."  *Id*. (citation and quotations omitted).

19          In *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776 (9th Cir. 2018), inmates

20   filed a section 1984 claim against the County of contending that they were subject to

21   cruel and unusual punishment during "cell extractions" during which they were

22   excessively beaten and otherwise subject to excessive force with tasers, concussion

23   grenades, block guns, and other weapons.  *Id*. at 786-87. The court of appeal

24   affirmed a verdict against the County under *Monell* because there was substantive

25   evidence that showed a "custom of ignoring or condoning excessive force" which

26   "perpetuated a culture where excessive force was encouraged."  This evidence was

27   not just limited to the fact that supervisory staff had observed the practices and had

28   done nothing, but also a report of the Men's Central Jail detailing how senior jail

568963.1

- 79 -

officials failed to investigate 100 use-of-force allegations, testimonial evidence, and the fact that the sheriff's department had not used their "force-tracking system to monitor force against many prisoners." *Id*. at 789-80, 803.

Similarly, in *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), the magistrate judge found that the Idaho Department of corrections violated inmates' constitutional rights for "repeated instances" of retaliation against inmates who filed lawsuits or otherwise availed themselves of grievance procedures against the city. *Id*. at 1123-25.  There were numerous complaints of retaliation that the top administrators failed to investigate or correct.  *Id*. at 1127.  Thus the court found that this supported a finding that there was a policy or custom that led to the violation of inmates' rights.  *Id*.

The facts of this case come nowhere close to those in the cases Plaintiff cites.  There has never before been a complaint about a LASD or LACFD employee sharing photos of victim remains.  And there was no public dissemination of the photos here. This was an isolated, sporadic incident that occurred during the investigation of an unprecedented fatal helicopter crash.  Without more evidence, Exhibits 58-62 have little value and would be highly prejudicial.

Additionally, these Exhibits 58-62 are also inadmissible because they reflect subsequent remedial measures (i.e., discipline) taken by the Department.  Under Federal Rule of Evidence 407, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct."  Fed. R. Evid. 407

The performance log entries were issued as part of LASD's as part of LASD's efforts to make sure the conduct complained of by Plaintiff does not happen again. Courts have recognized that disciplinary proceedings are subsequent remedial measures in civil rights cases.  *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (in section 1983 case based on police use-of-force, Court properly excluded evidence from Internal Affairs investigation because "[t]he

1  Internal Affairs investigation and measures taken by the defendant City were

2  remedial measures taken after the incident").

3      As set forth above, *see supra* section I.A (Defendants' Response), Plaintiff's

4  arguments that Defendants waived their subsequent remedial measure objections is

5  without merit.  Plaintiff tellingly does not cite any law or authority for this position,

6  and that is because there is none.

7  **XIII.  Internal LASD Document Requesting Internal Affairs Investigation.**

8      One (1) of Plaintiff's exhibits to which Defendants object is an internal

9  Sheriff's Department form in which Chief Dennis Kneer requests an investigation

10  by the Internal Affairs Bureau regarding the photos.

11  ❖ Plaintiff's Exhibit 307:  LASD Request for IAB Investigation, dated February

12      28, 2020 (COLA000906) – Alex Villanueva, Dennis Kneer, William Jaeger

13      **Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);

14  More prejudicial than probative (FRE 403).

15      **Plaintiff's Response to the Objections:**  Exhibit 307 is a document in which

16  Chief Dennis Kneer initiated an internal affairs investigation regarding the improper

17  photos on February 28, 2020—a full month after LASD received the citizen

18  complaint, but the same day the *Los Angeles Times* reported on the Department's

19  misconduct.

20      Defendants' copy-and-pasted argument that this evidence is irrelevant

21  because it pertains to an "abandoned" *Monell* theory fails for the reasons stated in

22  Plaintiff's statement in section I.C. above.  Evidence regarding Defendants' post-

23  violation conduct does not relate to any separate or independent *Monell* theory but is

24  probative of both of Plaintiff's *Monell* theories—the failure to train theory and the

25  longstanding custom or practice theory.  In any event, the relevance of this

26  particular document sweeps even more broadly.

27      *First,* the fact that the Sheriff's Department believed a full internal

28  investigation was the best course to track the spread of the photos—but waited a full

1  month before initiating one—bears on the effectiveness of the Sheriff's

2  Department's overall response in stemming the spread of the photos, which is

3  relevant to Plaintiff's emotional distress and the likelihood that the photos will

4  surface online.  *Second*, Sheriff Villanueva's public justification for offering

5  amnesty to the offending deputies in exchange for destroying evidence of their

6  misconduct is that union lawyers would have stood in the way of a tradiational

7  internal investigation.  But the fact that the Sheriff's Department later *did* conduct

8  an internal investigation undermines the Sheriff's explanation, and tends to suggest

9  that the Sheriff's true motivation for his amnesty approach was to cover up

10  misconduct, which itself is relevant to spoliation.  *Third*, the Sheriff's Department's

11  one-month delay in initiating an internal investigation is relevant to its failure to

12  adequately preserve relevant evidence between the time of the citizen complaint (on

13  January 28, 2020) and when and internal investigation was initiated (an entire month

14  later).

15       Defendants' arguments regarding Plaintiff's supposed waiver of a failure-to-

16  investigate theory are addressed above, *supra* <u>section I.C.</u>

17       Defendants' objection based on subsequent remedial measures is entirely new

18  (*see* Lavoie Decl., Ex. A), and thus waived and void for the reasons stated above,

19  <u>*see supra* section I.A.</u>  In addition, Defendants' objection fails on the merits

20  because, as detailed above (<u>*supra* section I.B.</u>), post-incident investigations are not

21  subsequent remedial measures.

22      **Defendants' Response:**  Exhibit 307 is not relevant to any of Plaintiff's

23  claims in this case.  It is the request by Chief Dennis Kneer to Captain William

24  Jaeger to initiate the LASD Internal Affairs Bureau investigation.

25       Plaintiff has abandoned his "failure to adequately investigate and discipline"

26  theory under *Monell*.  Plaintiff alleged three Monell theories in his Second Amended

27  Complaint ("SAC"): (i) failure to train; (ii) failure to adequately investigate and

28  discipline; and (iii) a failure to establish a policy or procedure addressing the

1   treatment of human remains." (SAC ¶ 32.) Defendants moved for summary

2   judgment on all three theories (*See* Dkt. 88-1 at 21:1-26:24.) And Plaintiff did not

3   oppose Defendants' motion as to theories (ii) and (iii). (*See* Dkt. 116 at 15:27-25:8).

4   Therefore, under Ninth Circuit law, Plaintiff abandoned all but the training theory.

5   *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("[P]laintiff has

6   'abandoned … claims by not raising them in opposition to [the defendant's] motion

7   for summary judgment." (second and third alterations in original) (citation

8   omitted)).

9       At the February 4, 2022 Final Pretrial Conference, the Court stated that it

10  agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not

11  opposing Defendants' summary judgment motion as to those *Monell* theories. [*See*

12  Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.] Plaintiff asked to

13  be allowed to file briefing on the issue, which the Court agreed to. [*Id.* At 7:11-8:4,

14  68:25-72:3, 75:5-76:18.] Plaintiff filed his opening brief on February 14, 2022.

15  [Dkt. 201.] Defendants filed their response brief on February 28, 2022. [Dkt. 202.]

16  And Plaintiff filed his reply brief on March 7, 2022. [Dkt. 203.] The Court has yet

17  to issue a formal ruling on the waiver/abandonment issue.

18      If the Court sticks to its tentative ruling, related to LASD's investigation and

19  discipline of its employees would be irrelevant and not admissible at trial.

20  Specifically, allowing Plaintiff to offer these exhibits would be confusing and

21  misleading. It would lead jurors to believe that certain *Monell* theories are still part

22  of this case despite Plaintiff having abandoned them. Defendants will be forced to

23  either ignore the irrelevant evidence and hope the jury understands the proper

24  parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing

25  witnesses and evidence to defend against abandoned claims.

26      Plaintiff now argues without any citation that this evidence is relevant to his

27  "failure to train" policy under *Monell*. Wrong. No case has held that a government

28  agency's failure to investigate or discipline is relevant to proving a "failure to train"

theory.  That is the reason Plaintiff does not cite any case law for this proposition.  In fact, prior to the Court stating that its practice is to bifurcate federal and state law claims at trial, Plaintiff had only argued that this evidence was relevant to proving his "custom or practice" theory under *Monell*.  Plaintiff changed his argument because he is trying desperately to introduce this improper evidence at trial.

Plaintiff argues that Exhibit 307 is relevant LASD's duty to preserve evidence.  Wrong.  Defendants did not have a duty to preserve evidence until Plaintiff Bryant submitted her tort claims on May 8, 2020 (LASD) and July 20, 2020 (LACFD).  *See Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2016 WL 9173457 (C.D. Cal. Sept. 8, 2016).  LASD issued its litigation hold on May 11, 2020, with follow-up notices in July 2020.  (Dkt. 151-56 ¶¶ 11-23.)  LACFD issued its litigation hold on March 3, 2020.  (Dkt. 151-63 ¶¶ 19-21.)  By the time Plaintiff filed his complaint litigation holds were in place.

Additionally, Exhibit 307 is also inadmissible because it reflects a subsequent remedial measures (i.e., discipline) taken by the Department.  Under Federal Rule of Evidence 407, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct."  Fed. R. Evid. 407

Exhibit 307 is the initiation of the Internal Affairs Investigation, which was undertaken as part of is LASD's effort to make sure the conduct complained of by Plaintiff does not happen again.  Courts have recognized that disciplinary proceedings are subsequent remedial measures in civil rights cases.  *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (in section 1983 case based on police use-of-force, Court properly excluded evidence from Internal Affairs investigation because "[t]he Internal Affairs investigation and measures taken by the defendant City were remedial measures taken after the incident").

As set forth above, *see supra* section I.A (Defendants' Response), Plaintiff's arguments that Defendants waived their subsequent remedial measures objections is without merit. Plaintiff tellingly does not cite any law or authority for this position, and that is because there is none.

## XIV.  **LASD Email Correspondence Regarding the Citizen Complaint.**

Four (4) of Plaintiff's exhibits to which Defendants object are internal Sheriff's Department emails dated January 29 and 30, 2020, related to the Department's initial handling of Ralph Mendez, Jr.'s citizen complaint.

❖ Plaintiff's Exhibit 53:  Email chain between J. Diez, H. Mancinas, M. Vander Horck, T. Schrader, R. Mendez, "SIB Media24" re FW: Contact US - LASD.org "Kobe" – Witnesses: Justin Diez, Hector Mancinas, Matthew Vander Horck, Marcus Phillips, Ralph Mendez

❖ Plaintiff's Exhibit 54:  Email chain between Diez, Mancinas, Vander Horck, Mendez, "SIB Media24" re FW: Contact US - LASD.org "Kobe" – Witnesses: Justin Diez, Hector Mancinas, Matthew Vander Horck, Marcus Phillips, Ralph Mendez

❖ Plaintiff's Exhibit 70:  Email of January 29, 2020 among Jorge Valdez, Matthew Vander Horck, and John Satterfield, titled "Re: Contact US - LASD.org 'Kobe'" (COLA007168) – Witnesses: Jorge Valdez, Matthew Vander Horck, John Satterfield

❖ Plaintiff's Exhibit 154:  Email dated January 29, 2020 Among Sheriff Villanueva, John Burcher, and Others, titled: "FW: Contact US - LASD.org 'Kobe'" (COLA007145-46) – Witnesses: Alex Villanueva, Ralph Mendez, Jr., Dennis Kneer, Matthew Vander Horck, Christopher Reed, Justin Diez, Hector Mancinas

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403).

**Plaintiff's Response to the Objections:**  The above email correspondence within LASD is relevant and not unfairly prejudicial because it demonstrates, among other things, that the Sheriff's Department's response to the citizen complaint began with a normal process of assigning the complaint to an operations lieutenant to conduct an initial inquiry into the allegation.  In emails Plaintiff will use to examine Lt. Justin Diez and Captain Matthew Vander Horck (Exhibits 53 & 54), Diez is assigned to handle the inquiry and reaches out to the citizen complainant.

Then Sheriff Villanueva and his press office, led by Captain Jorge Valdez, began to intervene, depart from standard protocol for internal investigations, and orchestrate a cover-up.  In emails Plaintiff expects to use in his examination of Sheriff Villanueva, Captain Jorge Valdez, and Captain Matthew Vander Horck (among others), Sheriff Villanueva and Captain Valdez become aware of the citizen complaint, and Valdez asks to receive updates from Vander Horck.

Defendants' repeated refrain that Plaintiff somehow "abandoned" such post-violation evidence fails for the reasons stated in Plaintiff's statement in section I.C. above and in his supplemental briefing regarding the *Monell* claim.  (Dkt. 281, 287.)  This evidence related to Defendants' post-violation conduct does not pertain to any separate or independent *Monell* theory but is probative of both of Plaintiff's *Monell* theories—the failure to train theory and the longstanding custom or practice theory.

**Defendants' Response:**  Exhibits 53, 54, 70, and 154 are not relevant to any of Plaintiff's claims in this case.  These Exhibits relate to LASD's investigation into the taking and sharing of crash scene photos.

Plaintiff has abandoned his "failure to adequately investigate and discipline" theory under *Monell*.  Plaintiff alleged three Monell theories in his Second Amended Complaint ("SAC"): (i) failure to train; (ii) failure to adequately investigate and discipline; and (iii) a failure to establish a policy or procedure addressing the treatment of human remains."  (SAC ¶ 32.)  Defendants moved for summary judgment on all three theories (*See* Dkt. 88-1 at 21:1-26:24.)  And Plaintiff did not

oppose Defendants' motion as to theories (ii) and (iii).  (*See* Dkt. 116 at 15:27-25:8).  Therefore, under Ninth Circuit law, Plaintiff abandoned all but the training theory.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)  ("[P]laintiff has 'abandoned … claims by not raising them in opposition to [the defendant's] motion for summary judgment." (second and third alterations in original) (citation omitted)).

At the February 4, 2022 Final Pretrial Conference, the Court stated that it agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See* Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff  asked to be allowed to file briefing on the issue, which the Court agreed to.  [*Id.* At 7:11-8:4, 68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.  [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]  And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet to issue a formal ruling on the waiver/abandonment issue.

If the Court sticks to its tentative ruling, documents related to LASD's investigation and discipline of its employees would be irrelevant and not admissible at trial.  Specifically, allowing Plaintiff to offer these exhibits would be confusing and misleading.  It would lead jurors to believe that certain *Monell* theories are still part of this case despite Plaintiff having abandoned them.  Defendants will be forced to either ignore the irrelevant evidence and hope the jury understands the proper parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing witnesses and evidence to defend against abandoned claims.

Plaintiff now argues without any citation that this evidence is relevant to his "failure to train" policy under *Monell*.  Wrong.  No case has held that a government agency's failure to investigate or discipline is relevant to proving a "failure to train" theory.  That is the reason Plaintiff does not cite any case law for this proposition.  In fact, prior to the Court stating that its practice is to bifurcate federal and state law

1  claims at trial, Plaintiff had only argued that this evidence was relevant to proving

2  his "custom or practice" theory under *Monell*.  Plaintiff changed his argument

3  because he is trying desperately to introduce this improper evidence at trial.

