# EXHIBIT 4

Exhibit 4 - Page 34

```
 1            UNITED STATES DISTRICT COURT
       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 2   _____
 3   VANESSA BRYANT,               )
                                   )
 4              Plaintiff,         )
                                   )
 5       vs.                       ) NO.
                                   ) 2:20-cv-09582-JFW-E
 6   COUNTY OF LOS ANGELES, et     )
     al,                           )
 7                                 )
                Defendants.        )
 8                                 )
 9   _____
10            ZOOM VIDEO-RECORDED DEPOSITION
                 UPON ORAL EXAMINATION OF
11
                      VANESSA BRYANT
12   _____
13
14                     10:31 A.M.
15                  OCTOBER 12, 2021
16        WITNESS LOCATION: NEWPORT BEACH, CA
17
18
19
20
21
22
23
24
     REPORTED BY:  VICKY L. PINSON, RPR-CCR Washington 2559
25              California No. 9845; Oregon No. 16-0442
```

Page 1

```
 1                    A P P E A R A N C E S
 2                (All Parties Appearing Remotely)
 3
 4   FOR THE PLAINTIFFS:
 5         LUIS LI
           Munger, Tolles & Olson, LLP
 6         350 South Grand Avenue
           Los Angeles, CA 90071
 7         213.683.9100
           luis.li@mto.com
 8
 9
     FOR THE DEFENDANTS COUNTY OF LOS ANGELES, LOS ANGELES
10         COUNTY FIRE DEPARTMENT, JOEY CRUZ, RAFAEL MEJIA,
           MICHAEL RUSSELL, and RAUL VERSALES:
11
           LOUIS R. MILLER
12         JASON H. TOKORO
           BRYAN R. REDFERN
13         Miller Barondess, LLP
           1999 Avenue of the Stars
14         Los Angeles, CA 90067
           310.552.4400
15         smiller@millerbarondess.com
           jtokoro@millerbarondess.com
16         bredfern@millerbarondess.com
17
18   FOR THE DEFENDANTS MAUSER, ALTOBELLI:
19         MARGUERITE S. SANVICTORES
           Panish Shea & Boyle, LLP
20         11111 Santa Monica Blvd., Ste 700
           Los Angeles, CA 90025
21         310.477.1700
           Sanvictores@psblaw.com
22
23   ALSO PRESENT:
24         BRANDON MILLER, Videographer
           Veritext Legal Solutions
25
```

Page 2

```
 1        Q.   Okay.  And you've given a deposition before,
 2   haven't you?
 3        A.   Yes.
 4        Q.   Okay.  So you know generally how it works.
 5   The lawyer asks the questions.  The witness answers.
 6   Right?
 7        A.   Yes.
 8        Q.   And you're under oath.  You just took the
 9   oath.  Do you have any questions about the deposition?
10        A.   No.
11        Q.   Any reason why you can't testify fully and to
12   the best of your ability today?
13        A.   No.
14        Q.   All right.  Now, you filed this lawsuit and
15   you've alleged damages; harm to you consisting of
16   emotional distress.  Correct?
17        A.   Correct.
18        Q.   Okay.  And emotional distress, what does that
19   mean to you?
20             MR. TOKORO:  Objection.  Calls for a legal
21   conclusion.
22             You can answer.
23        A.   Emotional distress means that not only do I
24   have to grieve to the loss of my husband and child, but
25   for the rest of my life I'm going to have to fear that
```

Page 7

1 these photographs of my husband and child will be
2 leaked. And I do not want my little girls or I to ever
3 have to see their remains in that matter. Nor do I
4 think it's right that the photographs were taken in the
5 first place because it's already tough enough that I
6 have to experience this heart ache and this loss. But
7 now to live the rest of my life having to fear those
8 photographs surfacing is something that I, I have to
9 deal with every single day.
10     Q. And, Ms. Bryant, I agree with you.
11         MR. LI: Ms. Bryant, are you done?
12     Q. I agree with you. The County agrees with you.
13 Nobody wants any photographs --
14         MR. LI: Mr. Miller --
15         MR. MILLER: -- ever to be publicized.
16 So --
17     (Simultaneous cross-talking.)
18         MR. MILLER: Excuse me, I was in the
19 middle of a question. So we're all in sync on that.
20         MR. LI: Not --
21     (Simultaneous cross-talking.)
22         MR. MILLER: We can't talk at the same
23 time, counsel. So let me finish and then you can make
24 your objection.
25     Q. (By Mr. Miller) When you say you fear that

```
 1   you know.  And if you want to take a break, take a
 2   break.  Compose yourself.  You can do whatever you
 3   want.  This is not an endurance test.  It's not
 4   harassment.  It's just a lawsuit.  And I'm so sorry to
 5   put you through this, but like I said at the beginning,
 6   I've got to do my job?
 7        A.   I shouldn't have to be going through this.
 8   It's not just a lawsuit.
 9        Q.   I agree.  But you filed the lawsuit.
10             MR. LI:  Objection.  Just --
11        Q.   (By Mr. Miller)  So go ahead and tell me --
12        A.   I want accountability.
13             (Simultaneous cross-talking.)
14             MR. LI:  I don't think you need to argue
15   with the witness.  If you want to ask a question, go
16   ahead.
17             MR. MILLER:  I don't want to argue with
18   this lady at all.  Believe me, I wish I wasn't here
19   almost as much as she wishes she wasn't here.  I don't
20   enjoy watching this at all.  This is painful.
21        Q.   Okay.  So it's around 1:30 on January 26,
22   2020, and nobody's telling you what happened to your
23   husband and your daughter.  So --
24        A.   No.
25        Q.   Okay.  Tell me what happened next.
```