4  **XV.  <u>Sheriff's Department's Interactions with the Press.</u>**

5      Two (2) of Plaintiff's exhibits to which Defendants object involve

6  interactions between the Sheriff's Department and the media in response to the *Los*

7  *Angeles Times* report:

8  ❖ <u>Plaintiff's Exhibit 82:</u>  Email of March 3, 2020 Among Robert Boese, Jorge

9      Valdez, and Others, titled "DRAFT CALABASA White Sheet responses"

10      (COLA007500) – Jorge Valdez, John Satterfield, Alex Villanueva, Hector

11      Mancinas, Marcus Phillips

12  ❖ <u>Plaintiff's Exhibit 155:</u>  LASD Press Release re Crash Scene Photos, dated

13      February 28, 2020 – Alex Villanueva, Jorge Valdez, John Satterfield

14      **Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);

15  More prejudicial than probative (FRE 403).

16      **Plaintiff's Response to the Objections:**  The above exhibits involve

17  Sheriff's Department leadership making false and misleading statements to the press

18  regarding the photos and the Department's response to the citizen complaint.

19  Specifically, Exhibit 74 is LASD's press release in response to the *Los Angeles*

20  *Times* story, which states that Sheriff Villanueva was disturbed at the thought that

21  deputies could "allegedly" engage in such an insensitive act, despite the fact that the

22  Sheriff had known for more than a month that deputies had in fact engaged in

23  insensitive acts related to the victims' remains.  Similarly, Exhibit 82 is an email in

24  which LASD made false and misleading statements to a media outlet regarding

25  (i) whether LASD personnel shared photos of the accident scene; (ii) whether LASD

26  personnel deleted photos on their own or upon orders from supervisors; and

27  (iii) whether Sheriff Villanueva ordered deletion of the photos.

28

These false statements are relevant and not unfairly prejudicial because they bear on, among other things, LASD's culpable state of mind in destroying the forensic trail for the photos, LASD's attempts to cover up its misconduct, and LASD's awareness that its deputies' conduct and Sheriff Villanueva's deletion order were both improper.

Defendants' copy-and-pasted argument that this evidence is irrelevant because it pertains to an "abandoned" *Monell* theory fails for the reasons stated in Plaintiff's statement in section I.C. above.  Evidence regarding Defendants' post-violation conduct does not relate to any separate or independent *Monell* theory but is probative of both of Plaintiff's *Monell* theories—the failure to train theory and the longstanding custom or practice theory.  In any event, the relevance of this particular evidence sweeps even more broadly because it tends to show the Sheriff's Department's consciousness of wrongdoing.

**Defendants' Response:**  Exhibits 82 and 155 are not relevant to any of Plaintiff's claims in this case.  Exhibit 82 is an internal discussion at LASD about its proposed responses to press inquiries relating to LASD's internal investigation, while Exhibit 155 is a press release by LASD about the investigation.

Exhibits 82 and 155 are not relevant to any of Plaintiff's claims in this case.  Exhibit 82 is an internal discussion at LASD about its proposed responses to press inquiries relating to LASD's internal investigation, while Exhibit 155 is a press release by LASD about the investigation.

Plaintiff has abandoned his "failure to adequately investigate and discipline" theory under *Monell*.  Plaintiff alleged three Monell theories in his Second Amended Complaint ("SAC"): (i) failure to train; (ii) failure to adequately investigate and discipline; and (iii) a failure to establish a policy or procedure addressing the treatment of human remains."  (SAC ¶ 32.)  Defendants moved for summary judgment on all three theories (*See* Dkt. 88-1 at 21:1-26:24.)  And Plaintiff did not oppose Defendants' motion as to theories (ii) and (iii).  (*See* Dkt. 116 at 15:27-25:8.)

1    Therefore, under Ninth Circuit law, Plaintiff abandoned all but the training theory.

2    *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)  ("[P]laintiff has

3    'abandoned … claims by not raising them in opposition to [the defendant's] motion

4    for summary judgment." (second and third alterations in original) (citation

5    omitted)).

6         At the February 4, 2022 Final Pretrial Conference, the Court stated that it

7    agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not

8    opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See*

9    Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff  asked to

10   be allowed to file briefing on the issue, which the Court agreed to.  [*Id.* At 7:11-8:4,

11   68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.

12   [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]

13   And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet

14   to issue a formal ruling on the waiver/abandonment issue.

15        If the Court sticks to its tentative ruling, documents related to LASD's

16   investigation and discipline of its employees would be irrelevant and not admissible

17   at trial.  Specifically, allowing Plaintiff to offer these exhibits would be confusing

18   and misleading.  It would lead jurors to believe that certain *Monell* theories are still

19   part of this case despite Plaintiff having abandoned them.  Defendants will be forced

20   to either ignore the irrelevant evidence and hope the jury understands the proper

21   parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing

22   witnesses and evidence to defend against abandoned claims.

23        Plaintiff now argues without any citation that this evidence is relevant to his

24   "failure to train" policy under *Monell*.  Wrong.  No case has held that a government

25   agency's failure to investigate or discipline is relevant to proving a "failure to train"

26   theory.  That is the reason Plaintiff does not cite any case law for this proposition.

27   In fact, prior to the Court stating that its practice is to bifurcate federal and state law

28   claims at trial, Plaintiff had only argued that this evidence was relevant to proving

his "custom or practice" theory under *Monell*.  Plaintiff changed his argument because he is trying desperately to introduce this improper evidence at trial.

Defendants also addressed why LASD's statements to the press are not proper evidence at trial in their motion *in limine* no. 5 (*see* Bryant Dkt. 255 at 8-12), and in opposition to Plaintiff's motion *in limine* no. 5 (*see* Bryant Dkt. 240 at 17-21). Plaintiffs argument that Exhibits 82 and 155 contain "false statements" is wrong. The press release contained in Exhibit 155 states that LASD was investigating allegations that deputies "*shared* images from the January 26th, 2020 helicopter crash."  There is no evidence of public dissemination of crash site photos by the County.  Plaintiff has none.  So it was not false for the Sheriff to state that he was "deeply disturbed at the thought deputies could" publicly disseminate the photos. To this day, there is no evidence any deputies disseminated the photos. Additionally, Exhibit 82 does not contain any false statements, nor any statements made to the media, as it is an internal discussion document.

## XVI.  Email Between *LA Times* and Sheriff's Department.

One (1) of Plaintiff's exhibits to which Defendants object is an email exchange between a *Los Angeles Times* reporter and Sheriff Alex Villanueva and Captain Jorge Valdez regarding the photo allegations:

❖ Plaintiff's Exhibit 72:  Email of February 26, 2020 among Alene Tchekmedyian, Alex Villanueva, Jorge Valdez, and Others, titled: "Re: LA Times follow up re Lost Hills" (COLA007318) – Jorge Valdez, Alex Villanueva, John Satterfield, Dennis Kneer

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403).

**Plaintiff's Response to the Objections:**  Exhibit 72 is an email exchange between a *Los Angeles Times* reporter and LASD's executive leadership regarding the citizen complaint.  The exchange is relevant and not unfairly prejudicial because it shows, among other things, the timing of when LASD learned the public would

become aware of the citizen complaint, which in turn prompted the Department to issue performance log entries and initiate an internal affairs investigation. These events suggest that LASD's initial response to the complaint was more consistent with a cover-up than an earnest attempt to effectively secure the photos, and hence bears on LASD's state of mind when it destroyed evidence. Such evidence will be highly relevant to the jury's assessment of LASD's spoliation to the extent the Court does not issue a mandatory adverse inference instruction against LASD. Exhibit 72 also contains a misleading statement by LASD leadership in response to a press inquiry, which demonstrates consciousness of wrongdoing.

Defendants' copy-and-pasted argument that this evidence is irrelevant because it pertains to an "abandoned" *Monell* theory fails for the reasons stated in Plaintiff's statement in section I.C. above. Evidence regarding Defendants' post-violation conduct does not relate to any separate or independent *Monell* theory but is probative of both of Plaintiff's *Monell* theories—the failure to train theory and the longstanding custom or practice theory. In any event, the relevance of this particular evidence sweeps even more broadly because it bears on Defendants' spoliation and also tends to show the Sheriff's Department's consciousness of wrongdoing.

**Defendants' Response:** Exhibit 72 is not relevant to any of Plaintiff's claims in this case. It is an email exchange between LASD and an *Los Angeles Times* reporter relating to LASD's internal investigation.

Plaintiff has abandoned his "failure to adequately investigate and discipline" theory under *Monell*. Plaintiff alleged three Monell theories in his Second Amended Complaint ("SAC"): (i) failure to train; (ii) failure to adequately investigate and discipline; and (iii) a failure to establish a policy or procedure addressing the treatment of human remains." (SAC ¶ 32.) Defendants moved for summary judgment on all three theories (*See* Dkt. 88-1 at 21:1-26:24.) And Plaintiff did not oppose Defendants' motion as to theories (ii) and (iii). (*See* Dkt. 116 at 15:27-25:8).

1   Therefore, under Ninth Circuit law, Plaintiff abandoned all but the training theory.

2   *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)  ("[P]laintiff has

3   'abandoned … claims by not raising them in opposition to [the defendant's] motion

4   for summary judgment." (second and third alterations in original) (citation

5   omitted)).

6         At the February 4, 2022 Final Pretrial Conference, the Court stated that it

7   agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not

8   opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See*

9   Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff asked to

10  be allowed to file briefing on the issue, which the Court agreed to.  [*Id.* At 7:11-8:4,

11  68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.

12  [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]

13  And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet

14  to issue a formal ruling on the waiver/abandonment issue.

15        If the Court sticks to its tentative ruling, transcripts and audio recordings of

16  LASD's Internal Affairs Bureau interviews would be irrelevant and not admissible

17  at trial.  Specifically, allowing Plaintiff to offer these exhibits would be confusing

18  and misleading.  It would lead jurors to believe that certain *Monell* theories are still

19  part of this case despite Plaintiff having abandoned them.  Defendants will be forced

20  to either ignore the irrelevant evidence and hope the jury understands the proper

21  parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing

22  witnesses and evidence to defend against abandoned claims.

23        Plaintiff now argues without any citation that this evidence is relevant to his

24  "failure to train" policy under *Monell*.  Wrong.  No case has held that a government

25  agency's failure to investigate or discipline is relevant to proving a "failure to train"

26  theory.  That is the reason Plaintiff does not cite any case law for this proposition.

27  In fact, prior to the Court stating that its practice is to bifurcate federal and state law

28  claims at trial, Plaintiff had only argued that this evidence was relevant to proving

his "custom or practice" theory under *Monell*.  Plaintiff changed his argument because he is trying desperately to introduce this improper evidence at trial.

Defendants also addressed why LASD's statements to the press are not proper evidence at trial in their motion *in limine* no. 5 (*see* Bryant Dkt. 255 at 8-12), and in opposition to Plaintiff's motion *in limine* no. 5 (*see* Bryant Dkt. 240 at 17-21.).

Furthermore, Exhibit 72 has no bearing on "Defendants' state of mind for spoliation," as Defendants did not have a duty to preserve evidence until Plaintiff Bryant submitted her tort claims on May 8, 2020 (LASD) and July 20, 2020 (LACFD), well after the date of the email at issue in Exhibit 72.  *See Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2016 WL 9173457 (C.D. Cal. Sept. 8, 2016).

## XVII. Images Plaintiff Bryant Has Viewed Online.

Three (3) of Plaintiff's exhibits to which Defendants object relate to images Plaintiff Bryant has encountered online:

❖ Plaintiff's Exhibit 318:  Annotated Photo Posted on Social Media ("Both legs with knees in air") (VB00000049) – Witnesses: Vanessa Bryant, Emily Tauscher, Kristina, McGuire

❖ Plaintiff's Exhibit 319:  Photo of Wreckage and Pink Blanket (VB00000050) – Witnesses: Vanessa Bryant, Emily Tauscher, Kristina, McGuire

❖ Plaintiff's Exhibit 321:  Twitter Post with Photos of Accident Scene, dated January 29, 2020 (VB00000052) – Witnesses: Vanessa Bryant, Emily Tauscher, Kristina, McGuire

**Defendants' Grounds for Objection:**  Hearsay (FRE 801, 802); Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403); Authentication (FRE 901).

**Plaintiff's Response to the Objections:**  These exhibits, which are photos of the crash scene that Plaintiff Bryant has encountered online (some with annotations

1   indicating where her husband's remains can be seen in the photos), are the subject of

2   Defendants' unopposed motion *in limine* #1 (Dkt. 164).

3       **Defendants' Response:**  Exhibits 318, 319, and 321 are not relevant to any of

4   the claims or issues in this case and should be excluded, as set forth in Defendants'

5   unopposed motion *in limine* no. 1.  (*See* Dkt. 164.).

6       Plaintiff is pursuing a *Monell* claim against the County for violation of his

7   constitutional right to control "public dissemination of a family member's death

8   images."  *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012).

9   Plaintiff has no evidence of public dissemination.  He has never seen any crash site

10  photos taken by LASD or LACFD.  He is not aware of any LASD or LACFD

11  photos being posted online or published in the media.  His case is based almost

12  entirely on intra-departmental sharing of crash site photos among LASD and

13  LACFD personnel.  *Marsh* is not about internal sharing—it requires a showing of

14  dissemination to the public.

15      With this critical element missing, Plaintiff appears to be planning to rely on

16  messages Plaintiff Bryant received from strangers, random social media posts,

17  photoshopped images, and hearsay stories like the one about a "man with dark hair"

18  who claimed to have seen photos on an unnamed law enforcement officer's phone.

19  None of this has anything to do with the County.  None of these photos or social

20  media posts came from the County.  None of the stories involve anyone from the

21  County.

22      Plaintiff admits he has no evidence that any of these documents or witnesses

23  can be traced to the County.  Plaintiff instead will ask the jury to "infer" that these

24  things are attributed to the County.  That would contravene the Rules of Evidence

25  and is not how it works in court.

26      This speculative evidence should be excluded at trial.  It is lacking in

27  foundation, cannot be authenticated and is hearsay.  Its probative value is

28  substantially outweighed by the risk of undue prejudice and misleading the jury.

1   Plaintiff argues these messages and photos are relevant to Plaintiff Bryant's

2   emotional distress.  That is not relevant and wrong.  Third parties' conduct in

3   causing Plaintiff Bryant emotional distress is not what is at issue in this case.

4   Defendants cannot be held responsible for celebrity-obsessed Internet bullies.

5   Especially since Plaintiff Bryant started receiving these messages weeks before

6   there was any reporting that LASD and LACFD personnel took crash site photos.

7          Evidence relating to photos that did not originate with the County is not

8   probative of anything.  It will only confuse and mislead the jury into "inferring" that

9   photos were taken and disseminated by County personnel simply because other

10  images showed up on the Internet or because someone at a bar bragged about having

11  "insider information."  This would be highly prejudicial.  Gruesome (and

12  photoshopped) images that did not originate from the County, cannot be

13  authenticated, and are accompanied by unreliable hearsay statements will create a

14  sideshow that has no bearing on whether Defendants violated any of Plaintiff's

15  rights.  This is precisely what Rule 403 is intended to prevent.

16            Showing the jury images that do not actually depict the victims will

17  only inflame their emotions and add shock value to this case.  Because these posts

18  and messages are anonymous, Defendants would also be deprived of any

19  opportunity to cross-examine the authors about their statements and photos.  The

20  danger of undue prejudice far outweighs any probative value.