Page 18

1      A.   Then there was a gentleman that walked in.
2   And I found out later he was a, I guess the pastor that
3   they had there.  Again, no one's responding to my
4   question.  And then Sheriff Villanueva walks in and
5   this email publicist walks in with him.  And I'm asking
6   what's going on, and she's walking in, and I remember
7   looking at her, asking her what her position was.  And
8   she said, "I'm just a publicist."
9          And I asked her to leave because I wanted
10  privacy.  So she walks out.  Sheriff Villanueva tells
11  me what happened.  And he says, Is there anything I can
12  do for you?
13         And I said:  If you can't bring my husband and
14  baby back, please make sure no one takes photographs of
15  them.  Please secure the area.
16         And he said:  I will.
17         I said:  No, I need you to get on the phone
18  right now and I need you to make sure that you secure
19  the area.
20         So he excused himself.  He came back and he
21  said:  All is good.  The area is secure.  There's an
22  umbrella over the area.
23     Q.   Now --
24     A.   He told me they were going to have a press
25  conference.  And I wanted to get out of the Sheriff's

1  station before they did that because all the media was
2  in front.  So my -- we snuck out the back, and then
3  they, they had the press conference in the front.
4      Q.  You said there was an umbrella over the area.
5  Is that because there were helicopters and press and so
6  forth?
7      A.  I was afraid of fans or drones or helicopters
8  getting images of my husband and my daughter and our
9  friends.
10     Q.  And he said he put a umbrella over the area to
11 prevent pictures like that?
12     A.  Yes.  That there was a no-fly zone over the
13 area.
14     Q.  Ms. Bryant, let me ask you a question.  You're
15 aware, aren't you, that when an accident happens, that
16 it's routine practice for the authorities, for the
17 governmental authorities to take pictures and record
18 what happened.  Aren't you?
19         MR. LI:  Objection.  Lack of foundation.
20 Speculation.
21      You can answer, if you know.
22     A.  I'm aware that the Coroner needs photographs.
23     Q.  Okay.  All right.  And perhaps the aviation,
24 you know, the flight authorities, as well?
25         MR. LI:  Objection.  Lack of foundation.

REPORTER'S CERTIFICATE

I VICKY L. PINSON, RPR-CCR, the undersigned Certified Court Reporter, authorized to administer oaths and affirmations in and for the states of Washington, Oregon and California, do hereby certify:

That the sworn testimony and/or proceedings, a transcript of which is attached, was given before me at the time and place stated therein; that the witness was duly sworn or affirmed to testify to the truth; that the testimony and/or proceedings were stenographically recorded by me and transcribed under my supervision.

That the foregoing transcript contains a full, true, and accurate record of all the testimony and/or proceedings occurring at the time and place stated in the transcript; that a review of which was requested.

That I am in no way related to any party to the matter, nor to any counsel, nor do I have any financial interest in the event of the cause.

WITNESS MY HAND this 13th day of October, 2021.

*[Signature: Vicky L. Pinson]*

VICKY L. PINSON, RPR-CCR
Washington Certified Court Reporter, No. 2559
Oregon State Certified Court Reporter, No. 16-0442
California State Certified Court Reporter, No. 9845

```
 1   LUIS LI, ESQ.

 2   luis.li@mto.com

 3                                         October 13, 2021

 4   RE: BRYANT VS. COUNTY OF LOS ANGELES

 5   OCTOBER 12, 2021, VANESSA BRYANT, JOB NO. 4803139

 6   The above-referenced transcript has been

 7   completed by Veritext Legal Solutions and

 8   review of the transcript is being handled as follows:

 9   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, notating the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25
```

Page 135

```
1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF
2       Transcript - The witness should review the transcript and
3       make any necessary corrections on the errata pages included
4       below, notating the page and line number of the corrections.
5       The witness should then sign and date the errata and penalty
6       of perjury pages and return the completed pages to all
7       appearing counsel within the period of time determined at
8       the deposition or provided by the Federal Rules.
9    __ Federal R&S Not Requested - Reading & Signature was not
10      requested before the completion of the deposition.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 136