21  **XVIII.      <u>Video and Audio Recordings of Sheriff Villanueva.</u>**

22          Nine (9) of Plaintiff's exhibits to which Defendants object are video or audio

23  recordings of statements made by Sheriff Alex Villanueva (and also, in one instance,

24  Captain Jorge Valdez) to members of the media:

25  ❖ <u>Plaintiff's Exhibit 300:</u>  Villanueva Press Briefing - COLA001200 – Alex

26      Villanueva, Jorge Valdez, William Jaeger, Rafael Mejia, Michael Russell,

27      Joey Cruz, Raul Versales, Other LASD Witnesses

28

1  ❖ <u>Plaintiff's Exhibit 301:</u> Villanueva CBS 2 Interview - VB00003620 – Alex

2     Villanueva, Jorge Valdez, William Jaeger, Rafael Mejia, Michael Russell,

3     Joey Cruz, Raul Versales, Other LASD Witnesses

4  ❖ <u>Plaintiff's Exhibit 302:</u> Villanueva Fox 11 Interview - VB00003622 – Alex

5     Villanueva, Jorge Valdez, William Jaeger, Rafael Mejia, Michael Russell,

6     Joey Cruz, Raul Versales, Other LASD Witnesses

7  ❖ <u>Plaintiff's Exhibit 303:</u> Villanueva ABC 7 Interiew - COLA001182 – Alex

8     Villanueva, Jorge Valdez, William Jaeger, Rafael Mejia, Michael Russell,

9     Joey Cruz, Raul Versales, Other LASD Witnesses

10  ❖ <u>Plaintiff's Exhibit 304:</u> Villanueva KNX1070 Interview - COLA006932 –

11     Alex Villanueva, Jorge Valdez, William Jaeger, Rafael Mejia, Michael

12     Russell, Joey Cruz, Raul Versales, Other LASD Witnesses

13  ❖ <u>Plaintiff's Exhibit 305:</u> Villanueva NBC Interview - COLA030878 – Alex

14     Villanueva, Jorge Valdez, William Jaeger, Rafael Mejia, Michael Russell,

15     Joey Cruz, Raul Versales, Other LASD Witnesses

16  ❖ <u>Plaintiff's Exhibit 306:</u> Villanueva & Other LASD Statements to LA Times

17     Audio Recording - https://www.latimes.com/california/story/2021-12-

18     21/vanessa-bryant-kobe-bryant-death-photos-lawsuit-la-county-sheriff – Alex

19     Villanueva, Jorge Valdez, John Satterfield

20  ❖ <u>Plaintiff's Exhibit 470:</u> LA Times recording of Villanueva and Valdez (audio

21     only) (VB00004208) – Alex Villanueva, Jorge Valdez, John Satterfield

22  ❖ <u>Plaintiff's Exhibit 471:</u> LA Times recording of Villanueva and Valdez (with

23     subtitles) (VB00004209) – Alex Villanueva, Jorge Valdez, John Satterfield

24  **Defendants' Grounds for Objection:** Irrelevant (FRE 104(b), 401, 402);

25 More prejudicial than probative (FRE 403).

26  **Plaintiff's Response to the Objections:** <u>Plaintiff's motion *in limine* #5</u> to

27 admit recordings and letters (Dkt. 240) specifically seeks to admit these recordings

28 of Sheriff Alex Villanueva talking about the photos at issue in this case, and the

1  motion explains why the recordings are relevant, authentic, and otherwise

2  admissible.

3      **Defendants' Response:**  Exhibits 300-306 and 470-471 are not relevant and

4  should not come in for the reasons set forth in Defendants' opposition to Plaintiff's

5  motion *in limine* no. 5.  (*See* Dkt. 162 at 17-24.)

6      This case is about whether Defendants violated Plaintiff's constitutional rights

7  by publicly disseminating crash site photos depicting Plaintiff's relatives.  Plaintiff

8  has no evidence of public dissemination by the County, so he is trying to do

9  everything he can to confuse and mislead the jury.

10     Exhibit 300-306 and 470-471 are not relevant because they relate to LASD's

11  internal investigation.  Plaintiff abandoned his "failure to investigate and discipline"

12  theory under *Monell*.  (*See* Dkt. 169-1 at 20:19-26:21; Dkt. 190 at 18:5-20:9.)  *See*

13  *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("[P]laintiff has 'abandoned …

14  claims by not raising them in opposition to [the defendant's] motion for summary

15  judgment.'" (second and third alterations in original) (citation omitted)).

16     These Exhibits should also be excluded because any minimal probative value

17  is substantially outweighed by the risk of undue prejudice, confusing the issues, and

18  misleading the jury, and will necessitate undue consumption of limited trial time.

19  Fed. R. Evid. 403; *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where

20  the evidence is of very slight (if any) probative value, it's an abuse of discretion to

21  admit it if there's even a modest likelihood of unfair prejudice or a small risk of

22  misleading the jury."); *Old Chief v. United States*, 519 U.S. 172, 180–92 (1997).

23  The Sheriff's statements are being taken of out context and without the opportunity

24  for explanation.  The Sheriff was deposed about his statements and explained them.

25  Plaintiff should not be permitted to use these Exhibits without first questioning the

26  Sheriff about his statements.  If his testimony is inconsistent with his prior

27  statements, Plaintiff can impeach him using Exhibits 300-306 and 470-471.

28

Introduction of this evidence would also be a complete sideshow.  Plaintiff
wants to make this case about the Sheriff's communications with the press, but those
relationships are fraught with all sorts of issues and complexities.  Explaining why
the Sheriff (and others at LASD) may be guarded in his responses to the press would
require Defendants to introduce evidence and testimony to explain this complex, and
at times adversarial relationship.  This would waste time on issues that have nothing
to do with whether Defendants violated Plaintiff's constitutional rights.  It would
also confuse and mislead the jury into thinking they need to decide the propriety of
LASD's statements to the press.  This is what Rule 403 is intended to prevent.

Exhibit 300-306 and 470-471 are also inadmissible under Federal Rule of
Evidence 608.  Rule 608 states: "Except for a criminal conviction under Rule 609,
extrinsic evidence is not admissible to prove specific instances of a witness's
conduct in order to attack or support the witness's character for truthfulness."  Fed.
R. Evid. 608(b).  The recordings are "extrinsic evidence," and Plaintiff is trying to
use them to prove the Sheriff lied on a specific occasion to attack his "character for
truthfulness."  Plaintiff also cannot authenticate Exhibits 470-471 at trial.

## XIX.  Social Media Posts Plaintiff Bryant Has Encountered Online.

Five (5) of Plaintiff's exhibits to which Defendants object are social media
posts that Plaintiff Bryant has encountered online:

- ❖ Plaintiff's Exhibit 322:  Instagram Comments Viewed by Plaintiff
  (VB00000071) – Vanessa Bryant
- ❖ Plaintiff's Exhibit 323: Twitter Post & Profile of "baby boo," dated January
  31, 2020 (VB00000096-97) – Vanessa Bryant
- ❖ Plaintiff's Exhibit 324: Twitter Post & Profile of
  "AmericanAnswers.org/Facebook," dated February 7, 2020 (VB00000098-
  99) – Vanessa Bryant
- ❖ Plaintiff's Exhibit 325:  Twitter Post & Profile of "DRYX," dated March 24,
  2020 (VB00000100-01) – Vanessa Bryant

❖ <u>Plaintiff's Exhibit 326:</u>  Twitter Post & Profile of "Princess Young," dated May 20, 2020 (VB00000102-03) – Vanessa Bryant

**Defendants' Grounds for Objection:**  Hearsay (FRE 801, 802); Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403); Authentication (FRE 901).

**Plaintiff's Response to the Objections:**  The above exhibits are examples of social media posts Plaintiff Bryant has encountered online in which individuals say they have seen photos of Kobe Bryant's remains on the internet.  Plaintiff Bryant will be able to authenticate these exhibits as posts that she has encountered online, and the posts are relevant to Plaintiff Bryant's distress at the thought of strangers gawking at photos of her deceased husband and child.  The posts are not offered for the truth of the matter asserted in the posts themselves, but rather for their effect on the listener—*i.e.*, Plaintiff Bryant's emotional distress from seeing people report that they have viewed photos of her loved ones' remains online.  The posts are distressing due to the Plaintiff's knowledge of the irresponsible conduct of LASD and Fire Department personnel and awareness that, on account of that conduct, photos of the victims' remains are uncontrolled, making the posts on social media more plausible and disturbing.

**Defendants' Response:**  Exhibits 322-326 are not relevant to any of the claims or issues in this case and should be excluded, as set forth in Defendants' unopposed motion *in limine* no. 1.  (*See* Dkt. 164.).  These exhibits are social media posts seen by Plaintiff Bryant, and not Plaintiff Chester.  These are not relevant to Plaintiff Chester's emotional distress or any of his claims at trial.

Plaintiff is pursuing a *Monell* claim against the County for violation of his constitutional right to control "public dissemination of a family member's death images."  *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012).  Plaintiff has no evidence of public dissemination.  He has never seen any crash site photos taken by LASD or LACFD.  He is not aware of any LASD or LACFD

1   photos being posted online or published in the media.  His case is based almost

2   entirely on intra-departmental sharing of crash site photos among LASD and

3   LACFD personnel.  *Marsh* is not about internal sharing—it requires a showing of

4   dissemination to the public.

5           With this critical element missing, Plaintiff appears to be planning to rely on

6   messages Plaintiff Bryant received from strangers, random social media posts,

7   photoshopped images, and hearsay stories like the one about a "man with dark hair"

8   who claimed to have seen photos on an unnamed law enforcement officer's phone.

9   None of this has anything to do with the County.  None of these photos or social

10  media posts came from the County.  None of the stories involve anyone from the

11  County.

12          Plaintiff admits he has no evidence that any of these documents or witnesses

13  can be traced to the County.  Plaintiff instead will ask the jury to "infer" that these

14  things are attributed to the County.  That would contravene the Rules of Evidence

15  and is not how it works in court.

16          This speculative evidence should be excluded at trial.  It is lacking in

17  foundation, cannot be authenticated and is hearsay.  Its probative value is

18  substantially outweighed by the risk of undue prejudice and misleading the jury.

19  Plaintiff argues these messages and photos are relevant to Plaintiff Bryant's

20  emotional distress.  That is not relevant and wrong.  Third parties' conduct in

21  causing Plaintiff Bryant emotional distress is not what is at issue in this case.

22  Defendants cannot be held responsible for celebrity-obsessed Internet bullies.

23  Especially since Plaintiff Bryant started receiving these messages weeks before

24  there was any reporting that LASD and LACFD personnel took crash site photos.

25          Evidence relating to photos that did not originate with the County is not

26  probative of anything.  It will only confuse and mislead the jury into "inferring" that

27  photos were taken and disseminated by County personnel simply because other

28  images showed up on the Internet or because someone at a bar bragged about having

"insider information."  This would be highly prejudicial.  Gruesome (and photoshopped) images that did not originate from the County, cannot be authenticated, and are accompanied by unreliable hearsay statements will create a sideshow that has no bearing on whether Defendants violated any of Plaintiff's rights.  This is precisely what Rule 403 is intended to prevent.

Showing the jury images that do not actually depict the victims will only inflame their emotions and add shock value to this case.  Because these posts and messages are anonymous, Defendants would also be deprived of any opportunity to cross-examine the authors about their statements and photos.  The danger of undue prejudice far outweighs any probative value.

## XX.   Taunts Directed at Plaintiff Bryant Online.

Two (2) of Plaintiff's exhibits to which Defendants object are screenshots of taunts Plaintiff Bryant has received online:

❖ Plaintiff's Exhibit 317:  Instagram Message to Plaintiff from bhbb7231: "Ima leak Kobe's body" (VB00000048) – Vanessa Bryant

❖ Plaintiff's Exhibit 320:  Taunting Message to Mrs. Bryant on Social Media (VB00000051) – Vanessa Bryant

**Defendants' Grounds for Objection:**  Hearsay (FRE 801, 802); Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403); Authentication (FRE 901).

**Plaintiff's Response to the Objections:**  These exhibits are the subject of Defendants' unopposed motion *in limine* #1 (Dkt. 164).

**Defendants' Response:**  Exhibits 317 and 320 are not relevant to any of the claims or issues in this case and should be excluded, as set forth in Defendants' unopposed motion *in limine* no. 1.  (*See* Dkt. 164.)  These exhibits are social media posts seen by Plaintiff Bryant, and not Plaintiff Chester.  These are not relevant to Plaintiff Chester's emotional distress or any of his claims at trial.

Plaintiff is pursuing a *Monell* claim against the County for violation of his constitutional right to control "public dissemination of a family member's death images." *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012). Plaintiff has no evidence of public dissemination. He has never seen any crash site photos taken by LASD or LACFD. He is not aware of any LASD or LACFD photos being posted online or published in the media. His case is based almost entirely on intra-departmental sharing of crash site photos among LASD and LACFD personnel. *Marsh* is not about internal sharing—it requires a showing of dissemination to the public.

With this critical element missing, Plaintiff appears to be planning to rely on messages Plaintiff Bryant received from strangers, random social media posts, photoshopped images, and hearsay stories like the one about a "man with dark hair" who claimed to have seen photos on an unnamed law enforcement officer's phone. None of this has anything to do with the County. None of these photos or social media posts came from the County. None of the stories involve anyone from the County.

Plaintiff admits he has no evidence that any of these documents or witnesses can be traced to the County. Plaintiff instead will ask the jury to "infer" that these things are attributed to the County. That would contravene the Rules of Evidence and is not how it works in court.

This speculative evidence should be excluded at trial. It is lacking in foundation, cannot be authenticated and is hearsay. Its probative value is substantially outweighed by the risk of undue prejudice and misleading the jury. Plaintiff argues these messages and photos are relevant to Plaintiff Bryant's emotional distress. That is not relevant and wrong. Third parties' conduct in causing Plaintiff Bryant emotional distress is not what is at issue in this case. Defendants cannot be held responsible for celebrity-obsessed Internet bullies.

1   Especially since Plaintiff Bryant started receiving these messages weeks before

2   there was any reporting that LASD and LACFD personnel took crash site photos.

3        Evidence relating to photos that did not originate with the County is not

4   probative of anything.  It will only confuse and mislead the jury into "inferring" that

5   photos were taken and disseminated by County personnel simply because other

6   images showed up on the Internet or because someone at a bar bragged about having

7   "insider information."  This would be highly prejudicial.  Gruesome (and

8   photoshopped) images that did not originate from the County, cannot be

9   authenticated, and are accompanied by unreliable hearsay statements will create a

10  sideshow that has no bearing on whether Defendants violated any of Plaintiff's

11  rights.  This is precisely what Rule 403 is intended to prevent.

12       Showing the jury images that do not actually depict the victims will only

13  inflame their emotions and add shock value to this case.  Because these posts and

14  messages are anonymous, Defendants would also be deprived of any opportunity to

15  cross-examine the authors about their statements and photos.  The danger of undue

16  prejudice far outweighs any probative value.

17  **XXI.  <u>Plaintiff Bryant's Screenshot of a Search Engine.</u>**

18       One (1) of Plaintiff's exhibits to which Defendants object is a screenshot Mrs.

19  Bryant has taken while using a search engine:

20  ❖ <u>Plaintiff's Exhibit 329:</u>  Search Auto-Populating "Kobe Bryant crash pictures"

21     (VB00004197) – Vanessa Bryant

22       **Defendants' Grounds for Objection:**  Hearsay (FRE 801, 802); Irrelevant

23  (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403); Authentication

24  (FRE 901).

25       **Plaintiff's Response to the Objections:**  Exhibit 329 is a screenshot of what

26  Plaintiff Vanessa Bryant has seen when Googling "Kobe Bryant"—the term "Kobe

27  Bryan crash pictures" automatically populates.  Plaintiff Bryant can authenticate the

28  screenshot as one that she herself took from her phone of something she experienced

online.  The exhibit does not contain hearsay because there is no "truth" displayed in the auto-populating of the search field.  Rather, the exhibit is offered to demonstrate the painful reminder of Defendants' conduct that Plaintiff Bryant experiences whenever she Googles her husband's name.  The exhibit is relevant to Plaintiff Bryant's emotional distress, as Defendants' conduct has caused "crash pictures" to be associated with Kobe Bryant's name and for the subject to be highly distressing to Plaintiff when she encounters the term.

**Defendants' Response:**  Exhibit 329 is not relevant to any of the claims or issues in this case and should be excluded.  This is a claimed Google search run by Plaintiff Bryant, not Plaintiff Chester.  It is not relevant to Plaintiff Chester's emotional distress or any of his claims at trial.

Exhibit 329 is also plainly hearsay not subject to an exception.  While Plaintiff says he is not offering it for the truth of the matter, that is false.  He wants the jury to see that when Plaintiff Bryant allegedly Googles "kobe," that "kobe bryant crash pictures" auto-populates.  That is for the truth of the matter.  And there is no exception.

There is also the issue of authentication.  Plaintiff Bryant now claims that this is a screenshot she took of a search she ran on her cellphone.  Defendants do not think that is true.  Plaintiff Bryant did not make that claim when she first submitted this exhibit with her declaration in opposition to Defendants' summary judgment motion.  (*See* Bryant Dkt. 190 -6.)  It also would surprise Defendants if it were true since the Google auto-populate function runs on an algorithm based on prior searches.  Which would mean that Plaintiff Bryant must have Googled "kobe bryant crash photos" herself.  Defendants are also not responsible for what Google results come back when Plaintiff Bryant runs a search on her phone.

Exhibit 329 should also be excluded because it would necessitate an undue consumption of limited trial time.  If Plaintiff is permitted to introduce Exhibit 329, Defendants will be forced to introduce witnesses and evidence to show Plaintiff

Bryant's claims are false.  For example, when Defendants' counsel ran the same search, his device did not return the auto-suggest topics Plaintiff Bryant says she got.  Instead, the search returned Kobe Steak House & Lounge in Seal Beach, and auto-suggested "kobe," "kobe bryant," "kobe shoes," and "kobe bryant net worth." (*See* Dkt. 207 ¶ 3 & Ex. 232.)  This would be a complete sideshow and unnecessary.

## XXII. <u>Letters & Memoranda Regarding LASD's Findings in Investigations of the Deputy Defendants, Sgt. Kelly, and Deputy Johnson</u>

Six (6) of Plaintiff's exhibits to which Defendants object are notices and letters relating to LASD's investigation and discipline of its personnel:

- ❖ <u>Plaintiff's Exhibit 63:</u>  LASD Notice of Completion of Investigation of Michael Russell, dated August 5, 2020 (COLA035253-61) – Michael Russell, Hector Mancinas, William Jaeger, Christopher Reed, Dennis Kneer

- ❖ <u>Plaintiff's Exhibit 108:</u>  LASD Letter to Rafael Mejia re Notice of Completion of Investigation, dated August 5, 2020 (COLA035244) – Rafael Mejia

- ❖ <u>Plaintiff's Exhibit 112:</u>  LASD Letter to Raul Versales re Notice of Completion of Investigation, dated August 5, 2020 (COLA035262-69) – Raul Versales, Hector Mancinas, Christopher Reed, William Jaeger, Dennis Kneer

- ❖ <u>Plaintiff's Exhibit 124:</u>  Memo from Salvador Becerra to William Jaeger dated July 24, 2020 (COLA035214-19) – Joey Cruz, William Jaeger, Christopher Reed, Dennis Kneer

- ❖ <u>Plaintiff's Exhibit 147:</u>  LASD Letter to Travis Kelly dated August 8, 2020, titled: "Notification Letter" (COLA035225-32) – Travis Kelly

- ❖ <u>Plaintiff's Exhibit 439:</u>  LASD Letter to Doug Johnson dated August 8, 2020, titled: "NOTIFICATION LETTER" (COLA035220-24) – Doug Johnson, Alex Villanueva, William Jaeger, Christopher Reed, Dennis Kneer

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403); With respect to Exhibit 124, Subsequent remedial measures (FRE 407).

**Plaintiff's Response to the Objections:**  The above exhibits are letters and/or memoranda in which LASD leadership summarize the Department's findings regarding (i) the conduct of Deputy Joey Cruz, Deputy Michael Russell, Deputy Rafael Mejia, Deputy Raul Versales, Deputy Doug Johnson, and Sgt. Travis Kelly with respect to taking, obtaining, and/or sharing photos of the victims' remains; and (ii) the Department's decision to impose no discipline on any of the personnel, with the exception of Cruz, who received a short suspension.  Regarding the latter point, the exhibits are relevant and not unfairly prejudicial because LASD's decision not to discipline its personnel bears on its liability under *Monell* because "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry."  *Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997); *id.* at 519-20 ("a municipal defendant's failure to fire or reprimand officers evidences a policy of deliberate indifference to their misconduct"); *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018) (LASD's "failure to take any remedial action" post-incident allows jury "to infer that LASD had adopted a custom or practice of condoning [misconduct]"); *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (A "turn a-blind-eye approach," including "failure to investigate" and "lack of reprimand or discipline for the officers involved even when their supervisors were aware of the complaints" supported conclusion that "a policy or custom [] led to violation" of constitutional rights).

The letters and memoranda are also relevant and not unfairly prejudicial because they contain admissions by LASD regarding their employees' conduct. Specifically, the Department concluded (among other things) that (i) Deputy Michael Russell had no reason to obtain the photos himself, then transmitted them to

a video game buddy while off-duty without any legitimate purpose; (ii) Deputy Rafael Mejia transmitted photos of the victims' remains to two trainee deputies, Joey Cruz and Ruby Cable; (iii) Deputy Raul Versales transmitted photos of the victims' remains to Travis Kelly, Chris Jauregui, Scott Miller, and Rafael Mejia; (iv) Deputy Joey Cruz displayed photos of the victims' remains to his niece and a bartender; (v) Sgt. Travis Kelly transmitted photos of the victims' remains to Sgt. Stephanie Shrout; and (vi) Deputy Doug Johnson took photos of the victims' remains and texted them to Raul Versales.

Defendants' repeated refrain that Plaintiff somehow "abandoned" such post-violation evidence fails for the reasons stated in Plaintiff's statement in section I.C. above and in his supplemental briefing regarding the *Monell* claim.  (Dkt. 281, 287.)

Defendants' objection the Department's letter to Cruz (Ex. 124) is a subsequent remedial measure is entirely new (*see* Lavoie Decl., Ex. A), and thus waived and void for the reasons stated above, *see supra* section I.A.  Even if the discipline assigned to Cruz were considered a subsequent remedial measure, the Department's factual *findings* regarding Cruz's conduct were not.  This could counsel in favor of redacting the letter, not excluding it entirely.

**Defendants' Response:**  Exhibits 63, 108, 112, 124, 147, and 439 are not relevant to any of Plaintiff's claims in this case.  These letters and memorandums relate to LASD's investigation into the taking and sharing of crash scene photos.

Plaintiff has abandoned his "failure to adequately investigate and discipline" theory under *Monell*.  Plaintiff alleged three Monell theories in his Second Amended Complaint ("SAC"): (i) failure to train; (ii) failure to adequately investigate and discipline; and (iii) a failure to establish a policy or procedure addressing the treatment of human remains."  (SAC ¶ 32.)  Defendants moved for summary judgment on all three theories (*See* Dkt. 88-1 at 21:1-26:24.)  And Plaintiff did not oppose Defendants' motion as to theories (ii) and (iii).  (*See* Dkt. 116 at 15:27-25:8.)  Therefore, under Ninth Circuit law, Plaintiff abandoned all but the training theory.

1   *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)  ("[P]laintiff has

2   'abandoned … claims by not raising them in opposition to [the defendant's] motion

3   for summary judgment." (second and third alterations in original) (citation

4   omitted)).

5        At the February 4, 2022 Final Pretrial Conference, the Court stated that it

6   agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not

7   opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See*

8   Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff  asked to

9   be allowed to file briefing on the issue, which the Court agreed to.  [*Id.* At 7:11-8:4,

10  68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.

11  [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]

12  And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet

13  to issue a formal ruling on the waiver/abandonment issue.

14       If the Court sticks to its tentative ruling, documents related to LASD's

15  investigation and discipline of its employees would be irrelevant and not admissible

16  at trial.  Specifically, allowing Plaintiff to offer these exhibits would be confusing

17  and misleading.  It would lead jurors to believe that certain *Monell* theories are still

18  part of this case despite Plaintiff having abandoned them.  Defendants will be forced

19  to either ignore the irrelevant evidence and hope the jury understands the proper

20  parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing

21  witnesses and evidence to defend against abandoned claims.

22       Having acknowledged that he has abandoned his *Monell* claim based on a

23  failure to investigate/discipline, Plaintiff now attempts to recast his own pleadings in

24  an effort to keep this issue alive.  Plaintiff now claims that "failure to

25  investigate/discipline" is not an independent basis for *Monell* liability but, rather, is

26  evidence of a custom and practice of taking and sharing death photos and/or

27  evidence of the agency's deliberate indifference to violations it failed to stop

28  through training or implementation of policies.  Plaintiff wants to admit these

memorandums and letters to suggest that the County failed to adequately investigate or discipline its employees.  This situation—the death of a world-wide celebrity and others in a horrific helicopter crash—is unprecedented within LASD.  Because there is no corollary to this incident, it makes no sense to say that how the County investigated or disciplined personnel in this situation proves the existence of a custom or practice.  Nor does it make sense to say that the County was "deliberately indifferent" to a need to train or develop policies for something that could not be foreseen and had never happened before.

Plaintiff now argues without any citation that this evidence is relevant to his "failure to train" policy under *Monell*.  Wrong.  No case has held that a government agency's failure to investigate or discipline is relevant to proving a "failure to train" theory.  That is the reason Plaintiff does not cite any case law for this proposition.  In fact, prior to the Court stating that its practice is to bifurcate federal and state law claims at trial, Plaintiff had only argued that this evidence was relevant to proving his "custom or practice" theory under *Monell*.  Plaintiff changed his argument because he is trying desperately to introduce this improper evidence at trial.

Additionally, Plaintiff contends that these Exhibits are relevant because they illustrate the absence of discipline against employees who took and shared the photos at issue.  Plaintiff contends that this "post-event" evidence can demonstrate a policy or custom to support *Monell* liability.  But each of the cases that Plaintiff cites for this argument are easily distinguishable and not relevant here.  In each of those cases, there was significant evidence that the defendants were already aware of numerous other complaints or incidents that were *not the subject of the current lawsuit* which the defendants had failed to address.  That is not the case here.

In *Henry v. Cnty. of Shasta*, 132 F.3d 512 (9th Cir. 1997), the plaintiff was stopped by highway patrol officers for a broken tail light and when he refused to sign the ticket and lawfully demanded an appearance before a magistrate, he was ignored and placed naked in a "safety cell" covered in dry urine for almost 10

1  hours.  *Id*. at 516-17.  He was repeatedly denied basic rights.  Plaintiff sued the

2  municipal defendant for liability under Section 1983.  *Id*. at 517.  In opposing the

3  municipal defendant's motion for summary judgment, the plaintiff submitted

4  declarations by two others who were arrested after the plaintiff which described how

5  they were subjected to virtually identical treatment after they were stopped for

6  minor traffic violations.  *Id*. at 518.  The court found that these declarations were

7  probative to prove the existence of the municipal defendant's policy or custom.  *Id*.

8  at 519.  Notably, Judge Rymer issued a dissent disagreeing that the declarations

9  were sufficient here to establish a policy or custom without evidence that the

10 municipal *knew* about plaintiff's incident and had "any custom or policy

11 sanctioning, encouraging, or permitting the objection treatment."  *Id*. at 524. This is

12 because liability for an improper custom cannot be "predicted on isolated or

13 sporadic incidents."  *Id*. (citation and quotations omitted).

14      In *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776 (9th Cir. 2018), inmates

15 filed a section 1984 claim against the County of contending that they were subject to

16 cruel and unusual punishment during "cell extractions" during which they were

17 excessively beaten and otherwise subject to excessive force with tasers, concussion

18 grenades, block guns, and other weapons.  *Id*. at 786-87. The court of appeal

19 affirmed a verdict against the County under *Monell* because there was substantive

20 evidence that showed a "custom of ignoring or condoning excessive force" which

21 "perpetuated a culture where excessive force was encouraged."  This evidence was

22 not just limited to the fact that supervisory staff had observed the practices and had

23 done nothing, but also a report of the Men's Central Jail detailing how senior jail

24 officials failed to investigate 100 use-of-force allegations, testimonial evidence, and

25 the fact that the sheriff's department had not used their "force-tracking system to

26 monitor force against many prisoners."  *Id*. at 789-80, 803.

27      Similarly, in *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), the

28 magistrate judge found that the Idaho Department of corrections violated inmates'

constitutional rights for "repeated instances" of retaliation against inmates who filed lawsuits or otherwise availed themselves of grievance procedures against the city. *Id*. at 1123-25.  There were numerous complaints of retaliation that the top administrators failed to investigate or correct.  *Id*. at 1127.  Thus the court found that this supported a finding that there was a policy or custom that led to the violation of inmates' rights.  *Id*.

The facts of this case come nowhere close to those in the cases Plaintiff cites.  There has never before been a complaint about a LASD or LACFD employee sharing photos of victim remains.  And there was no public dissemination of the photos here. This was an isolated, sporadic incident that occurred during the investigation of an unprecedented fatal helicopter crash.  Without more evidence, Exhibits 63, 108, 112, 124, 147, and 439 have little value and would be highly prejudicial.

Lastly, Exhibit 124 is also inadmissible because it reflects subsequent remedial measures (i.e., discipline) taken by the Department.  Under Federal Rule of Evidence 407, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct."  Fed. R. Evid. 407.

Exhibit 124 reflects steps taken by LASD to make sure the conduct complained of by Plaintiff does not happen again.  Courts have recognized that disciplinary proceedings are subsequent remedial measures in civil rights cases. *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (in section 1983 case based on police use-of-force, Court properly excluded evidence from Internal Affairs investigation because "[t]he Internal Affairs investigation and measures taken by the defendant City were remedial measures taken after the incident").

As set forth above, *see supra* section I.A (Defendants' Response), Plaintiff's arguments that Defendants waived their subsequent remedial measures objections is

without merit.  Plaintiff tellingly does not cite any law or authority for this position, and that is because there is none.

For these reasons, Exhibits 63, 108, 112, 124, 147, and 439 have no bearing on any of Plaintiff's claims in this case and should be excluded.

**XXIII.** **Order by Judge Charles Eick Regarding Brian Jordan Cell Records.**

One (1) of Plaintiff's exhibits to which Defendants object is Judge Charles Eick's order compelling the producing of former Fire Captain Brian Jordan's cell phone records:

❖ <u>Plaintiff's Exhibit 419:</u>  Order of MJ Eick Compelling Production of Brian Jordan Personal Cell Records, signed October 25, 2021 (Bates VB00004132-VB00004133) – Brian Jordan

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403).

**Plaintiff's Response to the Objections:**  Exhibit 419 is an order compelling production of Brian Jordan's personal cell phone records in this litigation, which is relevant to show that Jordan vehemently resisted examination of text messaging activity on his personal cell phone.  This evinces consciousness of guilt.  As mentioned above, Jordan's cell phone records (once obtained) provide strong circumstantial evidence of dissemination of the photos.

Defendants' respond below that Jordan is not an individual defendant in this action.  That is irrelevant.  Jordan is agent of the County and Fire Department, and those entities are subject to liability on a *Monell* theory for Jordan's conduct.  Jordan's consciousness of guilt is relevant to the jury's determination of his underlying conduct, which informs whether the Fire Department and County are liable.

Defendants argue below that Jordan provided his cell *phone* for examination.  That is also irrelevant.  Judge Eick's order above pertains to *records* maintained by Jordan's wireless carrier.  Indeed, Jordan's physical cell phone, though submitted

1  for examination, was useless due to Jordan's deletion of its contents.  The cell

2  records, which Jordan himself did not have control over, contain incriminating

3  evidence.  Jordan's vehement refusal to consent to their production is telling and

4  relevant.

5       **Defendants' Response:**  Exhibit 419 is not relevant to any claims or issues in

6  this case.  For starters, Brian Jordan is not a defendant in this case.  Whether he

7  voluntarily agreed to provide Plaintiff with his personal cellphone records is beside

8  the point.

9       Plaintiff argues that Exhibit 419 is relevant to showing that Jordan never

10 voluntarily submitted his personal cellphone for forensic examination.  False.

11 Exhibit 419 is an order by Magistrate Judge Eick ordering Jordan's cellphone

12 providers—New Cingular Wireless PCS, LLC (doing business as AT&T) and T-

13 Mobile USA, Inc.—to produce Jordan's cellphone records.  (*See* Dkt. 135 at 2.)

14 Jordan did, in fact, voluntarily produce his work *and* personal electronic devices as

15 part of the forensic examination conducted by the neutral forensic examiner, Kroll.

16 Kroll confirmed that none of Jordan's devices had crash site photos depicting human

17 remains and none had any evidence that Jordan publicly disseminated crash site

18 photos.

19      Plaintiff argues that Jordan's refusal to voluntarily consent to production of

20 his personal cellphone records shows his "consciousness of guilt."  This is nonsense.

21 Jordan testified that he took and shared the crash site photos on his work phone.  It

22 is not surprising that Jordan would object to production of records relating to his

23 personal cellphone—this invasion of privacy is substantial and Jordan was permitted

24 to object to Plaintiff's requests.

25      Magistrate Judge Eick's order is also not necessary for Plaintiff to make this

26 point at trial if the Court deems it relevant.  Plaintiff can simply ask Jordan if he

27 turned over his cellphone records.

28

**XXIV.**      **Documents Regarding Incident Involving Firefighter in 2015.**

Five (5) of Plaintiff's exhibits to which Defendants object relate to
disciplinary proceedings in a 2015 incident in which a Fire Department employee
was alleged to have taken an improper photo of a deceased accident victim:

❖ Plaintiff's Exhibit 434:  LAFD Letter dated June 22, 2015, titled: "Intention to
   Suspend" (COLA035403-08) – Anthony Marrone, William McCloud

❖ Plaintiff's Exhibit 435:  LAFD Letter dated March 1, 2018 re Suspension
   (COLA035409-16) – Anthony Marrone, William McCloud

❖ Plaintiff's Exhibit 436: LAFD Investigation Report dated May 29, 2015
   (COLA035417-28) – Anthony Marrone, William McCloud

❖ Plaintiff's Exhibit 437: LAFD Supplemental Investigation Report dated
   November 1, 2017 (COLA035429-37) – Anthony Marrone, William
   McCloud

❖ Plaintiff's Exhibit 438:  LAFD Letter of Reprimand dated March 27, 2019
   (COLA035438-41) – Anthony Marrone, William McCloud

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);
More prejudicial than probative (FRE 403); With respect to Exhibit 434 –
Subsequent remedial measures (FRE 407).

**Plaintiff's Response to the Objections:**  Exhibits 434 through 438 involve
disciplinary proceedings related to a 2015 incident in which a supervisor for the Fire
Department took gratuitous photos of a victim's body.  The incident involved a
traffic accident between a dump truck and a motorcycle, which resulted in a victim's
chest cavity being "filleted open."  According to the conclusion of the Fire
Department's investigation, a supervisor for the Fire Department lifted a sheet that
was covering the victim and, in front of 20 to 30 members of the public who were
standing nearby, snapped a photo of the victim's body on his cell phone.  A member
of the public complained to the Department about the firefighter taking the photo,
the Department investigated, and the firefighter was initially informed that he would

be suspended for the equivalent of 30 days.  However, as shown in the above exhibits, this discipline was later reduced to a 12 day suspension, and then to a mere written reprimand.  In the discipline letters, the Fire Department acknowledged: "Although the Penalty Guide provides a range of penalties for failing to exercise good judgment and bringing discredit or embarrassment upon the Department through on- or off-duty behavior, <u>no policy expressly addresses the circumstances of this matter.</u>"  (Emphasis added.)

These exhibits are relevant and not unfairly prejudicial because they show the Fire Department's actual or constructive notice prior to the accident that taking unnecessary photos of victims' remains was a problem and that, absent a clear policy backed by training and discipline, its personnel would inevitably violate citizens' constitutional rights.

Defendants' objection that Exhibit 26—a letter to the firefighter informing him of suspension—must be excluded in its entirety as a subsequent remedial measure is without merit for the reasons state above, *supra* section I.B.  Defendants' argument also fails for the additional reason that the letter is dated 2015—five years *before* the events at issue in this case.  Hence, it is not a "subsequent" remedial measure.  Rather, it is evidence that the Department previously was aware of similar instances of misconduct, which is a central aspect of proof in *Monell* cases.

**Defendants' Response:**  Plaintiff's assertion that Exhibits 434-438 are relevant to show LACFD's actual or constructive notice is wrong.

This case is about whether Defendants violated Plaintiff's constitutional rights by publicly disseminating crash site photos depicting Plaintiff's relatives.  Exhibits 434-438 are not relevant to Plaintiff's claims because they did not involve public dissemination.  The complaint at issue in Exhibits 434-438 related to an LACFD member who took photos of a deceased person while in the presence of members of the public.  There were no allegations—none—that the LACFD member ever publicly disseminated the photos.

Plaintiff has no evidence of public dissemination by the County.  He also knows that prior to this incident, LACFD had never received a complaint—internal or external—about a member sharing photos of a deceased person.  That is why he is doing everything he can to confuse and mislead the jury.

Exhibits 434-438 should also be excluded because they will necessitate undue consumption of limited trial time, which far outweighs any minimal probative value. If Plaintiff is permitted to introduce Exhibits 434-438, Defendants will have to introduce witnesses and evidence to explain to the jury that the complaint did not involve sharing of crash site photos, how the complaint was received, the investigation that was conducted, and the discipline that was imposed.  None of that is relevant to Plaintiff's claims at trial, but Defendants would be forced to put on this evidence so that the jury understands what really happened.

## XXV. <u>Document Regarding Incident Involving Sheriff's Deputy in 2016.</u>

One (1) of Plaintiff's exhibits is a packet of Sheriff's Department materials related to an alleged incident involving a deputy in 2016:

❖ <u>Plaintiff's Exhibit 85:</u>  LASD Watch Commander's Service Comment Report dated July 31, 2016 (COLA035335) – Alex Villanueva, William Jaeger

**Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402); More prejudicial than probative (FRE 403).

**Plaintiff's Response to the Objections:**  Exhibit 85 is a report detailing an LASD deputy using his personal cell phone to take a photo of a deceased gunshot victim in the presence of a member of the public.  The Department received a complaint from a member of the public, conducted an investigation, and concluded that the deputy had in fact used his personal cell phone to photograph a deceased homicide victim.  The LASD official conducting the investigation recommended that the complaint be filed as, "Employee Conduct Should Have Been Different," and two performance log entries were issued in connection with the incident.

1    This exhibit is relevant and not unfairly prejudicial because it shows that

2 LASD was on actual or constructive notice that, absent a clear policy backed by

3 training and discipline, improper photos of human remains would be inevitable,

4 which pertains to Defendants' liability under *Monell*.

5    **Defendants' Response:** Plaintiff's assertion that Exhibit 85 is related to

6 "improper photos of human remains" is false.  Exhibit 85 relates to an internal

7 investigation into a citizen complaint that a LASD deputy made an inappropriate

8 comment while on scene.  There was no allegation that the photo taken by the

9 deputy of the deceased victim in that case was improper.  That was not an issue in

10 the investigation.  Moreover, there was no allegation that the deputy publicly

11 disseminated the deceased individual.

12    This case is about whether Defendants violated Plaintiff's constitutional rights

13 by publicly disseminating crash site photos depicting Plaintiff's relatives.  Exhibit

14 85 is not relevant to Plaintiff's claims because it did not involve public

15 dissemination.  Plaintiff's argument that Exhibit 85 put LASD on "actual or

16 constructive" notice is also wrong.  Exhibit 85 did not put LASD on notice because,

17 again, it did not involve any allegation of improper taking of photos of a deceased

18 person, and it is undisputed that it did not involve any allegation that the deputy

19 publicly disseminated any photos.

20    Plaintiff has no evidence of public dissemination by the County.  He also

21 knows that prior to this incident, LASD had never received a complaint—internal or

22 external—about a deputy taking or sharing photos of a deceased person.  That is

23 why he is doing everything he can to confuse and mislead the jury.

24    Exhibit 85 should also be excluded because it will necessitate undue

25 consumption of limited trial time, which far outweighs any minimal probative value.

26 If Plaintiff is permitted to introduce Exhibit 85, Defendants will have to introduce

27 witnesses and evidence to explain to the jury that it did not involve improper taking

28 or sharing of crash site photos, how the complaint was received, the investigation

UPDATED JOINT STATEMENT RE: OBJECTIONS IN PRE-TRIAL EXHIBIT STIPULATION

1   that was conducted, and the discipline that was imposed.  None of that is relevant to

2   Plaintiff's claims at trial, but Defendants would be forced to put on this evidence so

3   that the jury understands what really happened.

4   **XXVI.**     **<u>Reserve Deputy David Katz's Experience at the Crash Site.</u>**

5         Three (3) of Plaintiff's exhibits relate to LASD Reserve Deputy David Katz's

6   experience at the crash site:

7   ❖ <u>Plaintiff's Exhibit 35:</u>  Newsletter: "The Backup Newsletter," Winter 2020 -

8       California Reserve Peace Officers Association Quarterly Newsletter – David

9       Katz

10  ❖ <u>Plaintiff's Exhibit 36:</u>  Email from Katz to "team02@malibusar.org" re Kobe

11      Crash – David Katz

12  ❖ <u>Plaintiff's Exhibit 37:</u>  David Katz Memo to Vander Horck re Crash Scene

13      Photos – David Katz

14      **Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);

15  More prejudicial than probative (FRE 403); Hearsay (FRE 801).

16      **Plaintiff's Response to the Objections:**  Exhibit 35 is a detailed, published

17  account of LASD Reserve Deputy David Katz's experience responding to the crash

18  scene.  It includes information regarding the timing of when Katz and others learned

19  that Kobe Bryant was onboard the helicopter and when Katz reached the crash site

20  (and in doing so had a conversation with Doug Johnson regarding Johnson's photos

21  of the scene).  It also describes the grisly nature of the scene as one "deserving of

22  our respect and care."  In Exhibit 36, Reserve Deputy David Katz sends his

23  published account to colleagues and states that "[f]or obvious reasons, I have not

24  detailed any information about particular victims, their condition, the condition of

25  the crash site etc."  Exhibit 37 is a memo written by Deputy Katz to Captain

26  Matthew Vander Horck regarding Katz's experience at the crash scene and

27  knowledge of crash scene photos.

28

1    These materials are relevant and not unfairly prejudicial because they pertain

2  to numerous issues, including whether LASD personnel knew Kobe Bryant was

3  among the deceased at the time photos were taken of the bodies and whether the

4  photos were taken as part of an effort to identify certain remains.  The materials also

5  contain admissions by a LASD representative of Plaintiff's reasonable expectation

6  of privacy in the condition of his loved ones' remains.

7    Defendants' hearsay objections to the above exhibits are entirely new (*see*

8  Lavoie Decl., Ex. A), and thus waived and void for the reasons stated above, *see*

9  *supra* section I.A.  The hearsay objections are also baseless on the merits because

10 statements attributed to Deputy Katz or Deputy Johnson in the exhibits are non-

11 hearsay statements of a party opponent.  Specifically, the statements were "made by

12 [a] party's agent or employee [i.e., Johnson and Katz] on a matter within the scope

13 of that relationship and while it existed."  FRE 801(d)(2)(D).

14   Finally, Defendants' repeated refrain that Plaintiff somehow "abandoned"

15 Exhibit 37 fails for the reasons stated in Plaintiff's statement in section I.C. above

16 and in his supplemental briefing regarding the *Monell* claim.  (Dkt. 281, 287.)  This

17 evidence of Defendants' post-violation conduct does not pertain to any separate or

18 independent *Monell* theory.

19   **Defendants' Response:**  Exhibits 35-37 are not relevant to any of Plaintiff's

20 claims in this case.  Exhibits 35-36 relate to an article written by an LASD volunteer

21 (David Katz) about his personal experience on January 26, 2020.  David Katz is not

22 a Defendant in this case.  He is not named anywhere in Plaintiff's complaint.  None

23 of the actions he took on January 26, 2020 are at issue.  Exhibit 37 is a

24 memorandum written by David Katz as part of LASD's internal inquiry into the

25 crash site photos.

26   Plaintiff argues Exhibits 35 and 36 are relevant because Katz recounts a

27 purported conversation he had with Deputy Doug Johnson.  Those statements are

28 inadmissible hearsay not subject to any exception.  Deputy Johnson is not a party in

1  this case and his statements are not party admissions on behalf of any of the

2  Defendants.

3      There is also no reason Plaintiff needs to rely on Exhibits 35 and 36.

4  Plaintiffs intends to call Katz as a witness at trial.  (*See* Dkt. 233 at 8.)  Plaintiff can

5  ask Katz about what happened on the day of the crash.  To the extent Katz testifies

6  inconsistently, Plaintiff can use Exhibits 35 and 36 to impeach him.  Plaintiff is

7  attempting an end run around the rules for impeachment by trying to having

8  Exhibits 35 and 36 admitted without examining Katz first.  That is not proper.

9      Regarding Exhibit 37, Plaintiff has abandoned his "failure to adequately

10  investigate and discipline" theory under *Monell*.  Plaintiff alleged three Monell

11  theories in his Second Amended Complaint ("SAC"): (i) failure to train; (ii) failure

12  to adequately investigate and discipline; and (iii) a failure to establish a policy or

13  procedure addressing the treatment of human remains."  (SAC ¶ 32.)  Defendants

14  moved for summary judgment on all three theories (*See* Dkt. 88-1 at 21:1-26:24.)

15  And Plaintiff did not oppose Defendants' motion as to theories (ii) and (iii).  (*See*

16  Dkt. 116 at 15:27-25:8).  Therefore, under Ninth Circuit law, Plaintiff abandoned all

17  but the training theory.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)

18  ("[P]laintiff has 'abandoned … claims by not raising them in opposition to [the

19  defendant's] motion for summary judgment." (second and third alterations in

20  original) (citation omitted)).

21      At the February 4, 2022 Final Pretrial Conference, the Court stated that it

22  agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not

23  opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See*

24  Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff  asked to

25  be allowed to file briefing on the issue, which the Court agreed to.  [*Id.* At 7:11-8:4,

26  68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.

27  [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]

28

1  And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet

2  to issue a formal ruling on the waiver/abandonment issue.

3         If the Court sticks to its tentative ruling, documents related to LASD's

4  investigation and discipline of its employees would be irrelevant and not admissible

5  at trial.  Specifically, allowing Plaintiff to offer these exhibits would be confusing

6  and misleading.  It would lead jurors to believe that certain *Monell* theories are still

7  part of this case despite Plaintiff having abandoned them.  Defendants will be forced

8  to either ignore the irrelevant evidence and hope the jury understands the proper

9  parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing

10  witnesses and evidence to defend against abandoned claims.

11         Plaintiff now argues without any citation that this evidence is relevant to his

12  "failure to train" policy under *Monell*.  Wrong.  No case has held that a government

13  agency's failure to investigate or discipline is relevant to proving a "failure to train"

14  theory.  That is the reason Plaintiff does not cite any case law for this proposition.

15  In fact, prior to the Court stating that its practice is to bifurcate federal and state law

16  claims at trial, Plaintiff had only argued that this evidence was relevant to proving

17  his "custom or practice" theory under *Monell*.  Plaintiff changed his argument

18  because he is trying desperately to introduce this improper evidence at trial.

19         As set forth above, *see supra* section I.A (Defendants' Response), Plaintiff's

20  arguments that Defendants waived their objections is without merit.  Plaintiff

21  tellingly does not cite any law or authority for this position, and that is because there

22  is none.

23  **XXVII.        Marrone Hand-Written Notes.**

24         One of Plaintiff's exhibits to which Defendants object is hand-written notes

25  by Interim Fire Chief Anthony Marrone regarding a complaint made to the

26  Department by Luella Weireter.

27  ❖  Plaintiff's Exhibit #22:  Handwritten notes headed "Advised @ 11:11 AM,"

28         Redacted – Anthony Marrone

568963.1

1   **Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);

2   More prejudicial than probative (FRE 403); Hearsay (FRE 801, 802).

3   **Plaintiff's Response to the Objections:**  Exhibit 22 is handwritten notes by

4   Deputy Fire Chief Anthony Marrone regarding a complaint he received from a

5   citizen about Tony Imbrenda publicly displaying photos of the victims' remains at

6   the Golden Mike Awards.  The timing and content of the complaint are relevant and

7   not unfairly prejudicial because they evidence the Fire Department's failure to

8   preserve relevant evidence following receipt of the complaint, despite a preservation

9   obligation having clearly arisen.

10   Evidence relating to the Fire Department's failure to preserve evidence is

11   relevant for the reasons set forth in <u>Plaintiff's motion *in limine* #1</u> to preclude

12   Defendants from proffering exculpatory testimony and argument regarding spoliated

13   evidence and to admit evidence of Defendants' destruction of evidence.  (Dkt. 156.)

14   Among other things, the jury is entitled to know that the lack of direct forensic

15   evidence of the taking and sharing of photos of the victims' remains is a

16   consequence of the Fire Department's spoliation, as opposed to an indication that

17   such evidence never existed.  *NuVasive, Inc. v. Kormanis*, 2019 WL 1171486, at *2

18   (M.D.N.C. Mar. 13, 2019) (allowing parties "to present evidence to the jury

19   concerning the loss" of ESI and instructing the jury that it "may consider [such]

20   evidence . . . in making its decision"); *Stanbro v. Westchester Cnty. Health Care*

21   *Corp.*, 2021 WL 3863396, at *16 (S.D.N.Y. Aug. 27, 2021) (authorizing plaintiff

22   "to adduce evidence at trial" regarding spoliated video); *Franklin v. Howard Brown*

23   *Health Ctr.*, 2018 WL 4784668, at *7 (N.D. Ill. Oct. 4, 2018) (recommending that

24   "parties be allowed to present evidence and argument to the jury regarding the

25   defendant's destruction/failure to preserve electronic evidence in this case").

26   Defendants' repeated refrain that Plaintiff somehow "abandoned" Exhibit 37

27   fails for the reasons stated in Plaintiff's statement in section I.C. above and in his

28   supplemental briefing regarding the *Monell* claim.  (Dkt. 281, 287.)  This evidence

of Defendants' post-violation conduct does not pertain to any separate or independent *Monell* theory.

Defendants' hearsay objections to the above exhibits are entirely new (*see* Lavoie Decl., Ex. A), and thus waived and void for the reasons stated above, *see supra* section I.A.  The objection is also baseless because the notes are a writing of Interim Chief Anthony Marrone.  Accordingly, they are the statement of a party opponent.

**Defendants' Response:**  Exhibit 22 is not relevant to any of Plaintiff's claims in this case.  Exhibit 22 is a page of handwritten notes from Interim Fire Chief Anthony Marrone regarding when he was informed that Luella Weireter had reported that LACFD employee Tony Imbrenda had shown photos from the crash site to other firefighters at the Golden Mike Awards.

Exhibit 22 is not relevant because it relates to LACFD's investigation into the taking and sharing of crash scene photos.  Plaintiff has abandoned his "failure to adequately investigate and discipline" theory under *Monell*.  Plaintiff alleged three Monell theories in his Second Amended Complaint ("SAC"): (i) failure to train; (ii) failure to adequately investigate and discipline; and (iii) a failure to establish a policy or procedure addressing the treatment of human remains."  (SAC ¶ 32.) Defendants moved for summary judgment on all three theories (*See* Dkt. 88-1 at 21:1-26:24.)  And Plaintiff did not oppose Defendants' motion as to theories (ii) and (iii).  (*See* Dkt. 116 at 15:27-25:8).  Therefore, under Ninth Circuit law, Plaintiff abandoned all but the training theory.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)  ("[P]laintiff has 'abandoned … claims by not raising them in opposition to [the defendant's] motion for summary judgment." (second and third alterations in original) (citation omitted)).

At the February 4, 2022 Final Pretrial Conference, the Court stated that it agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See*

1   Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.] Plaintiff asked to

2   be allowed to file briefing on the issue, which the Court agreed to. [*Id.* At 7:11-8:4,

3   68:25-72:3, 75:5-76:18.] Plaintiff filed his opening brief on February 14, 2022.

4   [Dkt. 201.] Defendants filed their response brief on February 28, 2022. [Dkt. 202.]

5   And Plaintiff filed his reply brief on March 7, 2022. [Dkt. 203.] The Court has yet

6   to issue a formal ruling on the waiver/abandonment issue.

7   If the Court sticks to its tentative ruling, documents related to LACFD's

8   investigation would be irrelevant and not admissible at trial. Specifically, allowing

9   Plaintiff to offer these exhibits would be confusing and misleading. It would lead

10  jurors to believe that certain *Monell* theories are still part of this case despite

11  Plaintiff having abandoned them. Defendants will be forced to either ignore the

12  irrelevant evidence and hope the jury understands the proper parameters of

13  Plaintiff's *Monell* claim, or spend valuable trial time introducing witnesses and

14  evidence to defend against abandoned claims.

15  Plaintiff now argues without any citation that this evidence is relevant to his

16  "failure to train" policy under *Monell*. Wrong. No case has held that a government

17  agency's failure to investigate or discipline is relevant to proving a "failure to train"

18  theory. That is the reason Plaintiff does not cite any case law for this proposition.

19  In fact, prior to the Court stating that its practice is to bifurcate federal and state law

20  claims at trial, Plaintiff had only argued that this evidence was relevant to proving

21  his "custom or practice" theory under *Monell*. Plaintiff changed his argument

22  because he is trying desperately to introduce this improper evidence at trial.

23  Plaintiff argues that Exhibit 22 is relevant "to the Fire Department's failure to

24  preserve relevant evidence following receipt of the complaint, despite a preservation

25  obligation having clearly arisen." Wrong. A citizen complaint to an agency does

26  not trigger a duty to preserve evidence, as set forth in Defendants' opposition to

27  Plaintiff's motion *in limine* no. 1. (*See* Dkt. 156 at 38-43.) For a party to be on

28  notice of litigation such that a duty to preserve attaches, the evidence must be

1   relevant to a litigation that has "more than a possibility of occurring." *Garcia v.*
2   *United States*, 2014 WL 12709430, at *1 (C.D. Cal. Sept. 3, 2014) (citation
3   omitted).  Specifically, "the fact that a tort might have occurred cannot by itself be
4   sufficient to place a defendant on notice of impending litigation [because] … that is
5   not the law." *Id.* at *2.  Instead, the duty requires a higher standard—that the
6   litigation is probable.  2014 WL 12709430, at *2.

7         Defendants did not have a duty to preserve evidence until Plaintiff Bryant
8   submitted her tort claims on May 8, 2020 (LASD) and July 20, 2020 (LACFD).
9   *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2016 WL
10  9173457 (C.D. Cal. Sept. 8, 2016).  Weireter's complaint was not sufficient to place
11  LACFD on notice of impending litigation.  It did not identify any injury to the
12  complainant.  It did not identify any injured party or potential legal claim against
13  LACFD.  The complaint merely reported what Weireter observed.  She had not even
14  seen the photos.  Weireter's complaint did not notify LACFD that litigation was
15  probable.  Instead, it notified LACFD that it should investigate and determine
16  whether there was factual basis for the complaint.  That is what LACFD did.
17  Exhibit 22 is not relevant to the triggering of any preservation duty and will only
18  serve to confuse and mislead the jury.

19        Plaintiff contends that Exhibit 22 is relevant because the jury is entitled to
20  know that the lack of direct forensic evidence regarding the taking and sharing of
21  the photos is a result of "spoliation" as opposed to an indication that such evidence
22  never existed.  This argument makes no sense.  Defendants are not disputing that the
23  photos once existed.  Defendants are not disputing Imbrenda displayed certain
24  photos to a limited set of people during Golden Mike Awards.  Therefore, the jury
25  will not infer that the photos "never existed."  The jury only needs to determine
26  whether that act of taking or sharing the photos creates liability.

27        The cases that Plaintiff relies are inapposite.  Each of Plaintiff's cases deals
28  with the loss of evidence that would go *directly* to establishing the heart plaintiff's

1  claims, which is simply not applicable here.  *See NuVasive, Inc. v. Kormanis*, 2019

2  WL 1171486, at *2 (M.D.N.C. Mar. 13, 2019) (addressing the loss of text messages

3  to/from the defendant in a breach of contract case); *Stanbro v. Westchester Cnty.*

4  *Health Care Corp.*, 2021 WL 3863396, at *16 (S.D.N.Y. Aug. 27, 2021)

5  (addressing the loss of a video depicting the plaintiff's injuries in a case where

6  plaintiff alleged excessive force against defendant that caused him to become a

7  quadriplegic); *Franklin v. Howard Brown Health Ctr.*, 2018 WL 4784668, at *4

8  (N.D. Ill. Oct. 4, 2018) (addressing the loss of instant messages in a case involving

9  claims of harassment and discrimination, including those of the purported

10  harassers).

11      As set forth above, *see supra* section I.A (Defendants' Response), Plaintiff's

12  arguments that Defendants waived their hearsay objections is without merit.

13  Plaintiff tellingly does not cite any law or authority for this position, and that is

14  because there is none.

15  **XXVIII.    Documents Related to Captain Vander Horck's Transfer.**

16      Two (2) of Plaintiff's exhibits to which Defendants object relate to Captain

17  Matthew Vander Horck's removal as Captain of the Lost Hills Sheriff's Station in

18  February 2020:

19  ❖ Plaintiff's Exhibit 129:  Announcement of Vander Horck Transfer

20      (COLA0035860) – Matthew Vander Horck

21  ❖ Plaintiff's Exhibit 131:  Email dated February 20, 2020 Involving Matthew

22      Vander Horck, titled: "Fw: Contact US - LASD.org 'Kobe'" (COLA007303-

23      04) – Matthew Vander Horck

24      **Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);

25  More prejudicial than probative (FRE 403).

26      **Plaintiff's Response to the Objections:**  Exhibit 129 is a notification

27  announcing Captain Matthew Vander Horck's transfer from the Malibu – Lost Hills

28  Station to the Men's Central Jail.  Exhibit 131 involves Captain Vander Horck

forwarding a chain email with his supervisors related to the citizen complaint about the photos from his work account to his personal Gmail account.  Vander Horck's transfer from the Lost Hills Station to the Men's Central Jail occurred three weeks after he voiced concerns about Sheriff Villanueva's instruction that deputies delete photos in exchange for amnesty, and Vander Horck testified at deposition that he forwarded the correspondence with his supervisors to his own Gmail account because he thought he may need to pursue legal action related to the unwanted transfer.

As explained in Plaintiff's opposition to <u>Defendants' motion <i>in limine</i> #3</u>, evidence regarding Sheriff Villanueva's retaliation against Captain Vander Horck is relevant and not unfairly prejudicial for several reasons, including: (i) it evidences LASD's custom and practice and deliberate indifference with respect to photos of human remains, as the Sheriff elected to discipline only the individual who voiced concern and refrained from discipline for individuals who took and shared photos of the victims' remains; and (ii) it strongly suggests that the Sheriff's deletion orders were part of a self-interested cover-up rather than an altruistic effort to protect the victims' families.

**Defendants' Response:**  Exhibits 129 and 131 are not relevant to any of Plaintiff's claims in this case.  As explained more fully in in Defendants' Motion in *Limine* No. 3, Captain Vander Horck's job transfer had nothing to do with photos of the crash site or LASD's investigation into photos. Sheriff Villanueva, who made the decision, testified that it was entirely unrelated to the issue.  Captain Vander Horck, who Plaintiff paints as a victim agrees.  Plaintiff's conspiracy theory is wrong.

Even if Plaintiff's whistleblower/retaliation theory were true (it's not), evidence of Captain Vander Horck's opinions about how Sheriff Villanueva handled LASD's internal investigation or discipline surrounding the crash site has no bearing

1  on the actual issues in this case—whether photos were disseminated in violation of

2  Plaintiff's rights.  This evidence is irrelevant and inadmissible under Rule 402.

3  **XXIX.**       **<u>Materials Relating to LASD & LAFD Policies.</u>**

4       Three (3) of Plaintiff's exhibits to which Defendants object are documents

5  Plaintiff intends to use in relation to Sheriff's and Fire Department policies at the

6  time of the crash.

7   ❖ <u>Plaintiff's Exhibit 159:</u>  Hanley Law Group Letter to LAFD dated January 29,

8       2021 (COLA035497-550) – Brian Jordan

9   ❖ <u>Plaintiff's Exhibit 194:</u>  Kahan email to Marrone dated December 10, 2020

10      attaching Rebuttal to the Letter of Intent (COLA035012-14) – Anthony

11      Marrone, William McCloud, Arlin Kahan

12  ❖ <u>Plaintiff's Exhibit 328:</u>  LASD Letter to Brian Williams & Max Huntsman,

13      dated March 4, 2020 (VB00004190) – Alex Villanueva

14      **Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);

15  More prejudicial than probative (FRE 403); With respect to Exhibit 328 –

16  Subsequent remedial measures (FRE 407).

17      **Plaintiff's Response to the Objections:**  Exhibits 159 and 194 are letters

18  and/or memoranda from former Fire Captain Brian Jordan and Fire Captain Arlin

19  Kahan stating that their conduct in taking photos of the victims' remains did not

20  violate any then-existing Department policies.  This is relevant and not unfairly

21  prejudicial because Defendants' absence of policy and training is an element of

22  Plaintiff's *Monell* claim.  Defendants' repeated refrain that Plaintiff somehow

23  "abandoned" Exhibits 159 and 194 fails for the reasons stated in Plaintiff's

24  statement in (I)(X) above and in his supplemental briefing regarding the *Monell*

25  claim.  (Dkt. 281, 287.)  This evidence of Defendants' post-violation conduct does

26  not pertain to any separate or independent *Monell* theory but is squarely relevant to

27  Plaintiff's failure to train theory.

28

1       Exhibit 194 is further relevant because it includes written admissions by

2  Kahan regarding his conduct, including the fact that he sent 10-15 photos of the

3  crash scene to Tony Imbrenda.

4       Exhibit 159 is further relevant because, in it, Brian Jordan's counsel asserts

5  that the crash scene was so horrific that Jordan purportedly suffered post-traumatic

6  stress disorder from being there.  If the crash site was so graphic that it could cause

7  an experienced firefighter to develop post-traumatic stress, it informs Plaintiff's

8  reasonable fear and anxiety about seeing photos of the scene.

9       Separately, Exhibit 328 is a letter from Sheriff Alex Villanueva to Inspector

10  General Max Huntsman in which the Sheriff acknowledges that LASD's photograph

11  policy was "deficient" at the time of the crash.  This is relevant to Plaintiff's *Monell*

12  claim based on LASD's failure to implement and enforce a needed policy to prevent

13  violations of constitutional rights.

14       Defendants' objection that Exhibit 328 reflects a subsequent remedial

15  measure is improper in light of their contention that high-level, generic LASD

16  policies and codes of conduct at the time of the crash constituted adequate training

17  and policy to prevent the unnecessary taking and sharing of photos of human

18  remains.  If Defendants are permitted to introduce evidence of such high-level

19  policies and contend they covered the misconduct at issue at the time of the crash,

20  Plaintiff must be permitted to counter that such policies did not cover the

21  misconduct, as evidenced by Sheriff Villanueva's admission that his Department's

22  policy was "deficient."

23       Defendants' repeated refrain that Plaintiff somehow "abandoned" such post-

24  violation evidence fails for the reasons stated in Plaintiff's statement in section I.C.

25  above and in his supplemental briefing regarding the *Monell* claim.  (Dkt. 201.)

26     **Defendants' Response:**  Exhibits 159 and 194 are not relevant to any of the

27  claims or issues in this case and should be excluded, as set forth in Defendants'

28  opposition to Plaintiff's motion *in limine* no. 5.  (*See* Dkt. 162 at 24-27.).  LACFD's

1  investigation and discipline of its personnel has nothing to do with the issues to be

2  decided by the jury.

3       Exhibits 159 and 194 relate to LACFD's internal investigation and discipline

4  of its personnel.  They are not relevant to any of Plaintiff's claims.  Plaintiff alleged

5  three Monell theories in his Second Amended Complaint ("SAC"): (i) failure to

6  train; (ii) failure to adequately investigate and discipline; and (iii) "a failure to

7  establish a policy or procedure addressing the treatment of human remains." (SAC ¶

8  32.)  Defendants moved for summary judgment on all three theories.  (*See* Dkt. 88-1

9  at 21:1-26:24.)  Plaintiff did not oppose Defendants' motion as to theories (ii) and

10 (iii) (*see* Dkt. No. 190 at 18:5-20:9); and, therefore, under Ninth Circuit case law, he

11 abandoned all but the training theory.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th

12 Cir. 2008) ("[P]laintiff has 'abandoned ... claims by not raising them in opposition

13 to [the defendant's] motion for summary judgment.'" (second and third alterations

14 in original) (citation omitted)).

15       At the February 4, 2022 Final Pretrial Conference, the Court stated that it

16 agreed with Defendants that Plaintiff waived/abandoned theories (ii) and (iii) by not

17 opposing Defendants' summary judgment motion as to those *Monell* theories.  [*See*

18 Feb. 4, 2020 Final Pretrial Conference Hearing Tr. At 7:11-8:4.]  Plaintiff asked to

19 be allowed to file briefing on the issue, which the Court agreed to.  [*Id.* At 7:11-8:4,

20 68:25-72:3, 75:5-76:18.]  Plaintiff filed his opening brief on February 14, 2022.

21 [Dkt. 201.]  Defendants filed their response brief on February 28, 2022.  [Dkt. 202.]

22 And Plaintiff filed his reply brief on March 7, 2022.  [Dkt. 203.]  The Court has yet

23 to issue a formal ruling on the waiver/abandonment issue.

24       If the Court sticks to its tentative ruling, documents related to LACFD's

25 investigation and discipline of its employees would be irrelevant and not admissible

26 at trial.  Specifically, allowing Plaintiff to offer exhibits 159 and 164 would be

27 confusing and misleading.  It would lead jurors to believe that certain *Monell*

28 theories are still part of this case despite Plaintiff having abandoned them.

Defendants will be forced to either ignore the irrelevant evidence and hope the jury understands the proper parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing witnesses and evidence to defend against abandoned claims.

Plaintiff now argues without any citation that this evidence is relevant to his "failure to train" policy under *Monell*.  Wrong.  No case has held that a government agency's failure to investigate or discipline is relevant to proving a "failure to train" theory.  That is the reason Plaintiff does not cite any case law for this proposition.  In fact, prior to the Court stating that its practice is to bifurcate federal and state law claims at trial, Plaintiff had only argued that this evidence was relevant to proving his "custom or practice" theory under *Monell*.  Plaintiff changed his argument because he is trying desperately to introduce this improper evidence at trial.

Exhibit 159's and 194's minimal probative value (if any) is far outweighed by their unfair prejudice to Defendants.  Plaintiff intends to argue to the jury that these Exhibits show LACFD acknowledged its personnel violated his contitutional rights.  Courts have precluded such evidence and argument, recognizing that evidence of disciplinary proceedings poses a significant risk of prejudice because it could cause the jury to conclude that the employee was guilty of wrongdoing merely because their employer disciplined them.  *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) ("The prejudicial effect of this evidence was also arguably great. The jury might have inferred that Officer Harris was guilty of wrongdoing merely because the Police Department conducted disciplinary proceedings.  The jury might have given unfair or undue weight to this evidence or they might have been confused as to the relevance of this evidence.").

Exhibits 159 and 194 are also inadmissible because they reflect subsequent remedial measures (i.e., discipline) taken by the Department.  Under Federal Rule of Evidence 407, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct."  Fed. R. Evid. 407

1    Exhibits 159 and 194 reflect steps taken by LACFD to make sure the conduct

2    complained of by Plaintiff does not happen again.  Courts have recognized that

3    disciplinary proceedings are subsequent remedial measures in civil rights cases.

4    *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (in

5    section 1983 case based on police use-of-force, Court properly excluded evidence

6    from Internal Affairs investigation because "[t]he Internal Affairs investigation and

7    measures taken by the defendant City were remedial measures taken after the

8    incident").

9    Regarding Exhibit 159, Plaintiff argues that it is relevant because, if Jordan

10   could suffer PTSD from seeing the crash site, it "informs the extent to which

11   Plaintiff would suffer emotional distress from seeing photos of the victims' remains

12   at the crash site."  Nonsense.  Plaintiff has admitted he has never seen the photos at

13   issue in this case.  He admits that the photos have never been published by media

14   and are not available online.  Plaintiff has also admitted that he does now know

15   anyone whose has seen crash site photos that can be traced to the County.  Even

16   more important is that Jordan's response to being at the crash site on January 26,

17   2020, and having to conduct himself as  first responder, has nothing to do with

18   Plaintiff's emotional distress.

19   Exhibit 328 is a letter from Sheriff Villanueva to the Sheriff's Civilian

20   Oversight Commission and the Office of the Inspector General related to LASD's

21   internal investigation into the crash site photos.  As such, it is not relevant to any of

22   Plaintiff's claims in this case.

23   As discussed *supra*, Plaintiff has abandoned his "failure to adequately

24   investigate and discipline" theory under *Monell*.  Allowing Plaintiff to offer Exhibit

25   328 would be confusing and misleading, as it would lead jurors to believe that

26   certain *Monell* theories are still part of this case despite Plaintiff having abandoned

27   them.

28

1    Exhibit 328 should also be excluded because it is plainly a subsequent

2    remedial measure that is excluded under Rule 407.  Rule 407 407 states: "[w]hen

3    measures are taken that would have made an earlier injury or harm less likely to

4    occur, evidence of the subsequent measures is not admissible to prove . . . culpable

5    conduct." Fed. R. Evid. 407.  Exhibit 328 reflects steps taken by LASD to make

6    sure the conduct complained of by Plaintiff does not happen again.

7    Plaintiff argues that Exhibit 328 is relevant because it demonstrates that

8    LASD needed a policy in January 2020 to prevent constitutional violations under

9    *Marsh*.  Wrong.  LASD was not on actual or constructive notice that it needed a

10   specific policy relating to crash scene photos in January 2020.  It is undisputed that

11   prior to this incident, LASD had never received any complaint—internal or

12   external—about a deputy improperly taking or sharing crash site photos.

13   Plaintiff has no evidence of public dissemination by the County.  He also

14   knows that prior to this incident, LASD had never received a complaint—internal or

15   external—about a deputy taking or sharing photos of a deceased person.  That is

16   why he is doing everything he can to confuse and mislead the jury.

17   **XXX. New Sheriff's Department Policy on Photos of Human Remains.**

18   One (1) of Plaintiff's exhibits is a policy adopted by LASD following the

19   accident regarding photographs of human remains.

20   ❖ Plaintiff's Exhibit 109:  New LASD Policy re Photos of Human Remains

21      (COLA035884) – Alex Villanueva, Mark Flores, Joey Cruz, Michael Russell,

22      Raul Versales, Ruby Cable, Rafael Mejia, Travis Kelly, Justin Diez, Ben

23      Sanchez, Doug Johnson, Scott Miller, Other LASD Witnesses

24   **Defendants' Grounds for Objection:**  Irrelevant (FRE 104(b), 401, 402);

25   More prejudicial than probative (FRE 403); Subsequent remedial measures (FRE

26   407).

27   **Plaintiff's Response to the Objections:**  Exhibit 109 is a new policy put in

28   place by LASD regarding photos of human remains.  It is relevant and not unfairly

prejudicial because it demonstrates that, as of the day of the helicopter accident, LASD lacked a needed policy to prevent violations of the constitutional right articulated in *Marsh*.  Defendants' objection that the policy is a subsequent remedial measure is improper in light of their contention that high-level, generic LASD policies and codes of conduct at the time of the crash prohibited the taking and sharing of photos of human remains.  If Defendants are permitted to introduce evidence of such high-level policies and contend they covered the misconduct at issue at the time of the crash, Plaintiff should be permitted to counter that such policies did not cover the misconduct, as evidenced by the later-adopted policy regarding photos of human remains.

**Defendants' Response:**  Exhibit 109 is plainly a subsequent remedial measure that is excluded under Rule 407.

Rule 407 states: "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct."  Fed. R. Evid. 407.  Exhibit 109 reflects steps taken by LASD to make sure the conduct complained of by Plaintiff does not happen again.  Courts have recognized that disciplinary proceedings are subsequent remedial measures in civil rights cases. *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (in section 1983 case based on police use-of-force, Court properly excluded evidence from Internal Affairs investigation because "[t]he Internal Affairs investigation and measures taken by the defendant City were remedial measures taken after the incident").

Plaintiff argues that Exhibit 109 is relevant because it "demonstrates" that LASD needed a policy in January 2020 to prevent constitutional violations under *Marsh*.  Wrong.  LASD was not on actual or constructive notice that it needed a specific policy relating to crash scene photos in January 2020.  It is undisputed that prior to this incident, LASD had never received any complaint—internal or external—about a deputy improperly taking or sharing crash site photos.

Plaintiff has no evidence of public dissemination by the County.  He also knows that prior to this incident, LASD had never received a complaint—internal or external—about a deputy taking or sharing photos of a deceased person.  That is why he is doing everything he can to confuse and mislead the jury.

Plaintiff also argues that he should be permitted to introduce Exhibit 109, despite the prohibition in Rule 407, to respond to Defendants' contention that policies in place in January 2020 prohibited deputies from improperly taking and/or sharing crash site photos.  That is not how Rule 407 works.  Plaintiff's argument is exactly what Rule 407 is intended to prevent—arguing that actions taken after the conduct at issue show the defendant's conduct was deficient.

# DEFENDANTS' EXHIBITS

## XXXI.    Documents Relating to Wrongful Death Lawsuit.

Four (4) of Defendants' exhibits to which Plaintiff objects relate to Plaintiff Christopher L. Chester's wrongful death lawsuit against the operators of the helicopter:

- ❖ Defendants' Exhibit 91:  Consolidated Complaint for Damages (Wrongful Death/Survival/ Negligence / Helicopter Crash).  Witnesses: Plaintiff

- ❖ Defendants' Exhibit 672:  Joint Stipulation of Dismissal with Prejudice, *Bryant, et al. v. Island Express Helicopters, Inc., et al.*, United States District Court, Central District of California, Case No. 2:20-cv-08953 FMO (PVCx) [Dkt. 121.].  Witnesses: Plaintiff

- ❖ Defendants' Exhibit 673:  Order Dismissing Action with Prejudice re Bryant Plaintiffs, *Bryant, et al. v. Island Express Helicopters, Inc., et al.*, United States District Court, Central District of California, Case No. 2:20-cv-08953 FMO (PVCx) [Dkt. 124.].  Witnesses: Plaintiff

- ❖ Defendants' Exhibit 675:  Order Dismissing Action, *Bryant, et al. v. Island Express Helicopters, Inc., et al.*, United States District Court, Central District

1   of California, Case No. 2:20-cv-08953 FMO (PVCx) [Dkt. 139.].  Witnesses:

2   Plaintiff

3       **Plaintiff's Grounds for the Objection:**  Relevance (FRE 402); unfair

4   prejudice, confusion, and/or waste of time (FRE 403); inadmissible hearsay (FRE

5   802).

6       **Defendants' Response to the Objection:**  As more fully briefed in

7   Defendants' Opposition to MIL No. 3, Exhibits 91 and 672-675 are relevant and

8   admissible.  [*See* Dkt. 237 at 13-19.]

9       Plaintiff intends to introduce evidence about the crash that killed his wife and

10  daughter.  Defendants are entitled to tell the jury that any emotional distress Plaintiff

11  suffered as a result of the crash is not Defendants' fault.  Defendants are also

12  entitled to tell the jury that Plaintiff sued the helicopter operators and settled his

13  claims.  It would be prejudicial to Defendants and confusing for jurors if Defendants

14  were precluded from telling the jury this.  Plaintiff cannot recover for emotional

15  distress caused by the loss of his wife and daughter.  The jury may also be confused

16  about why Plaintiff is suing Defendants but did not sue the helicopter company.  It is

17  critical to the Defendants that jurors be told what happened.

18      There are no FRE 403 concerns implicated here.  Defendants do not intend to

19  argue to the jury that Plaintiff has already been compensated for the harm he alleges

20  in this case.  The introduction of this evidence will not require the parties to conduct

21  a mini-trial about the helicopter lawsuit.  Defendants only intend to tell the jury that

22  Plaintiff sued the helicopter company and settled that lawsuit.  There will be no need

23  to talk about the negotiation or bases for the settlement.

24      These Exhibits are not hearsay because they are not being offered for the truth

25  of the statements contained therein, but to show that Plaintiff sued the helicopter

26  operators and settled his claims for the helicopter crash itself.  These Exhibits are

27  also not hearsay pursuant to FRE 801(d)(2)(A).  They are party admissions.

28      **Plaintiff's Response:**  The above exhibits regarding Mr. Chester's lawsuit

against the helicopter operators are completely irrelevant to this case.  This information should be excluded on the ground that it is irrelevant to the issues on trial in this case and would be unfairly prejudicial, serving only to bias or confuse the jury and waste time.  In addition, Defendants' continued insistence on attempting to inject the helicopter operator lawsuit into this trial ignores the law of the case, as Magistrate Judge Eick has already ruled that the settlement is irrelevant to any issue in this case.  *See* Dkt. 119 (order denying Defendants' motion to compel materials related to Mrs. Bryant's settlement of her lawsuit against the helicopter operators).

## XXXII.   Documents Regarding the Sheriff's and Fire Departments' Policies, Trainings, and Procedures.

Seven (7) of Defendants' exhibits to which Plaintiff objects relate to policies, trainings, and standards of conduct for LASD and LAFD personnel:

❖ Defendants' Exhibit 681 - Los Angeles County Code of Ordinances Title 5, Appendix 1 Civil Service Rules § 18.031 Discipline

❖ Defendants' Exhibit 682 - LACFD Code of Ethics and Oath of Office – V2-C1-S1 10/28/21 Rules and Regulations

❖ Defendants' Exhibit 686 - California Commission on Peace Officer Standards and Training – Learning Domain 29: Traffic Collision Investigation

❖ Defendants' Exhibit 687 - California Commission on Peace Officer Standards and Training – Learning Domain 1: Leadership, Professionalism, and Ethics

❖ Defendants' Exhibit 688 - California Commission on Peace Officer Standards and Training – Learning Domain 00: Becoming an Exemplary Peace Officer

❖ Defendants' Exhibit 691 - International Civil Aviation Organization, Annex 13 to the Convention on International Civil Aviation – Aircraft Accident and Incident Investigation

❖ Defendants' Exhibit 692 - LASD Emergency Operating Procedure 2-2 Air Disaster (Ground and/or Sea)

1   **Plaintiff's Grounds for the Objection:**  Documents are barred from

2   admission by FRCP 37(c)(1) because they were produced for the first time on June

3   9, 2022—seven months after discovery cutoff.

4   **Defendants' Response to the Objection:**  Plaintiff's claim that Exhibits 681,

5   682, 686, 687, 688, 691, and 692 are barred from admission because they were

6   produced after the discovery cutoff is wrong.  All of these Exhibits are publicly

7   available documents that Plaintiff has had access to throughout the course of this

8   litigation.  Moreover, the entire basis for Plaintiff's case is that the County lacked

9   adequate policies and trainings. Defendants are entitled to rebut these claims by

10  presenting the relevant policies and training materials to the jury.  Plaintiff should

11  not be permitted to argue that the County lacks adequate trainings and policies by

12  preventing jurors from seeing the trainings and policies that are directly related to

13  Plaintiff's claims.

14  All of the documents at issue are publicly available and/or have already been

15  disclosed to Plaintiff.  Exhibit 681 is a section of the Los Angeles County Code of

16  Ordinances.  *See* Los Angeles, Cal. County Code tit. 5, apx. 1, § 18.031.  Exhibit

17  681 is quoted in full in Exhibits 26-28, which were produced in discovery, used at

18  deposition, and Plaintiff has sought to admit through motion *in limine* #5.  The

19  pertinent portion of Exhibit 687 is likewise quoted in Exhibits 26-28.[2]  Exhibits 686-

20  88 are portions of the publicly-available California Commission on Peace Officer

21  Standards and Training.  (*See* https://post.ca.gov/Download-Student-

22  Workbooks/CAv5POSTACC-Workbooks-1 (Exhibits 686-88 constitute,

23  respectively, Learning Domains 29, 1, and 00).)  The Peace Officer Standards and

24  Training learning domains were described during the deposition testimony of

25  Captain Mark Flores, Defendant's Rule 30(b)(6) witness regarding LASD policies

26

27  ─────────────

28  [2]  In addition, Exhibit 682 is an updated version of a policy which was produced in discovery as COLA030147.

and trainings.  Exhibit 691 is a publicly-available production from the International Civil Aviation Organization regarding the investigation of aviation accidents.  (*See* https://archive.org/details/icao-an13-2016/page/n1/mode/2up).  Exhibit 692 is the LASD Emergency Operation Procedure 2-2 for air disasters; it was identified by LASD Captain Justin Diez during his deposition.

All of these documents are public records which are readily available to anyone.  Documents are only subject to the duty to disclose under Rule 26(a)(1)(A)(ii) and the duty to produce under Rule 34(a)(1) if they are in the producing party's "possession, custody, or control."  Fed. R. Civ. P. 26(a)(1)(A)(ii); 34(a)(1).  "[A] party is not in 'control' of records that the requesting party has equal ability to obtain from public sources."  *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal. 2021) (alteration in original) (quoting Rutter Group Prac. Guide, Fed. Civ. Pro. Before Trial, Ch. 11(IV)-C).  Accordingly, publicly available documents are not subject to exclusion under Rule 37.  *See* Fed. R. Civ. P. 37(c)(1) (automatic exclusion applies where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)").

In addition, even if public records were the subject of mandatory disclosure, their public nature makes the failure to disclose them "harmless" and thus not subject to exclusion.  Fed. R. Civ. P. 37(c)(1); *see Cmtys. Actively Living Indep. & Free v. City of Los Angeles*, Case No. CV 09–0287 CBM, 2011 WL 4595993 (C.D. Cal. Feb. 10, 2011 ("The Court finds that the City's failure to disclose the Federal Emergency Management Agency ("FEMA") Comprehensive Preparedness Guide 101 is harmless because it is a publicly available planning document."); *Diaz*, 512 F. Supp. 3d at 1035 (failure to disclose harmless "because the videos are publicly available").

In his objection, Plaintiff fails to grapple with the distinction between publicly-available documents and private documents.  Not a single case cited by Plaintiff involved the exclusion of publicly-available documents.  *See Goodman v.*

1   *Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (report from

2   treating physician); *James Stewart Ent., LLC v. L&M Racing, LLC*, 2013 WL

3   12248146, *5 (C.D. Cal. June 28, 2013) (records from defendant's computers);

4   *Trinidad Lopez v. Liberty Mut. Ins. Co.*, 2019 WL 10303744, *1 (C.D. Cal. Oct. 8,

5   2019) (insurance claims data); *Rago v. Select Comfort Retail Corp.*, 2021 WL

6   3621890, at *9 (C.D. Cal. June 11, 2021) (pay stub records); *Haitayan v. 7-Eleven,*

7   *Inc.*, 2021 WL 1034152, at *3 (C.D. Cal. Mar. 8, 2021) (communications between

8   the parties); *Zadoian v. Target Corp.*, 2020 WL 3203145, at *2 (C.D. Cal. Apr. 14,

9   2020) (photographs and video of plaintiff); *Disney Enterprises, Inc. v. VidAngel*

10   *Inc.,* 2019 WL 4544428, at *3 (C.D. Cal. May 29, 2019) (300 documents from

11   defendant); *Yanikian v. Allstate Ins. Co.*, 2017 WL 2999035, at *3 (C.D. Cal. June

12   7, 2017) (plaintiff-prepared list valuing property); *Hakim v. Murano, Inc.*, 2017 WL

13   11632290, at *3 (C.D. Cal. Mar. 6, 2017), on reconsideration in part, 2017 WL

14   11632278 (C.D. Cal. May 2, 2017) (transaction data, party communications, and

15   contracts); *Cosmos Jewelry, Ltd. v. Po Sun Hon Co.*, 2006 WL 5105219, at *1 (C.D.

16   Cal. Apr. 5, 2006) (documents and jewelry samples).

17       Because Plaintiff has already received notice about these publicly-available

18   records and they are relevant to this action, Plaintiff's objection to them should be

19   overruled.

20   **Plaintiff's Response:** Defendants never produced the above materials

21   before adding them to the exhibit list on <u>June 9, 2022</u>—more than six months after

22   the discovery cutoff. Defendants also never listed the above documents (either by

23   name or category) in their Rule 26 disclosures as documents in their possession that

24   they would use in support of their defenses.

25       In meet and confer, Defendants conceded that they did not produce the above

26   documents during discovery. Hence, the federal rules provide that they should be

27   automatically excluded.

28

Federal Rule of Civil Procedure 26(e) requires that a party "who has responded to an interrogatory, request for production, or request for admission . . . must supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  When a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  This exclusion sanction is "self-executing" and "automatic" unless the party seeking to avoid exclusion demonstrates that the failure was substantially justified or harmless.  *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011).

Utilizing this framework, courts in this Circuit regularly exclude late-produced documents from use at trial.  For example, in *James Stewart Ent., LLC v. L&M Racing, LLC*, 2013 WL 12248146 (C.D. Cal. June 28, 2013), the defendants produced responsive documents two months after the close of fact discovery.  The court excluded these late-produced documents, noting that although there was no bad faith, the defendants' failure to timely search its files was not justified and the late production harmed plaintiffs because it forced plaintiffs to "review documents well after the discovery cutoff . . . [and] prepare for defendants' use of this late-produced document."  *Id*. at 5.

Similarly, in *Trinidad Lopez v. Liberty Mut. Ins. Co.*, 2019 WL 10303744 (C.D. Cal. Oct. 8, 2019), the defendants produced responsive documents after the close of fact discovery, approximately one month before the scheduled trial date.  The court excluded these late-produced documents, rejecting defendants' argument that the delay was substantially justified by the effort required to compile the responsive documents and finding that permitting introduction of the documents

1    "would substantially delay this action and impose significant burdens on Plaintiffs,

2    and thus is not harmless." *Id*. at *2.  This is the routine result in the Central District,

3    as evidenced by myriad cases.[3]

4           Defendants are barred from using them at trial because they failed to disclose

5    them as documents in their possession that they may use to support their defenses.

6    Rule 26(a)(1)(A)(ii) requires that, "without awaiting a discovery request," the

7    disclosure of "a copy—or a description by category and location—of all documents,

8    electronically stored information, and tangible things that the disclosing party has in

9    its possession, custody, or control and may use to support its claims or defenses,

10   unless the use would be solely for impeachment."  Courts regularly enforce this

11   requirement by excluding late-disclosed documents that a party may use to support

12   its claims or defenses.  *See*, *e.g., Ear Charms, Inc. v. Bling Jewelry, Inc.*, 2019 WL

13   2902507, at *5 (C.D. Cal. May 23, 2019) (excluding late-disclosed documents party

14   may use to support claims and defenses); *Yanikian v. Allstate Ins. Co.*, 2017 WL

15   2999035, at *3 (C.D. Cal. June 7, 2017) (same); *Estakhrian v. Obenstine*, 2016 WL

16   6868178, at *12 (C.D. Cal. Feb. 29, 2016), *report and recommendation adopted*,

17   2016 WL 6275599 (C.D. Cal. May 17, 2016) (same); *City of Inglewood v. Time*

18   *Warner NY Cable LLC*, 2015 WL 12803767, at *3 (C.D. Cal. June 9, 2015) (same).

19          Under the federal rules, the above exhibits must be excluded because

20   Defendants' failure to timely disclose or produce the policy and training materials is

21

_____

22   [3] *See, e.g.*, *Rago v. Select Comfort Retail Corp.*, 2021 WL 3621890, at *9 (C.D. Cal.

23   June 11, 2021) (excluding late-produced documents); *Haitayan v. 7-Eleven, Inc.*, 2021 WL 1034152, at *3 (C.D. Cal. Mar. 8, 2021) (same); *Zadoian v. Target Corp.*,

24   2020 WL 3203145, at *2 (C.D. Cal. Apr. 14, 2020) (same); *Disney Enterprises, Inc. v. VidAngel Inc.,* 2019 WL 4544428, at *3 (C.D. Cal. May 29, 2019) (same);

25   *Yanikian v. Allstate Ins. Co.*, 2017 WL 2999035, at *3 (C.D. Cal. June 7, 2017)

26   (same); *Hakim v. Murano, Inc.*, 2017 WL 11632290, at *3 (C.D. Cal. Mar. 6, 2017), on reconsideration in part, 2017 WL 11632278 (C.D. Cal. May 2, 2017) (same);

27   *Cosmos Jewelry, Ltd. v. Po Sun Hon Co.*, 2006 WL 5105219, at *1 (C.D. Cal. Apr.

28   5, 2006) (same).

568963.1

UPDATED JOINT STATEMENT RE: OBJECTIONS IN PRE-TRIAL EXHIBIT STIPULATION

1  not substantially justified.  Indeed, in meet and confer, Defendants have not put

2  forth any explanation whatsoever for producing these documents for the first time

3  after the discovery cutoff and the first pre-trial conference in this case.

4  Additionally, this delay harms Plaintiff.  As just one example, Plaintiff took 30(b)(6)

5  depositions of the Sheriff's and Fire Departments about their policies and trainings

6  but was unable to inquire about these documents because they were not produced or

7  disclosed.  (Lavoie Decl., Ex. E [30(b)(6) notices to Sheriff's and Fire

8  Departments].).  Courts have previously found harm under this exact scenario.  *See*

9  *Van Daele Dev. Corp. v. Steadfast Ins. Co.*, 2014 WL 12564277, at *4 (C.D. Cal.

10  Oct. 9, 2014) (finding that late disclosure was not harmless where disclosure was

11  made after close of discovery and therefore party could not question rule 30(b)(6)

12  witness about document).

13        Many of the new training and policy documents are undated, and it is unclear

14  when the policies and trainings were instituted and whether they were used with (or

15  taught to) any of the deputies or firefighters involved in this case.  Given that

16  discovery has closed, Plaintiff has no tools to obtain answers to these questions.

17  Presumably, Defendants intend their witnesses to tout the newly-produced policies

18  and training materials at trial in defense of Plaintiff's *Monell* claim.  If they are not

19  excluded, Plaintiff would be forced to cross-examine these witnesses completely

20  blind, having never had the opportunity to depose them regarding the materials.

21        In meet and confer correspondence, Defendants conceded that "these LASD

22  and LACFD policies and trainings are directly implicated by [Plaintiff's]

23  allegations," but argued that "these publicly available documents did not need to be

24  produced by Defendants."  Defendants further argued: "[G]iven that Plaintiff is

25  alleging LASD's and LACFD's policies and trainings are deficient, those

26  allegations assume that Plaintiff is aware of what policies and trainings exist."  (*Id.*)

27  Finally, Defendants have attempted to justify the late production by saying that the

28

newly-produced documents were referenced (but not included) in other documents Defendants produced in discovery or in deposition testimony.  (*Id.*)

These defenses are ridiculous.  First and foremost, Plaintiff agrees Defendants' policies and training materials are central to his case, which is why he sought documents and information related to them in his requests for production and interrogatories, and looked for information about them in Defendants' Rule 26 disclosures.  Those are the mechanisms through which information is obtained in civil litigation.  Parties are not expected to scour online sources for documents and information in their opponent's possession that they have sought through discovery requests and that the opponent itself plans to rely upon at trial.  It was incumbent on Defendants to produce responsive documents and information, not on Plaintiff to follow breadcrumbs to find responsive documents Defendants did not produce.

On a final, specific note, Defendants contend that their 30(b)(6) deponent referenced materials produced by the California Commission on Peace Officer Standards and Training.  However, Defendants produced only *one* section of those materials—Learning Domain 30, titled "Crime Scenes, Evidence, and Forensics"— during discovery.  Defendants now attempt to use three additional sections— Learning Domain 29 regarding traffic collision investigations, Learning Domain 1 regarding leadership, professionalism, and ethics, and Learning Domain 00 regarding how to become an exemplary peace officer—that they never produced in discovery.  These materials must be excluded.

1 | DATED: June 28, 2022

2

3

4 | By: _____ */s/ Jerome M. Jackson*
          JEROME M. JACKSON

5

6

7 | DATED: June 28, 2022          OFFICE OF COUNTY COUNSEL

8

9

10 | By: _____ */s/ Jonathan C. McCaverty*
           JONATHAN C. MCCAVERTY

11

12 | Attorneys for Defendant
     LOS ANGELES COUNTY SHERIFF'S
13 | DEPARTMENT

14

15

16 | DATED: June 28, 2022          MILLER BARONDESS, LLP

17

18

19 | By: _____ */s/ Louis R. Miller*
          LOUIS R. MILLER

20

21 | Attorneys for Defendants
     COUNTY OF LOS ANGELES, LOS
22 | ANGELES COUNTY FIRE
     DEPARTMENT, JOEY CRUZ, RAFAEL
23 | MEJIA, MICHAEL RUSSELL, RAUL
     VERSALES, TONY IMBRENDA, and
24 | ARLIN KAHAN

25

26

27

28

1                                       ECF CERTIFICATION

2          The filing attorney attests that Defendants' counsel concurs in the content of,

3 and has authorized, this filing.